**OUTTEN & GOLDEN LLP**
Justin M. Swartz
Jennifer L. Liu
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone:  (212) 245-1000

**SHAVITZ LAW GROUP, P.A.**
Gregg I. Shavitz (admitted *pro hac vice*)
Susan H. Stern (admitted *pro hac vice*)
1515 S. Federal Highway, Suite 404
Boca Raton, Florida 33432
Telephone: (561) 447-8888

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

---

ERIC BECKMAN, STEVE BUNCH, JERI
GRIFFIN, IVANA HARRINGTON, JACK
LEIVA, TERI PARKE, THOMAS WALKER,
PETE WISEMAN, RENEE BRAUN,
ELIZABETH SCOTT, VERONICA
MORGAN, and  THERESA FORREST,
individually and on behalf of all others
similarly situated,

               Plaintiffs,

    v.

KEYBANK, N.A.,

               Defendant.

No. 12 Civ. 7836 (RWS) (RLE)

---

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
## MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT,
## CONDITIONAL CERTIFICATION OF THE SETTLEMENT CLASS,
## APPOINTMENT OF PLAINTIFFS' COUNSEL AS CLASS COUNSEL, AND
## APPROVAL OF PLAINTIFFS' PROPOSED NOTICES OF SETTLEMENT

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ............................................................24, 26

*In re Austrian & German Bank Holocaust Litig.*,
    80 F. Supp. 2d 164 (S.D.N.Y. 2000) ...............................................................12, 13, 15

*Cagan v. Anchor Sav. Bank FSB*, No. 88 Civ. 3024,
    1990 WL 73423 (E.D.N.Y. May 22, 1990) ......................................................17

*Capsolas v. Pasta Res. Inc.*, No. 10 Civ. 5595,
    2012 WL 1656920 (S.D.N.Y. May 9, 2012) ....................................................23, 27

*Castagna v. Madison Square Garden, L.P.*, No. 09 Civ. 10211,
    2011 WL 2208614 (S.D.N.Y. Jun. 7, 2011) ....................................................14

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974) ...................................................................11, 12, 17

*Clark v. Ecolab, Inc.*, Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672,
    2009 WL 6615729 (S.D.N.Y. Nov. 27, 2009) ................................................ passim

*Clark v. Ecolab Inc.*, Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672,
    2010 WL 1948198 (S.D.N.Y. May 11, 2010) ..................................................21

*Consol. Rail Corp. v. Town of Hyde Park*,
    47 F.3d 473 (2d Cir. 1995) ...........................................................................20

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*,
    502 F.3d 91 (2d Cir. 2007) ...........................................................................24

*County of Suffolk v. Long Island Lighting Co.*,
    710 F. Supp. 1422 (E.D.N.Y. 1989), ...........................................................19

*Damassia v. Duane Reade, Inc.*,
    250 F.R.D. 152 (S.D.N.Y. 2008) (Lynch, J.) .................................................23, 27

*Diaz v. Eastern Locating Serv. Inc.*, No. 10 Civ. 4082,
    2010 WL 5507912 (S.D.N.Y. Nov. 29, 2010) ...............................................14

*Diaz v. Eastern Locating Serv. Inc.*, No. 10 Civ. 4082,
    2010 WL 2945556 (S.D.N.Y. July 22, 2010) .................................................7, 14

*Dorn v. Eddington Sec., Inc.*, No. 08 Civ. 10271,
   2011 WL 382200 (S.D.N.Y. Jan. 21, 2011) ....................................................................19, 22

*Dziennik v. Sealift, Inc.*, No. 05 Civ. 4659,
   2007 WL 1580080 (E.D.N.Y. May 29, 2007) ........................................................................23

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*, Nos. 05 Civ. 10240, 05 Civ.
   10287,05 Civ. 10515, 05 Civ. 10610, 06 Civ. 304, 06 Civ. 347, 06 Civ. 1684,
   2007 WL 2230177 (S.D.N.Y. July 27, 2007) ........................................................................11

*Frank v. Eastman Kodak Co.*,
   228 F.R.D. 174 (W.D.N.Y. 2005).................................................................................. passim

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
   55 F.3d 768 (3d Cir. 1995)....................................................................................................19

*Gen. Tel. Co. of Sw. v. Falcon*,
   457 U.S. 147 (1982)..............................................................................................................20

*Green v. Wolf Corp.*,
   406 F.2d 291 (2d Cir. 1968)..................................................................................................26

*Hosier v. Mattress Firm, Inc.*,
   No. 10 Civ. 294 (M.D. Fla.)...................................................................................................24

*In re Interpublic Sec. Litig.*, No. 02 Civ. 6527,
   2004 WL 2397190 (S.D.N.Y. Oct. 26, 2004) ........................................................................14

*In re Ira Haupt & Co.*,
   304 F. Supp. 917 (S.D.N.Y. 1969)........................................................................................15

*Johnson v. Brennan*,
   No. 10 Civ. 4712, 2011 WL 1872405 (May 17, 2011)..............................................23, 28, 29

*Kamean v. Local 363, Int'l Bhd. of Teamsters*,
   109 F.R.D. 391 (S.D.N.Y. 1986) ..........................................................................................21

*Lynn's Food Stores, Inc. v. United States*,
   679 F.2d 1350 (11th Cir. 1982) ............................................................................................11

*Marisol A. v. Giuliani*,
   126 F.3d 372 (2d Cir. 1997)..................................................................................................21

*Marriott v. Cnty. of Montgomery*,
   227 F.R.D. 159 (N.D.N.Y. 2005)...........................................................................................25

*Maywalt v. Parker & Parsley Petroleum Co.*,
   67 F.3d 1072 (2d Cir. 1998)..........................................................................10

*McBean v. City of New York*,
   228 F.R.D. 487 (S.D.N.Y. 2005) ....................................................................25

*McKenna v. Champion Int'l Corp.*,
   747 F.2d 1211 (8th Cir. 1984) .......................................................................30

*McMahon v. Olivier Cheng Catering & Events*, LLC,
   No. 08 Civ. 8713, 2010 WL 2399328 (S.D.N.Y. Mar. 3, 2010) ..................30

*In re Michael Milken & Assocs. Sec. Litig.*,
   150 F.R.D. 57 (S.D.N.Y. 1993) ......................................................................29

*Nash v. CVS Caremark Corp.*
   No. 09 Civ. 79 (D.R.I. Dec. 9, 2011) .............................................................24

*Noble v. 93 Univ. Place Corp.*,
   224 F.R.D. 330 (S.D.N.Y. 2004) ....................................................................25

*Officers for Justice v. Civil Serv. Comm'n*,
   688 F.2d 615 (9th Cir. 1982) .........................................................................17

*In re Painewebber Ltd. P'ships Litig.*,
   171 F.R.D. 104 (S.D.N.Y. 1997) ....................................................................15

*Palacio v. E\*TRADE Fin. Corp.*, No. 10 Civ. 4030,
   2012 WL 1058409 (S.D.N.Y. Mar. 12, 2012) ..........................................24, 28

*Palacio v. E\*TRADE Fin. Corp.*, No. 10 Civ. 4030,
   2012 WL 2384419 (S.D.N.Y. Jun. 22, 2012) ...................................................7

*Port Auth. Police Benevolent Ass'n, Inc. v. Port Auth. of N.Y. & N.J.*,
   698 F.2d 150 (2d Cir. 1983)...........................................................................20

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*,
   237 F.R.D. 26 (E.D.N.Y. 2006) ......................................................................20

*Robidoux v. Celani*,
   987 F.2d 931 (2d Cir. 1993)...........................................................................22

*Rossini v. Ogilvy & Mather, Inc.*,
   798 F.2d 590 (2d Cir. 1986)...........................................................................24

*In re Top Tankers, Inc. Sec. Litig.*,
   No. 06 Civ. 13761, 2008 WL 2944620 (S.D.N.Y. July 31, 2008) .................11

*Torres v. Gristede's Corp.*, No. 04 Civ. 3316,
    2006 WL 2819730 (S.D.N.Y. Sept. 29, 2006)........................................................25

*Toure v. Amerigroup Corp.*, No. 10 Civ. 5391,
    2012 WL 3240461 (E.D.N.Y. Aug. 6, 2012)........................................................28

*Toure v. Cent. Parking Sys.*, No. 05 Civ. 5237,
    2007 WL 2872455 (S.D.N.Y. Sept. 28, 2007)........................................................23

*In re Traffic Exec. Ass'n*,
    627 F.2d 631 (2d Cir. 1980)........................................................10

*Trinidad v. Breakaway Courier Sys., Inc.*, No. 05 Civ. 4116,
    2007 WL 103073 (S.D.N.Y. Jan. 12, 2007) ........................................................22

*Velez v. Majik Cleaning Serv., Inc.,* No. 03 Civ. 8698,
    2007 WL 7232783 (S.D.N.Y. June 25, 2007) ........................................................15

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005)........................................................9, 10

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004)........................................................9, 13

*Wright v. Stern*,
    553 F. Supp. 2d 337 (S.D.N.Y. 2008)........................................................11

*In re Zyprexa Prod. Liab. Litig.*,
    253 F.R.D. 69 (E.D.N.Y. 2008)........................................................26

STATUTES

29 U.S.C. § 216(b)........................................................16

Fed. R. Civ. P. 23(a)........................................................20

Fed. R. Civ. P. 23(b) ........................................................24, 26

Fed. R. Civ. P. 23(c) ........................................................28

Fed. R. Civ. P. 23(e)........................................................8

Fed. R. Civ. P. 23(g)........................................................27

Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* (4th ed. 2002).................... passim

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................... 1

I.    FACTUAL AND PROCEDURAL BACKGROUND........................................2

      A.    Factual Allegations ................................................................. 2

      B.    Overview of Investigation.......................................................... 2

      C.    Settlement Negotiations ............................................................. 3

      D.    Litigation.................................................................................... 4

II.   SUMMARY OF THE SETTLEMENT TERMS ........................................ 4

      A.    The Settlement Fund ................................................................. 4

      B.    Eligible Employees .................................................................... 4

      C.    Releases....................................................................................... 5

      D.    Allocation Formula .................................................................... 6

      E.    Attorneys' Fees and Litigation Costs....................................... 7

      F.    Service Awards ........................................................................... 7

      G.    Settlement Claims Administrator.............................................. 8

      H.    Additional Provisions................................................................ 8

III.  CLASS ACTION SETTLEMENT PROCEDURE8

IV.   PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE .................9

      A.    The Settlement is Fair, Reasonable, and Adequate.............................. 11

            1.    Litigation Through Trial Would be Complex, Costly, and Long
                  (*Grinnell* Factor 1) ................................................................. 12

            2.    The Reaction of the Class Has Been Positive (*Grinnell* Factor 2) ........... 13

            3.    Discovery Has Advanced Far Enough to Allow the Parties to
                  Resolve the Case Responsibly (*Grinnell* Factor 3)................................... 13

4.      Plaintiffs Would Face Real Risks if the Case Proceeded
        (*Grinnell* Factors 4 and 5) ........................................................... 15

5.      Maintaining the Class Through Trial Would Not Be Simple
        (*Grinnell* Factor 6) .................................................................... 16

6.      Defendant's Ability to Withstand a Greater Judgment is Not Clear
        (*Grinnell* Factor 7) .................................................................... 16

7.      The Settlement Fund is Substantial, Even in Light of the Best
        Possible Recovery and the Attendant Risks of Litigation
        (*Grinnell* Factors 8 and 9) ......................................................... 16

V.      CONDITIONAL CERTIFICATION OF THE RULE 23 CLASS
        IS APPROPRIATE ................................................................................. 18

        A.      Numerosity .................................................................................. 20

        B.      Commonality ............................................................................... 20

        C.      Typicality .................................................................................... 21

        D.      Adequacy of the Named Plaintiffs .......................................... 22

        E.      Certification is Proper Under Rule 23(b)(3) .......................... 24

                1.      Common Questions Predominate ................................. 24

                2.      A Class Action is a Superior Mechanism ................... 25

VI.     PLAINTIFFS' COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL ...........27

VII.    THE NOTICE PLAN AND AWARD DISTRIBUTION PROCESS
        ARE APPROPRIATE ................................................................................28

VIII.   PLAINTIFFS WILL SEEK APPROVAL OF THE FLSA SETTLEMENT ...................29

CONCLUSION ................................................................................................. 30

## INTRODUCTION

Subject to Court approval, Plaintiffs Eric Beckman, Steve Bunch, Jeri Griffin, Ivana Harrington, Jack Leiva, Teri Parke, Thomas Walker, Pete Wiseman, Renee Braun, Elizabeth Scott, Veronica Morgan, and Theresa Forrest (together, "Plaintiffs") and Defendant KeyBank, N.A. ("Defendant") (together with Plaintiffs, the "Parties") have settled this wage and hour class and collective action for significant monetary relief of Four Million Nine Hundred Thousand Dollars ($4,900,000).

The proposed settlement satisfies all of the criteria for preliminary approval under federal law.  Accordingly, Plaintiffs respectfully request that the Court (1) grant preliminary approval of the Joint Stipulation of Settlement and Release ("Settlement Agreement"), attached as Exhibit B to the Declaration of Justin M. Swartz ("Swartz Decl.")[1]; (2) conditionally certify the proposed classes under Federal Rule of Civil Procedure 23(b)(3) for settlement purposes; (3) appoint Outten & Golden LLP ("O&G") and the Shavitz Law Group, P.A. ("Shavitz Law Group") as Class Counsel ("Class Counsel"); and (4) approve the proposed Notice of Class Action Settlement ("Rule 23 Notice") (attached as Exhibit C to the Swartz Declaration) and the proposed Notice of Collective Action Settlement ("FLSA Notice") (attached as Exhibit D to the Swartz Declaration) (collectively, "Notices") and direct their distribution.  Per the Settlement Agreement, Defendant does not oppose this motion.

---

[1]     Unless otherwise indicated, all exhibits are attached to the Swartz Declaration.

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

A.      <u>Factual Allegations</u>

Plaintiffs and Class Members are current and former employees of KeyBank who have worked as Relationship Managers ("RMs")[2] or in comparable positions at KeyBank branch locations nationwide.  Plaintiffs alleged that KeyBank violated the Fair Labor Standards Act ("FLSA") and the wage and hour laws of New York, Ohio, Colorado, Washington, Oregon, and Maine by improperly classifying them as exempt from federal and state overtime requirements and failing to pay them and other RMs overtime wages.  Swartz Decl. ¶ 16.

B.      <u>Overview of Investigation</u>

Before the initiation of this action, Plaintiffs conducted a thorough investigation into the merits of the potential claims and defenses.  *Id.* ¶ 17.  Plaintiffs focused their investigation and legal research on the underlying merits of Class Members' claims, the damages to which they were entitled, and the propriety of class certification.  *Id.*  Plaintiffs' Counsel conducted in-depth interviews with the twelve Plaintiffs to determine the hours that they worked, the wages they were paid, the nature of their duties and responsibilities, and other information relevant to their claims.  *Id.* ¶ 18.  Plaintiffs' Counsel also obtained and reviewed numerous documents from Plaintiffs related to their employment with KeyBank, including pay records, offer letters, employee handbooks, and other related documents.  *Id.*  Plaintiffs conducted in-depth background research on KeyBank, including reviewing SEC filings and other public documents, to obtain information on KeyBank's corporate structure and facilities.  *Id.* ¶ 19.  Plaintiffs also obtained numerous job postings for the RM position from across the country to determine the nature of the duties and responsibilities of the position.  *Id.*  Plaintiffs also obtained investigation

---

[2]      Unless otherwise indicated, all capitalized terms have the definitions set forth in the Settlement Agreement.

reports and other documents about KeyBank's labor practices from the U.S. Department of Labor through a Freedom of Information Act request.  *Id.*

C.   <u>**Settlement Negotiations**</u>

On June 17, 2011, Plaintiffs sent KeyBank a letter in which they summarized their potential claims and invited KeyBank to engage in pre-litigation settlement discussions.  *Id.* ¶ 20. In response to the letter, agreed to enter a tolling agreement to discuss a possible resolution of Plaintiffs' claims.  *Id.* ¶ 21.  On November 29, 2011, the Parties met in New York to exchange their initial positions.  *Id.*  Over the next several months, the Parties negotiated a process for attempting to resolve the claims, entered into a confidentiality agreement, and engaged in an informal exchange of documents and other data to assess the claims and calculate damages in advance of private mediation.  *Id.*

Prior to the Parties' mediation, Defendant produced various documents, including job descriptions for the RM positions, a copy of the entire U.S. Department of Labor investigatory file concerning its review of KeyBank job classifications from February 2009, and data showing the number of Class Members in relevant job titles, salaries, incentive pay, weeks worked, and location of employment.  *Id.* ¶ 22.  Defendant additionally produced documents evidencing branch hours per locations to assist in the analysis of hours worked.  *Id.*  Plaintiffs and Defendant both retained economic experts to analyze the data and perform damages calculations.  *Id.*

On June 13, 2012, the Parties attended a full day mediation session in Chicago with David Rotman, Esq.,  a well-known and experienced mediator in wage and hour law.  *Id.* ¶ 23. At the mediation, the Parties reached agreement on the settlement amount and several other key terms.  *Id.*  During the next several months, the Parties negotiated the remaining terms of the

settlement, which were memorialized in a formal Joint Settlement and Release ("Settlement Agreement"). *Id.* ¶ 24.

### D. <u>Litigation</u>

As contemplated in the Settlement Agreement, on October 19, 2012, Plaintiffs filed a Class Action Complaint against Defendant in the United States District Court for the Southern District of New York on behalf of themselves and others similarly situated alleging that Defendant violated the Fair Labor Standards Act ("FLSA") and the wage and hour laws of New York, Ohio, Colorado, Washington, Oregon, and Maine by improperly classifying Relationship Managers as exempt from federal and state overtime requirements, and sought recovery of overtime wages, attorneys' fees and costs, interest, and liquidated damages. *Id.* ¶ 26.

## II. SUMMARY OF THE SETTLEMENT TERMS

### A. <u>The Settlement Fund</u>

The Settlement Agreement creates a common fund of $4,900,000 to settle claims against the Defendant (the "Fund"). *Id.* ¶ 27; Ex. B (Settlement Agreement) § 3.1(A). The Fund covers Class Members' awards, service payments, attorneys' fees and costs, settlement administrator's fees and costs, and any fees and costs associated with investing or liquidating the Fund. Swartz Decl. ¶ 27; Ex. B (Settlement Agreement) § 3.1(A). Defendant will pay all applicable employer-side payroll taxes. Swartz Decl. ¶ 27; Ex. B (Settlement Agreement) § 3.5(C).

### B. <u>Eligible Employees</u>

Class Members who are entitled to receive payments from the Fund include two groups of KeyBank employees. Swartz Decl. ¶ 28. The "Rule 23 Class" consists of the following six sub-classes of individuals ("Rule 23 Class Members"):

a.   New York Sub-Class:  The "New York Sub-Class" consists of all individuals who were employed as RMs in the State of New York from June 13, 2006 to the date of the Preliminary Approval Order; and

b.   Ohio Sub-Class:  The "Ohio Sub-Class" consists of all individuals who were employed as RMs in the State of Ohio from June 13, 2009 to the date of the Preliminary Approval Order; and

c.   Colorado Sub-Class:  The "Colorado Sub-Class" consists of all individuals who were employed as RMs in the State of Colorado from June 13, 2009 to the date of the Preliminary Approval Order; and

d.   Washington Sub-Class:  The "Washington Sub-Class" consists of all individuals who were employed as RMs in the State of Washington from June 13, 2009 to the date of the Preliminary Approval Order; and

e.   Oregon Sub-Class:  The "Oregon Sub-Class" consists of all individuals who were employed as RMs in the State of Oregon from June 13, 2009 to the date of the Preliminary Approval Order; and

f.   Maine Sub-Class:  The "Maine Sub-Class" consists of all individuals who were employed as RMs in the State of Maine from June 13, 2009 to the date of the Preliminary Approval Order.  Swartz Decl. ¶ 28; Ex. B (Settlement Agreement) § 1.29.

The "FLSA Class Members" consist of all individuals who were employed as RMs from June 13, 2009 to the date of the Preliminary Approval Order (together with Rule 23 Class Members, "Class Members").  Swartz Decl. ¶ 28; Ex. B (Settlement Agreement) § 1.14.

## C.   <u>Releases</u>

The Settlement Agreement provides that all Rule 23 Class Members who do not timely opt out of the settlement will release their state wage and hour law claims.  Ex. B (Settlement Agreement) § 4.1(A).  Rule 23 Class Members and FLSA Class Members who timely sign and negotiate their settlement checks ("Opt-in Plaintiffs") will release their FLSA claims by signing and negotiating settlement checks.  Ex. B (Settlement Agreement) § 4.1(B).

### D.   **Allocation Formula**

Class Members will be paid pursuant to an allocation formula based on the number of weeks for which they were employed during the relevant limitations periods, and whether they are members of the New York Sub-Class, Ohio Sub-Class, Colorado Sub-Class, Washington Sub-Class, Oregon Sub-Class, the Maine Sub-Class, or the FLSA Class.  Each New York Sub-Class Members will be assigned one point for each week worked in New York from June 13, 2006 through the date on which the Court grants Plaintiffs' Motion for Preliminary Approval of Settlement.  Swartz Decl. ¶ 31; Ex. B (Settlement Agreement) § 3.4(B)(1).  Each Class Member who worked in any state other than New York shall be assigned one point for each week worked in any state other than New York from June 13, 2009 through the date on which the Court grants Plaintiffs' Motion for Preliminary Approval of Settlement.  Swartz Decl. ¶ 32; Ex. B (Settlement Agreement) § 3.4(B)(2).  The Claims Administrator will then divide the total number of points for each Class Member by the total number of points for all Class Members to determine each Class Member's portion of the Fund.  Swartz Decl. ¶ 33; Ex. B (Settlement Agreement) § 3.4(B)(3)(a)-(b).  The Claims Administrator will then multiply each Class Member's portion of the Fund by the  Fund to determine the amount to be paid to each Class Member.  Swartz Decl. ¶ 33; Ex. B (Settlement Agreement) § 3.4(B)(4).

Any unnegotiated settlement checks to Rule 23 Class Members will be redistributed among the Class Members who have timely negotiated their checks, except that if the aggregate remaining funds are less than fifty thousand dollars ($50,000), the unclaimed funds will be donated to charity under the *cy pres* doctrine.  Swartz Decl. ¶ 34; Ex. B (Settlement Agreement) § 3.1(D).  Any unnegotiated settlement checks to FLSA Class Members remaining in the Fund

after 180 days after the Court enters a Final Approval Order will revert to Defendant.  Swartz

Decl. ¶ 34; Ex. B (Settlement Agreement) § 3.1(E).

### E.      Attorneys' Fees and Litigation Costs

Plaintiffs' Counsel will apply for up to one third of the Fund as attorneys' fees.[3]

Additionally, Plaintiffs' Counsel will seek reimbursement for their reasonable litigation costs and

expenses from the Fund, in an amount not to exceed $50,000.  Ex. B (Settlement Agreement) §

3.2(A).  The Court need not decide the attorneys' fees and costs issue now.  Pursuant to Federal

Rule of Civil Procedure 23(h) and 54(d)(2), Plaintiffs' Counsel will file a Motion for Approval

of Attorneys' Fees, Incentive Awards, and Reimbursement of Expenses along with their Motion

for Final Approval of the Settlement.

### F.      Service Awards

In addition to their individualized awards under the allocation formula, Plaintiffs will

apply for additional payments in recognition of the services they rendered on behalf of the class

("Service Awards").  Ex. B (Settlement Agreement) § 3.3(A).  Plaintiffs will move for Court

approval of the Service Awards of $7,500 each to Eric Beckman, Ivana Harrington, Jack Leiva,

Jeri Griffin, Pete Wiseman, Steve Bunch, Teri Parke, and Thomas Walker, and for approval of

Service Awards of $5,000 each to Renee Braun, Elizabeth Scott, Veronica Morgan, and Theresa

Forrest.  Ex. B (Settlement Agreement) § 3.3(A).  Plaintiffs will move for Court approval of the

Service Awards simultaneously with Plaintiffs' Motion for Final Approval of the Settlement.

---

[3]      This is a typical fee award in the Second Circuit.  *Palacio v. E\*TRADE Fin. Corp.*, No.
10 Civ. 4030, 2012 WL 2384419, at \*6 (S.D.N.Y. Jun. 22, 2012) ("Class Counsel's request for
one-third of the fund is reasonable and 'consistent with the norms of class litigation in this
circuit.') (quoting *Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05 Civ. 3452, 2008 WL 782596, at
\*5 (S.D.N.Y. Mar. 24, 2008)); *Diaz v. Eastern Locating Serv. Inc.*, No. 10 Civ. 4082, 2010 WL
2945556, at \*7 (S.D.N.Y. July 22, 2010) (same).

G.    **Settlement Claims Administrator**

The Parties have jointly selected Kurtzman Carson Consultants LLC to serve as the

Settlement Claims Administrator ("Claims Administrator").  Swartz Decl. ¶ 38; Ex. B

(Settlement Agreement) § 1.30.  The Claims Administrator's fees will be paid from the Fund.

Ex. B (Settlement Agreement) § 1.30.

H.    **Additional Provisions**

The Settlement Agreement includes other important provisions.  KeyBank has the right to

revoke the Settlement Agreement if more than 10% of the Rule 23 Class Members timely and

properly opt out of the settlement.  Swartz Decl. ¶ 35; Ex. B (Settlement Agreement) § 2.6.  If

KeyBank exercises its right to revoke the Settlement Agreement, the litigation will continue as if

there were no attempt to settle the matter.  Swartz Decl. ¶ 35; Ex. B (Settlement Agreement) §

2.6.

## III.   CLASS ACTION SETTLEMENT PROCEDURE

The well-defined class action settlement procedure includes three distinct steps:

1.    Preliminary approval of the proposed settlement after submission to the Court of a
      written motion for preliminary approval;

2.    Dissemination of mailed and/or published notice of settlement to all affected class
      members; and

3.    A final settlement approval hearing at which class members may be heard
      regarding the settlement, and at which argument concerning the fairness,
      adequacy, and reasonableness of the settlement may be presented.

*See* Fed. R. Civ. P. 23(e); *see also* Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*

("*Newberg*"), §§ 11.22, *et seq.* (4th ed. 2002).  This process safeguards class members'

procedural due process rights and enables the Court to fulfill its role as the guardian of class

interests.  With this motion, Plaintiffs request that the Court take the first step – granting

preliminary approval of the Settlement Agreement, conditionally certifying the settlement class,

approving Plaintiffs' Proposed Notices, and authorizing Plaintiffs to send them.

The Parties respectfully submit the following proposed schedule for final resolution of

this matter for the Court's consideration and approval:

1.   The Settlement Notices will be mailed to Class Members within 20 days after the Court grants Plaintiffs' Motion for Preliminary Approval of Settlement.  Ex. B (Settlement Agreement) §§ 2.4(B)-(C).

2.   Class Members will have 30 days after the date the Settlement Notices are mailed to opt out of the settlement or object to it ("Notice Period").  Ex. B (Settlement Agreement) §§ 2.5(A), 2.7(A).

3.   A final fairness hearing will be held as soon as is convenient for the Court.

4.   Plaintiffs will file a Motion for Final Approval of Settlement no later than 15 days before the Fairness Hearing.  Ex. B (Settlement Agreement) § 2.8.

5.   After the final fairness hearing, if the Court grants Plaintiffs' Motion for Final Approval of the Settlement, the Court will issue a Final Order and Judgment.  If no party appeals the Court's Final Order and Judgment, the "Effective Date" of the settlement will be 5 days after the Court enters its Final Order and Judgment. Ex. B (Settlement Agreement) § 1.10(A).

6.   If an individual or party appeals the Court's Final Order and Judgment, the "Effective Date" of Settlement shall be the day after all appeals are resolved in favor of final approval. Ex. B (Settlement Agreement) § 1.10(B).

7.   The Settlement Claims Administrator will disburse settlement checks to the class members, as well as Class Counsel's attorneys' fees and costs, 3 days after the time to appeal the Final Order and Judgment has expired.  Ex. B (Settlement Agreement) § 2.11(C).

## IV.   PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE

The law favors compromise and settlement of class action suits.  *Wal-Mart Stores, Inc. v.*

*Visa U.S.A. Inc*., 396 F.3d 96, 116 (2d Cir. 2005) (noting the "strong judicial policy in favor of

settlements, particularly in the class action context") (internal quotation marks and citation

omitted); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("[T]here is

an overriding public interest in settling class action litigation, and it should therefore be

encouraged."); *see also Newberg* § 11.41 ("The compromise of complex litigation is encouraged by the courts and favored by public policy.").

The approval of a proposed class action settlement is a matter of discretion for the trial court. *See Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1998). "In exercising this discretion, courts should give proper deference to the private consensual decision of the parties." *Clark v. Ecolab, Inc.*, Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2009 WL 6615729, at *3 (S.D.N.Y. Nov. 27, 2009) (internal quotation marks omitted). "In evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation . . . ." *Id.* (internal quotation marks omitted).

Preliminary approval requires only an "initial evaluation" of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties. *Clark*, 2009 WL 6615729, at *3 (citing *Newberg* § 11.25). To grant preliminary approval, the court need only find that there is "'probable cause' to submit the [settlement] to class members and hold a full-scale hearing as to its fairness." *In re Traffic Exec. Ass'n*, 627 F.2d 631, 634 (2d Cir. 1980); *Newberg* § 11.25 (noting that "[i]f the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness . . . and appears to fall within the range of possible approval," the court should permit notice of the settlement to be sent to class members) (quoting *Manual for Complex Litigation* (3d ed.) § 30.41).

"Fairness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (W.D.N.Y. 2005). "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (internal quotation

marks omitted); *Wright v. Stern*, 553 F. Supp. 2d 337, 343 (S.D.N.Y. 2008) (same); *see also Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982) (recognizing that courts rely on adversarial nature of litigated FLSA cases resulting in settlement to indicate fairness).

If the settlement was achieved through experienced counsels' arm's-length negotiations, "[a]bsent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, Nos. 05 Civ. 10240, 05 Civ. 10287, 05 Civ. 10515, 05 Civ. 10610, 06 Civ. 304, 06 Civ. 347, 06 Civ. 1684, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007); *see also In re Top Tankers, Inc. Sec. Litig.*, No. 06 Civ. 13761, 2008 WL 2944620, at *3 (S.D.N.Y. July 31, 2008) (same).

Preliminary approval is the first step in the settlement process. It simply allows notice to issue and for Class Members to object or opt out of the settlement. After the notice period, the Court will be able to evaluate the settlement with the benefit of Class Members' input.

## A.   <u>The Settlement is Fair, Reasonable, and Adequate.</u>

In evaluating a class action settlement, courts in the Second Circuit generally consider the nine factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000). Although the Court's task on a motion for preliminary approval is merely to perform an "initial evaluation," *Newberg* § 11.25, to determine whether the settlement falls within the range of possible final approval, or "the range of reasonableness," *id.* at § 11.26, it is useful for the Court to consider the criteria on which it will ultimately judge the settlement.

The *Grinnell* factors are (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of

discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial;  (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.  *Grinnell*, 495 F.2d at 463.  All of the *Grinnell* factors weigh in favor of approval of the Settlement Agreement, and certainly in favor of preliminary approval.

### 1.   Litigation Through Trial Would be Complex, Costly, and Long (*Grinnell* Factor 1).

By reaching a favorable settlement prior to dispositive motions or trial, Plaintiffs seek to avoid significant expense and delay, and instead ensure recovery for the class.  "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them."  *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001).  This case is no exception, with approximately 1,973 Class Members and claims under the federal and state law.

Further litigation would cause additional expense and delay.  Extensive discovery would be required to establish liability and damages.  In addition, the parties likely would have filed cross-motions for summary judgment on Defendant's exemption defense.  If the Court denied the motions, a fact-intensive trial would be necessary to determine Plaintiffs' and the class's exemption status.  A trial would be lengthy and complex and would consume tremendous time and resources for all Parties and the Court.  Any judgment would likely be appealed, further extending the litigation.  The settlement, on the other hand, makes monetary relief available to

Class Members in a prompt and efficient manner.  Therefore, the first *Grinnell* factor weighs in favor of preliminary approval.

### 2.    The Reaction of the Class Has Been Positive (*Grinnell* Factor 2).

Notice of the settlement and its details has not yet issued to the class.  The Court should more fully analyze this factor after notice issues and Class Members are given the opportunity to opt out or object.  At this early stage in the process, given that all Plaintiffs have signed the Settlement Agreement, this factor weighs in favor of preliminary approval.

### 3.    Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (*Grinnell* Factor 3).

Although preparing this case through trial would require hundreds of hours of discovery for both sides, the Parties have completed enough informal discovery to recommend settlement. The proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin*, 391 F.3d at 537.  "[T]he pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . [, but] an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian*, 80 F. Supp. 2d at 176 (internal quotations omitted).  The Parties' discovery here meets this standard. Plaintiffs' Counsel conducted in-depth interviews with the twelve Plaintiffs to determine the hours that they worked, the wages they were paid, the nature of their duties and responsibilities, and other information relevant to their claims.  Swartz Decl. ¶ 18.  Plaintiffs conducted in-depth background research on KeyBank, including reviewing SEC filings and other public documents, to obtain information on KeyBank's corporate structure and facilities.  *Id.* ¶ 19.  Plaintiffs also obtained numerous job postings for the Relationship Manager position from across the country to determine the nature of the duties and responsibilities of the position.  *Id.*  Plaintiffs also obtained

investigation reports and other documents about KeyBank's labor practices from the U.S.

Department of Labor through a Freedom of Information Act request.  *Id.*  To allow the Parties to

perform damages calculations in preparation for mediation, the Parties exchanged targeted

discovery, including data showing the number of Class Members in relevant job titles, salaries,

incentive pay, weeks worked, and location of employment.  Swartz Decl. ¶ 22.  Therefore, this

factor favors preliminary approval.  *See Diaz*, 2010 WL 2945556, at *3 (finding, in a similar case

settled prior to filing of complaint, that "Class Counsel did substantial work identifying,

investigating, and settling Plaintiffs' and the class members' claims."); *Frank*, 228 F.R.D. at 185

(approving settlement of case "in the relatively early stages of discovery" where parties had

exchanged extensive information pertaining to the identities of class members and to

Defendant's time and pay practices and where counsels' negotiations, while "cooperative," had

"been in no way collusive").

    In addition, courts encourage early settlement of class actions, when warranted, because

early settlement allows class members to recover without unnecessary delay and allows the

judicial system to focus resources elsewhere.  *See In re Interpublic Sec. Litig.*, No. 02 Civ. 6527,

2004 WL 2397190, at *12 (S.D.N.Y. Oct. 26, 2004) (early settlements should be encouraged

when warranted by the circumstances of the case); *Castagna v. Madison Square Garden, L.P.*,

No. 09 Civ. 10211, 2011 WL 2208614, at *6 (S.D.N.Y. Jun. 7, 2011) (commending Plaintiffs'

attorneys for negotiating early settlement); *Diaz v. E. Locating Serv. Inc.*, No. 10 Civ. 4082,

2010 WL 5507912 (S.D.N.Y. Nov. 29, 2010) (granting final approval of pre-suit class settlement

in wage and hour case).  The parties here acted responsibly in reaching an early pre-suit

settlement.  *See In re Interpublic Sec. Litig.*, 2004 WL 2397190, at *12.

**4.** **Plaintiffs Would Face Real Risks if the Case Proceeded (*Grinnell* Factors 4 and 5).**

Although Plaintiffs believe their case is strong, it is subject to considerable risk. "Litigation inherently involves risks." *In re Painewebber Ltd. P'ships Litig.,* 171 F.R.D. 104, 126 (S.D.N.Y. 1997). Indeed, "[i]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *In re Ira Haupt & Co.,* 304 F. Supp. 917, 934 (S.D.N.Y. 1969); *see also Velez v. Majik Cleaning Serv., Inc.,* No. 03 Civ. 8698, 2007 WL 7232783, at *6 (S.D.N.Y. June 25, 2007). In weighing the risks of establishing liability and damages, the court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *In re Austrian*, 80 F. Supp. 2d at 177 (internal quotation marks omitted).

A trial on the merits would involve significant risks for Plaintiffs as to both liability and damages. Plaintiffs would have to overcome KeyBank's defense that Plaintiffs and Class Members were subject to the administrative exemption to the FLSA, and the corresponding exemptions under applicable state laws.

While Plaintiffs believe that they could ultimately establish Defendant's liability, this would require significant factual development. Plaintiffs' Counsel are experienced and realistic, and understand that the resolution of liability issues, the outcome of the trial, and the inevitable appeals process are inherently uncertain in terms of outcome and duration. The proposed settlement alleviates these uncertainties. This factor therefore weighs in favor of preliminary approval.

5.       **Maintaining the Class Through Trial Would Not Be Simple (*Grinnell* Factor 6).**

The risk of obtaining class certification and maintaining it through trial is also present. The Court has not certified the Rule 23 Classes yet, and the Parties anticipate that such a determination would be reached only after further discovery and intense, exhaustive briefing.  In opposing class certification, Defendant would likely argue that the differences among various job positions and worksites and other individualized questions preclude class certification.  Risk, expense, and delay permeate such processes.  Settlement eliminates this risk, expense, and delay. This factor favors preliminary approval.

In addition, the Court has not yet granted permission for Plaintiffs to proceed on their FLSA claims on behalf of a collective pursuant to 29 U.S.C. § 216(b).  If the Court did authorize notice to the FLSA collective, Defendant would likely challenge that determination at a later date, after the close of discovery.  Settlement eliminates the risk and delay inherent in this process.

6.       **Defendant's Ability to Withstand a Greater Judgment is Not Clear (*Grinnell* Factor 7).**

While it is not clear whether Defendant could withstand a greater judgment, their ability to do so, "standing alone, does not suggest that the settlement is unfair."  *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian*, 80 F. Supp. 2d at 178 n.9).  Thus, this factor is neutral and does not preclude the Court from granting preliminary approval.

7.       **The Settlement Fund is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9).**

KeyBank has agreed to settle this case for a substantial amount, $4.9 million.  The settlement amount represents substantial value given the attendant risks of litigation, even though

recovery could be greater if Plaintiffs attained class and collective certification, overcame motions to decertify any class or collective, succeeded on all claims at trial, and survived an appeal.

The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian*, 80 F. Supp. 2d at 178). "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). "[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell Corp.*, 495 F.2d at 455 n.2. "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982); *see also Cagan v. Anchor Sav. Bank FSB*, No. 88 Civ. 3024, 1990 WL 73423, at *12-13 (E.D.N.Y. May 22, 1990) (approving $2.3 million class settlement over objections that the "best possible recovery would be approximately $121 million").

Here, each Class Member will receive a payment based upon the number of weeks for which they were employed during the relevant limitations periods. Class Members will each receive an average net settlement payment (net of attorneys' fees and costs, service awards, claims administration fees, and reserve for errors and omissions) of approximately $1,500. Swartz Decl. ¶ 37. Weighing the benefits of the settlement against the available evidence and the risks associated with proceeding in the litigation, the settlement amount is reasonable.

17

\*      \*      \*

The *Grinnell* factors all weigh in favor of issuing preliminary approval of the settlement. In the event that a substantial number of objectors come forward with meritorious objections, then the Court may reevaluate its determination.  Because the settlement, on its face, is "'fair, adequate, and reasonable, and not a product of collusion,'" *Frank*, 228 F.R.D. at 184 (quoting *Joel A. v. Giuliani*, 218 F.3d 132, 138-39 (2d Cir. 2000)), the Court should grant preliminary approval.

## V.    CONDITIONAL CERTIFICATION OF THE RULE 23 CLASS IS APPROPRIATE.

For settlement purposes, Plaintiffs seek to certify six sub-classes under Federal Rule of Civil Procedure 23(e).  Specifically, Plaintiffs respectfully request that the Court conditionally certify the following sub-classes for purposes of effectuating the settlement:

a.    New York Sub-Class:  The "New York Sub-Class" consists of all individuals who were employed as RMs in the State of New York from June 13, 2006 to the date of the Preliminary Approval Order; and

b.    Ohio Sub-Class:  The "Ohio Sub-Class" consists of all individuals who were employed as RMs in the State of Ohio from June 13, 2009 to the date of the Preliminary Approval Order; and

c.    Colorado Sub-Class:  The "Colorado Sub-Class" consists of all individuals who were employed as RMs in the State of Colorado from June 13, 2009 to the date of the Preliminary Approval Order; and

d.    Washington Sub-Class:  The "Washington Sub-Class" consists of all individuals who were employed as RMs in the State of Washington from June 13, 2009 to the date of the Preliminary Approval Order; and

e.    Oregon Sub-Class:  The "Oregon Sub-Class" consists of all individuals who were employed as RMs in the State of Oregon from June 13, 2009 to the date of the Preliminary Approval Order; and

f.    Maine Sub-Class:  The "Maine Sub-Class" consists of all individuals who were employed as RMs in the State of Maine from June 13, 2009 to the date of the Preliminary Approval Order.

As discussed below, the settlement sub-classes meet all of the certification requirements for class certification for settlement purposes, and Defendant does not oppose provisional certification for settlement purposes only.  Swartz Decl. ¶ 29; Ex. B (Settlement Agreement) § 2.3(E); *see also Newberg* § 11.27 ("When the court has not yet entered a formal order determining that the action may be maintained as a class action, the parties may stipulate that it be maintained as a class action for the purpose of settlement only."); *County of Suffolk v. Long Island Lighting Co*., 710 F. Supp. 1422, 1424 (E.D.N.Y. 1989) ("It is appropriate for the parties to a class action suit to negotiate a proposed settlement of the action prior to certification of the class."), *aff'd in part, rev'd in part on other grounds*, 907 F.2d 1295 (2d Cir. 1990).

Provisional settlement class certification and appointment of class counsel have several practical purposes, including avoiding the costs of litigating class status while facilitating a global settlement, ensuring notification of all Class Members of the terms of the proposed Settlement Agreements, and setting the date and time of the final approval hearing.  *See In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 790-92 (3d Cir. 1995) (noting practical purposes of provisionally certifying settlement class); *Dorn v. Eddington Sec., Inc.*, No. 08 Civ. 10271, 2011 WL 382200, at *1 (S.D.N.Y. Jan. 21, 2011) (conditionally certifying wage and hour settlement class and granting preliminary approval of settlement).

Under Rule 23(a), a class action may be maintained if all of the prongs of Rule 23(a) are met, as well as one of the prongs of Rule 23(b).  Rule 23(a) requires that:

> (1)  the class is so numerous that joinder of all members is impracticable;
>
> (2)  there are questions of law or fact common to the class;
>
> (3)  the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

19

> (4)    the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  Rule 23(b)(3) requires the court to find that:

> questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

*Id.* at (b)(3).  In the Second Circuit, "Rule 23 is given liberal rather than restrictive construction, and courts are to adopt a standard of flexibility" in evaluating class certification.  *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 31 (E.D.N.Y. 2006) (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997)).

## A.   <u>Numerosity</u>

"[N]umerosity is presumed at a level of 40 members."  *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).  Plaintiffs easily satisfy this requirement because there are approximately 1,579 Rule 23 Class Members.  Swartz Decl. ¶ 39.

## B.   <u>Commonality</u>

The proposed settlement sub-classes also satisfy the commonality requirement, the purpose of which is to test "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."  *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982).  Although the claims need not be identical, they must share common questions of fact or law.  *Port Auth. Police Benevolent Ass'n, Inc. v. Port Auth. of N.Y. & N.J.*, 698 F.2d 150, 153-54 (2d Cir. 1983).  The proper question is whether there is a "unifying thread" among the claims to warrant class certification.  *Kamean v. Local 363, Int'l Bhd. of Teamsters*, 109 F.R.D. 391, 394 (S.D.N.Y.

1986).  Courts construe the commonality requirement liberally.  *Frank*, 228 F.R.D. at 181 (citation omitted).

This case involves numerous common issues.  Plaintiffs and Class Members all bring the identical claims that Defendant misclassified them as exempt employees and failed to pay them overtime wages in violation of state wage and hour laws.  Other common issues include, but are not limited to, (a) whether Defendant maintained true and accurate time records for all hours worked by Plaintiffs and Class Members; (b) what proof of hours worked is sufficient where an employer fails in its duty to maintain true and accurate time records; and (c) whether Defendant acted willfully or in reckless disregard of the statute.  *See Clark v. Ecolab Inc.*, Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2010 WL 1948198, at *3 (S.D.N.Y. May 11, 2010) (common issues that help to satisfy Rule 23 commonality requirement include "whether [Defendant] failed to pay Plaintiffs and the state settlement Class Members overtime premium pay for all hours they worked over 40 in a workweek; and…whether [Defendant] maintained accurate time records of the hours Plaintiffs and the state settlement Class Members worked")).

### C.    Typicality

Rule 23 requires that the claims of the representative party be typical of the claims of the class.  "Like the commonality requirement, typicality does not require the representative party's claims to be identical to those of all class members."  *Frank*, 228 F.R.D. at 182.  Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."  *Marisol A.*, 126 F.3d at 376 (internal quotations omitted).  "Minor variations in the fact patterns underlying individual claims" do not defeat typicality when the defendants direct "the same unlawful conduct" at the named plaintiff and the class.  *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993).  Courts

evaluate typicality "with reference to the company's actions, not with respect to particularized defenses it might have against certain class members." *Trinidad v. Breakaway Courier Sys., Inc.*, No. 05 Civ. 4116, 2007 WL 103073, at *6 (S.D.N.Y. Jan. 12, 2007) (quoting *Wagner v. NutraSweet Co.*, 95 F.3d 527, 534 (7th Cir. 1996)).

Plaintiffs' claims arise from the same factual and legal circumstances that form the bases of the Rule 23 Class Members' claims. Defendant classified all Plaintiffs and Class Members as exempt from overtime pursuant to the same company policy and pattern or practice. Plaintiffs shared the same job titles and had the same job duties as Class Members. They also claim the same injuries as do Class Members – that Defendant failed to properly pay them for overtime hours worked. Because Plaintiffs' wage and hour claims arise from the same factual and legal circumstances that form the basis of Class Members' claims, Plaintiffs satisfy the typicality requirement. *See Dorn*, 2011 WL 382200, at *2("Plaintiff satisfies Federal Rule of Civil Procedure 23(a)(3) because Plaintiffs' claims for overtime pay . . . arise from the same factual and legal circumstances that form the bases of the class members' claims."); *Clark*, 2009 WL 6615729, at *4 (same); *Frank*, 228 F.R.D. at 182 (finding that class members satisfied the typicality requirement where "all class members . . . allege that Kodak failed to pay them . . . overtime wages for hours worked in excess of forty per week during the relevant time period").

## D.     Adequacy of the Named Plaintiffs

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The adequacy requirement exists to ensure that the named representative will 'have an interest in vigorously pursuing the claims of the class, and . . . have no interests antagonistic to the interests of other class members.'" *Toure v. Cent. Parking Sys.*, No. 05 Civ. 5237, 2007 WL 2872455, at *7 (S.D.N.Y. Sept. 28, 2007)

(quoting *Denney v. Deutsche Bank AG,* 443 F.3d 253, 268 (2d Cir. 2006)).  "[O]nly a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status."  *Dziennik v. Sealift, Inc.*, No. 05 Civ. 4659, 2007 WL 1580080, at *6 (E.D.N.Y. May 29, 2007) (quoting *Martens v. Smith Barney Inc.,* 181 F.R.D. 243, 259 (S.D.N.Y. 1998)) (internal quotation marks omitted).  Plaintiffs meet the adequacy requirement because there is no evidence that Plaintiffs have interests that are antagonistic to or at odds with those of Class Members.  *See Capsolas v. Pasta Res. Inc.*, No. 10 Civ. 5595, 2012 WL 1656920, at *2 (S.D.N.Y. May 9, 2012) (adequacy met where there was no evidence that named plaintiffs' and class members' interests were at odds).

Plaintiffs' Counsel also meet the adequacy requirement of Rule 23(a)(4).  O&G attorneys "have substantial experience prosecuting and settling employment class actions, including wage and hour class actions[,] and are well-versed in wage and hour and class action law."  *Johnson v. Brennan*, No. 10 Civ. 4712, 2011 WL 1872405, at *2 (May 17, 2011) (internal quotation marks omitted); *see also Capsolas*, 2012 WL 1656920, at *2 (O&G attorneys "have years of experience prosecuting and settling wage and hour class actions, and are well-versed in wage and hour law and in class action law"); *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 158 (S.D.N.Y. 2008) (Lynch, J.) (O&G lawyers have "an established record of competent and successful prosecution of large wage and hour class actions, and the attorneys working on the case are likewise competent and experienced in the area").  Likewise, the Shavitz Law Group has acted as lead counsel or co-counsel on dozens of wage and hour class and collective actions, including *Saliford v. Regions Financial Corp.,* No. 10 Civ. 61031 (S.D. Fla.); *Stewart v. Prince Telecom, Inc.*, No. 10 Civ. 4881 (S.D.N.Y.); *Hosier v. Mattress Firm, Inc.*, No. 10 Civ. 294 (M.D. Fla.); *Briscoe-Grey v. Sears Holding Corp.*, No. 09 Civ. 81408 (S.D. Fla.); *Lewis v. Iowa Coll.*

23

*Acquisition Corp.*, No. 08 Civ. 61011 (S.D. Fla.); and *Brooks v. First Data Corp.*, No. 11-18202

(Fla. 17th Cir.).  *See also Palacio v. E*TRADE Fin. Corp.*, No. 10 Civ. 4030, 2012 WL 1058409,

at *2 (S.D.N.Y. Mar. 12, 2012) (appointing the Shavitz Law Group as Class Counsel based on

their experience in "numerous wage and hour class and collective actions"); *Nash v. CVS

Caremark Corp.*, No. 09 Civ. 79 (D.R.I. Dec. 9, 2011) (finding the Shavitz Law Group, among

other counsel, adequate to serve as class counsel) (attached as Exhibit A to the Swartz

Declaration); Swartz Decl. ¶ 15.

### E.    Certification is Proper Under Rule 23(b)(3)

Rule 23(b)(3) requires that common questions of law or fact not only be present, but also

that they "predominate over any questions affecting only individual members, and that a class

action is superior to other available methods for fairly and efficiently adjudicating the

controversy."  Fed. R. Civ. P. 23(b)(3).  This inquiry examines "whether proposed classes are

sufficiently cohesive to warrant adjudication by representation."  *Amchem Prods., Inc. v.

Windsor*, 521 U.S. 591, 623 (1997).  That Plaintiffs easily meet the Rule 23(a) criteria is a strong

indicator that Rule 23(b)(3) is satisfied.  *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d

Cir. 1986) (satisfaction of Rule 23(a) "goes a long way toward satisfying the Rule 23(b)(3)

requirement of commonality").

### 1.    Common Questions Predominate

To establish predominance, Plaintiffs must demonstrate that "the issues in the class action

that are subject to generalized proof, and thus applicable to the class as a whole . . . predominate

over those issues that are subject only to individualized proof."  *Cordes & Co. Fin. Servs., Inc. v.

A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 108 (2d Cir. 2007).  The essential inquiry is whether

"liability can be determined on a class-wide basis, even when there are some individualized

damage issues." *Marriott v. Cnty. of Montgomery*, 227 F.R.D. 159, 173 (N.D.N.Y. 2005)

(quoting *In re Visa Check/MasterMoney Antitrust Litig*, 280 F.3d 124, 139 (2d Cir. 2001)).

Simply because a defense "'may arise and [] affect different class members differently does not

compel a finding that individual issues predominate over common ones.'" *Noble v. 93 Univ.

Place Corp.*, 224 F.R.D. 330, 339 (S.D.N.Y. 2004) (quoting *In re Visa Check/MasterMoney*, 280

F.3d at 138).  Where plaintiffs are "unified by a common legal theory" and by common facts, the

predominance requirement is satisfied.  *McBean v. City of New York*, 228 F.R.D. 487, 502

(S.D.N.Y. 2005).  The predominance requirement is "more demanding than the Rule 23(a)

commonality inquiry and is designed to determine whether 'proposed classes are sufficiently

cohesive to warrant adjudication by representation.'" *Frank*, 228 F.R.D. at 183 (quoting

*Amchem*, 521 U.S. at 623).

Here, Class Members' common factual allegations and common legal theory – that Defendant

violated federal and state wage and hour laws by misclassifying them as exempt employees and

failing to pay them for premium overtime hours – predominates over any factual or legal

variations among Class Members.  *See Clark*, 2009 WL 6615729, at *5 (finding common factual

allegations and common legal theory to predominate over factual and legal variations among

class members in wage and hour misclassification case); *Torres v. Gristede's Corp.*, No. 04 Civ.

3316, 2006 WL 2819730, at *16 (S.D.N.Y. Sept. 29, 2006) (plaintiffs "introduced sufficient

proof that Defendant engaged in a common practice to deny employees overtime pay," and "this

issue predominates over any individual calculations of overtime wages").

### 2.     A Class Action is a Superior Mechanism

The second part of the Rule 23(b)(3) analysis is a relative comparison examining whether

"the class action device [is] superior to other methods available for a fair and efficient

adjudication of the controversy." *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968);

*Amchem*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to

overcome the problem that small recoveries do not provide the incentive for any individual to

bring a solo action prosecuting his or her rights."). Rule 23(b)(3) sets forth a non-exclusive list

of factors pertinent to judicial inquiry into the superiority of a class action, including: the class

members' interests in individually controlling the prosecution or defense of separate actions;

whether individual class members wish to bring, or have already brought, individual actions; and

the desirability of concentrating the litigation of the claims in the particular forum. Fed. R. Civ.

P. 23(b)(3).[4]

Here, Plaintiffs and Class Members have limited financial resources with which to

prosecute individual actions, and Plaintiffs are unaware of any pending individual lawsuits filed

by Class Members arising from the same allegations. Concentrating the litigation in this Court is

desirable because much of the allegedly wrongful conduct occurred within its jurisdiction.

Employing the class device here will not only achieve economies of scale for putative

Class Members, but will also conserve the resources of the judicial system and preserve public

confidence in the integrity of the system by avoiding the waste and delay of repetitive

proceedings and prevent inconsistent adjudications of similar issues and claims. *See Capsolas*,

---

[4]       Another factor, whether the case would be manageable as a class action at trial, is not of
consequence in the context of a proposed settlement. *See Amchem*, 521 U.S. at 620
("[c]onfronted with a request for settlement-only class certification, a [trial] court need not
inquire whether the case, if tried, would present intractable management problems, for the
proposal is that there be no trial"); *Frank*, 228 F.R.D. at 183 ("The court need not consider the
[manageability] factor, however, when the class is being certified solely for the purpose of
settlement."). Moreover, denying class certification on manageability grounds is "disfavored"
and "should be the exception rather than the rule." *In re Zyprexa Prod. Liab. Litig.*, 253 F.R.D.
69, 199 (E.D.N.Y. 2008) (quoting *In re Visa Check/MasterMoney*, 280 F.3d at 140).

2012 WL 1656920, at *2; *Damassia*, 250 F.R.D. at 161, 164.  A class action is the most suitable

mechanism to fairly, adequately, and efficiently resolve Plaintiffs' and Class Members' claims.

## VI.    PLAINTIFFS' COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL

O&G and Shavitz Law Group should be appointed as Class Counsel.  Rule 23(g), which

governs the standards and framework for appointing class counsel for a certified class, sets forth

four criteria the district court must consider in evaluating the adequacy of proposed counsel: (1)

"the work counsel has done in identifying or investigating potential claims in the action;" (2)

"counsel's experience in handling class actions, other complex litigation, and the types of claims

asserted in the action;" (3) "counsel's knowledge of the applicable law; and" (4) "the resources

that counsel will commit to representing the class".  Fed. R. Civ. P. 23(g)(1)(A).

The Court may also consider any other matter pertinent to counsel's ability to fairly and

adequately represent the interests of the class.  Fed. R. Civ. P. 23(g)(1)(B).  The Advisory

Committee has noted that "[n]o single factor should necessarily be determinative in a given

case."  Fed. R. Civ. P. 23(g) advisory committee's note.

O&G and the Shavitz Law Group meet all of these criteria.  As set forth in the Swartz

Declaration, O&G and the Shavitz Law Group have done substantial work identifying,

investigating, prosecuting, and settling Plaintiffs' and Class Members' claims.  Swartz Decl. ¶¶

17-26.  Additionally, O&G has substantial experience prosecuting and settling employment class

actions, including wage and hour class actions, and the O&G and Shavitz Law Group lawyers

assigned to this matter are well-versed in wage and hour law and in class action law and are well-

qualified to represent the interests of the class.  *Id.* ¶¶ 7-15.  Accordingly, courts have repeatedly

found O&G and the Shavitz Law Group to be adequate class counsel in wage and hour class

actions.[5]  *Id.* ¶¶ 12, 15.

## VII.   THE NOTICE PLAN AND AWARD DISTRIBUTION PROCESS ARE APPROPRIATE

The content of the Proposed Notices, which are attached to the Swartz Declaration as

Exhibits C and D, fully comply with due process and Federal Rule of Civil Procedure 23.

Pursuant to Rule 23(c)(2)(B), notice must provide:

> the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language:

> (i)      the nature of the action;
> (ii)     the definition of the class certified;
> (iii)    the class claims, issues, or defenses;
> (iv)     that a class member may enter an appearance through an attorney if the member so desires;
> (v)      that the court will exclude from the class any member who requests exclusion;
> (vi)     the time and manner for requesting exclusion; and
> (vii)    the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

The Proposed Notices here satisfy each of these requirements.  Additionally, they

describe the terms of the settlement, inform the class about the allocation of attorneys' fees, and

---

[5]      *See, e.g., Toure v. Amerigroup Corp.*, No. 10 Civ. 5391, 2012 WL 3240461, at *5 (E.D.N.Y. Aug. 6, 2012) ("Class Counsel have substantial experience prosecuting and settling employment class actions, including wage and hour class actions, and are well-versed in wage and hour law and in class action law"); *Palacio*, 2012 WL 1058409, at *2 (appointing O&G and the Shavitz Law Group as Class Counsel and noting both firms' extensive experience litigating and settlement wage and hour class and collective actions); *Johnson*, 2011 WL 1872405, at *2 ("Outten & Golden . . . have years of experience prosecuting and settling wage and hour class actions, and are well-versed in wage and hour law and in class action law."); *Clark v. Ecolab Inc.*, Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2009 WL 6615729, at *5 (S.D.N.Y. Nov. 27, 2009) ("Outten & Golden [lawyers] . . . are skilled and experienced employment class action lawyers . . . [and] have extensive experience prosecuting and settling nationwide wage and hour class and collective actions.").

provide specific information regarding the date, time, and place of the final approval hearing.

Courts have approved class notices even when they provided only general information about a

settlement.  *See In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 60 (S.D.N.Y. 1993)

(class notice "need only describe the terms of the settlement generally"); *see also Johnson*, 2011

WL 1872405, at *3.  The detailed information in the Proposed Notices far exceeds this bare

minimum and fully complies with the requirements of Rule 23(c)(2)(B).

The Settlement Agreement provides that the Notices will be mailed by the Claims

Administrator to the last known address of each Class Member within 20 days of preliminary

approval.  Ex. B (Settlement Administrator) §§ 2.4(B), (C).  The Claims Administrator will take

reasonable steps to obtain the correct addresses of any Class Member whose notice is returned as

undeliverable and will attempt re-mailing.  Ex. B (Settlement Agreement) § 2.4(D).  As

discussed above, the Proposed Rule 23 Notices contain information about how to exclude oneself

or object to the settlement.  Rule 23 Class Members will have 30 days from the date of mailing to

submit opt-out requests or to comment on or object to the settlement.  Ex. B (Settlement

Agreement) § 2.5(A).   No Class Members will be required to complete a claim form to

participate in the settlement.  Ex. B (Settlement Agreement) § 2.5(E).  The Claims Administrator

will mail Class Members their payments 3 days after the time to appeal the Final Order and

Judgment has expired.  Ex. B (Settlement Agreement) § 2.11(C).

## VIII.  PLAINTIFFS WILL SEEK APPROVAL OF THE FLSA SETTLEMENT

Plaintiffs will seek approval of the settlement of the FLSA claims separately from their

Rule 23 claims. The standard for approval of an FLSA settlement is lower than for a Rule 23

settlement because an FLSA settlement does not implicate the same due process concerns as

does a Rule 23 settlement.  *See McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir.

1984) (explaining that FLSA collective actions do not implicate the same due process concerns as Rule 23 actions because, under the FLSA, parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date); *see also McMahon v. Olivier Cheng Catering & Events, LLC*, No. 08 Civ. 8713, 2010 WL 2399328, at *6 (S.D.N.Y. Mar. 3, 2010) ("The standard for approval of an FLSA settlement is lower than for a Rule 23 settlement because an FLSA settlement does not implicate the same due process concerns as does a Rule 23 settlement.").  When Plaintiffs file their motion for final approval of the settlement, they will seek approval of the FLSA settlement.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court grant their Motion for Preliminary Approval of Settlement and enter the Proposed Order.

Dated:  November 7, 2012
         New York, New York

Respectfully submitted,
**OUTTEN & GOLDEN LLP**

/s/ Justin M. Swartz
Justin M. Swartz

Justin M. Swartz
Jennifer L. Liu
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone:  (212) 245-1000
Facsimile:  (212) 977-4005

**SHAVITZ LAW GROUP, P.A.**
Gregg I. Shavitz (admitted *pro hac vice*)
Susan H. Stern (admitted *pro hac vice*)
1515 S. Federal Highway, Suite 404
Boca Raton, Florida 33432
Telephone: (561) 447-8888

**Attorneys for Plaintiffs and the Class**
