**OUTTEN & GOLDEN LLP**
Justin M. Swartz
Jennifer L. Liu
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone:  (212) 245-1000

**SHAVITZ LAW GROUP, P.A.**
Gregg I. Shavitz (admitted *pro hac vice*)
Susan H. Stern (admitted *pro hac vice*)
1515 S. Federal Highway, Suite 404
Boca Raton, Florida 33432
Telephone: (561) 447-8888

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ERIC BECKMAN, STEVE BUNCH, JERI GRIFFIN, IVANA HARRINGTON, JACK LEIVA, TERI PARKE, THOMAS WALKER, PETE WISEMAN, RENEE BRAUN, ELIZABETH SCOTT, VERONICA MORGAN, and  THERESA FORREST, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> KEYBANK, N.A., <br><br> Defendant. | No. 12 Civ. 7836 (RWS) (RLE) |

**DECLARATION OF JUSTIN M. SWARTZ IN SUPPORT OF PLAINTIFFS'
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT,
CONDITIONAL CERTIFICATION OF THE SETTLEMENT CLASS,
APPOINTMENT OF PLAINTIFFS' COUNSEL AS CLASS COUNSEL, AND
APPROVAL OF PLAINTIFFS' PROPOSED NOTICES OF SETTLEMENT**

I, Justin M. Swartz, declare as follows:

1.      I am a partner in the firm of Outten & Golden LLP ("O&G") in New York, New York, Plaintiff's counsel herein, and co-chair of its Class Action Practice Group.  O&G is a 30+ attorney firm based in New York City that focuses on representing plaintiffs in a wide variety of employment matters, including individual and class action litigation that involve wage and hour, discrimination, and harassment claims, as well as contract and severance negotiations.

2.      I am one of the lawyers primarily responsible for prosecuting Plaintiffs' claims on behalf of the proposed class.

3.      I make these statements based on personal knowledge and would so testify if called as a witness at trial.

## My Background and Experience

4.      I received a Juris Doctor degree from DePaul University School of Law in 1998 with honors.  Since then, I have exclusively represented plaintiffs in employment litigation and other employee rights matters.

5.      I was admitted to the bar of the State of Illinois in 1998, and the bar of the State of New York in 2002.  I am also admitted to the bars of the Second Circuit Court of Appeals, the United States District Courts for the Western, Eastern, and Southern Districts of New York, and the Northern District of Illinois.  I am a member in good standing of each of these bars.

6.      From September 1998, through February 2002, I was associated with Stowell & Friedman, Ltd. in Chicago, Illinois, where I represented plaintiffs in class and multi-plaintiff employment discrimination cases.  From March 2002, through October 2003, I worked for Goodman & Zuchlewski, LLP in New York City where I represented employees in discrimination cases and other employee rights matters.

7.      Since joining O&G in December 2003, I have been engaged primarily in

prosecuting wage and hour class and collective actions and class action discrimination cases.

8.       I am or was co-lead counsel on several wage and hour cases that district courts have certified as class actions and/or collective actions including *Torres v. Gristede's Operating Corp.*, No. 04 Civ. 3316, 2006 WL 2819730 (S.D.N.Y. Sept. 29. 2006), in which the Court granted summary judgment in favor of Plaintiffs and a class of more than 300 grocery store workers, *see* 628 F. Supp. 2d 447 (S.D.N.Y. Aug. 28, 2008).   Others include *Toure v. Amerigroup Corp.*, No. 10 Civ. 5391, 2012 WL 3240461, at *2-4 (E.D.N.Y. Aug. 6, 2012) (certifying class and approving settlement of wage and hour class action brought under New York and federal law); *Palacio v. E*TRADE Financial Corp.*, No. 10 Civ. 4030, 2012 WL 1058409, at *1-2 (S.D.N.Y. Mar. 12, 2012) (certifying class and approving settlement of wage and hour class action brought under New York, California, and federal law);   *Johnson v. Brennan*, No. 10 Civ. 4712, 2011 WL 1872405, at *1 (S.D.N.Y. May 17, 2011) (certifying class and approving settlement of wage and hour class action brought under New York and federal law); *Dorn v. Eddington Sec., Inc.*, No. 08 Civ. 10271, 2011 WL 382200, at *3 (S.D.N.Y. Jan. 21, 2011) (same); *Clark v. Ecolab Inc.*, Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2009 WL 6615729, at *4 (S.D.N.Y. May 11, 2010) (certifying class and approving settlement of multi-state wage and hour class action); *Westerfield v. Washington Mut. Bank*, Nos. 06 Civ. 2817, 08 Civ. 287, 2009 WL 6490084, at *1-3 (E.D.N.Y. June 26, 2009) (same); and *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 165 (S.D.N.Y. 2008) (granting class certification and appointing O&G class counsel in multi-state wage and hour class action).

9.       I am a member of the National Employment Lawyers Association ("NELA") and serve on the Executive Board of its New York Chapter ("NELA/NY").   I am co-chair of NELA's Fair Labor Standards Act Committee.   I served on the Civil Rights Committee of the New York

City Bar Association of the Bar of the City of New York from 2005 through 2008 and the Committee on Labor and Employment Law from September 2002 until June 2005.  I was co-chair of the American Bar Association Labor and Employment Law Section Ethics and Professional Responsibility Committee from 2006 through 2009, and am a member of its Equal Employment Opportunity Committee.  I also serve on the Recent Graduate Advisory Group of the New York University Center for Labor and Employment Law.

10.     I speak frequently on employment law issues, including wage and hour issues and discrimination issues.  I have recently been a faculty member for continuing legal education programs focused on employment law and ethics sponsored by the American Bar Association Section of Labor and Employment Law; the New York State Bar Association Labor and Employment Law Section; the New York City Bar Committee on Labor and Employment Law, NELA, and the Practicing Law Institute, among others.

11.     In connection with my work, I regularly read the New York Law Journal, advance sheets, and other literature related to employment law and class action law developments.  I attend workshops and seminars at least four times per year sponsored by NELA, NELA/NY, the American Bar Association, and other organizations.

12.     Courts have repeatedly found O&G to be adequate class counsel in wage and hour class actions.  *See, e.g., Toure*, at *5 ("Class Counsel have substantial experience prosecuting and settling employment class actions, including wage and hour class actions, and are well-versed in wage and hour law and in class action law"); *Capsolas v. Pasta Res. Inc.*, No. 10 Civ. 5595, 2012 WL 1656920, at *2 (S.D.N.Y. May 9, 2012) (O&G attorneys "have years of experience prosecuting and settling wage and hour class actions, and are well-versed in wage and hour law and in class action law"); *Palacio*, 2012 WL 1058409, at *2 ("O & G has extensive

4

experience prosecuting and settling nationwide wage and hour class and collective actions and ar[e] well-versed in wage and hour and class action law"); *Johnson*, 2011 WL 1872405, at *2 ("Outten & Golden . . . have years of experience prosecuting and settling wage and hour class actions, and are well-versed in wage and hour law and in class action law."); *Clark v. Ecolab Inc.*, Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2009 WL 6615729, at *5 (S.D.N.Y. Nov. 27, 2009) ("Outten & Golden [lawyers] . . . are skilled and experienced employment class action lawyers . . . [and] have extensive experience prosecuting and settling nationwide wage and hour class and collective actions.").

**Shavitz Law Group, P.A.'s Background and Experience**

13.     O&G's co-counsel in this matter is Gregg I. Shavitz of the Shavitz Law Group, P.A. ("Shavitz Law Group").

14.     Gregg I. Shavitz received a Juris Doctor degree from the University of Miami in 1994.  He practices extensively in the area of wage & hour law.  Florida Trend Magazine regularly recognized Mr. Shavitz as a Legal Elite attorney in the area of labor & employment law, and Mr. Shavitz has received LexisNexis Martindale-Hubbell's highest "AV" Peer Review Rating for preeminent attorneys.  The 2009 Super Lawyers Publication listed Mr. Shavitz as one of Florida's Rising Stars in the field of Labor and Employment law, and the 2009 and 2011 South Florida Legal Guide recognized Mr. Shavitz a Top Lawyer in the field of Wage and Hour law. Mr. Shavitz also earned the distinction of Top Lawyer in Palm Beach Illustrated (2011) and is a lifelong fellow of the Florida Bar Foundation.

15.     The Shavitz Law Group has served as class counsel in numerous cases in the past decade, including *Palacio*, 2012 WL 1058409, at *2 (appointing the Shavitz Law Group as Class Counsel based on their experience in "numerous wage and hour class and collective actions");

*Nash v. CVS Caremark Corp.*, No. 09 Civ. 79 (D.R.I. Dec. 9, 2011) (finding the Shavitz Law Group, among other counsel, adequate to serve as class counsel) (attached here to as **Exhibit A**); *Saliford v. Regions Financial Corp.,* No. 10 Civ. 61031 (S.D. Fla.); *Stewart v. Prince Telecom, Inc.*, No. 10 Civ. 4881 (S.D.N.Y.); *Hosier v. Mattress Firm, Inc.*, No. 10 Civ. 294 (M.D. Fla.); *Briscoe-Grey v. Sears Holding Corp.*, No. 09 Civ. 81408 (S.D. Fla.); *Lewis v. Iowa Coll. Acquisition Corp.*, No. 08 Civ. 61011 (S.D. Fla.); and *Brooks v. First Data Corp.*, No. 11-18202 (Fla. Cir. Ct.); among others.

**<u>Thorough Investigation of the Class Claims</u>**

16.     This proposed settlement would resolve claims brought by Plaintiffs Eric Beckman, Steve Bunch, Jeri Griffin, Ivana Harrington, Jack Leiva, Teri Parke, Thomas Walker, Pete Wiseman, Renee Braun, Elizabeth Scott, Veronica Morgan, and Theresa Forrest ("Plaintiffs") on behalf of themselves and other similarly situated Relationship Managers ("RMs") and those in comparable positions employed by KeyBank, N.A. (collectively "KeyBank" or "Defendant"), alleging that Defendant violated federal and state wage and hour laws by misclassifying them as exempt employees and failing to pay them and other RMs overtime wages.

17.     Before the initiation of this action, I, along with a team of attorneys and paralegals at O&G and our co-counsel, the Shavitz Law Group, conducted a thorough investigation into the merits of the potential claims and defenses.  We focused our investigation and legal research on the underlying merits of Class Members' claims, the damages to which they were entitled, and the propriety of class certification.

18.     We conducted in-depth interviews with the twelve Plaintiffs to determine the hours that they worked, the wages they were paid, the nature of their duties and responsibilities,

and other information relevant to their claims.   We also obtained and reviewed numerous documents from Plaintiffs related to their employment with KeyBank, including pay records, offer letters, employee handbooks, and other related documents.

19.     We conducted in-depth background research on KeyBank, including reviewing SEC filings and other public documents, to obtain information on KeyBank's corporate structure and facilities. We also obtained numerous job postings for the Relationship Manager position from across the country to determine the nature of the duties and responsibilities of the position. We also obtained investigation reports and other documents about KeyBank's labor practices from the U.S. Department of Labor through a Freedom of Information Act request.

**Settlement Negotiations**

20.     On June 17, 2011, Plaintiffs sent KeyBank a letter in which they summarized their potential claims and invited KeyBank to engage in pre-litigation settlement discussions.

21.     In response to the letter, the Parties agreed to enter a tolling agreement to discuss a possible resolution of Plaintiffs' claims.  On November 29, 2011, the Parties met in New York to exchange their initial positions.  Over the next several months, the Parties negotiated a process for attempting to resolve the claims, entered into a confidentiality agreement, and engaged in an informal exchange of documents and other data to assess the claims and calculate damages in advance of private mediation.

22.     Prior to the Parties' mediation, Defendant produced various documents, including job descriptions for the RM positions, a copy of the entire U.S. Department of Labor investigatory file concerning its review of KeyBank job classifications from February 2009, and data showing the number of Class Members in relevant job titles, salaries, incentive pay, weeks worked, and location of employment.  Defendant additionally produced documents evidencing

branch hours per locations to assist in the analysis of hours worked.  Plaintiffs and Defendant both retained economic experts to analyze the data and perform damages calculations.

23.     On June 13, 2012, the Parties attended a full day mediation session in Chicago with David Rotman, Esq., a well-known and experienced mediator in wage and hour law.  At the mediation, the Parties reached agreement on the settlement amount and several other key terms.

24.     During the next several months, the Parties negotiated the remaining terms of the settlement, which were memorialized in a formal Joint Settlement and Release ("Settlement Agreement").  A true and correct copy of the Settlement Agreement is attached hereto as **Exhibit B.**

25.     At all times during the settlement negotiation process, negotiations were conducted on an arm's-length basis.  Ex. B (Settlement Agreement) § 5.5.

**Litigation**

26.     As contemplated in the Settlement Agreement, on October 19, 2012, Plaintiffs filed a Class Action Complaint against Defendant in the United States District Court for the Southern District of New York on behalf of themselves and others similarly situated alleging that Defendant violated the Fair Labor Standards Act ("FLSA") and the wage and hour laws of New York, Ohio, Colorado, Washington, Oregon, and Maine by improperly classifying Relationship Managers as exempt from federal and state overtime requirements, and sought recovery of overtime wages, attorneys' fees and costs, interest, and liquidated damages.

**Settlement Terms and Allocation Formula**

27.     The Settlement Agreement creates a common fund of $4,900,000 (Four Million Nine Hundred Thousand Dollars) to settle claims against the Defendant (the "Fund").  Ex. B (Settlement Agreement) § 3.1(A).  The Fund covers Class Members' awards, service payments,

attorneys' fees and costs, settlement administrator's fees and costs, and any fees and costs associated with investing and liquidating the Fund.  Ex. B (Settlement Agreement) § 3.1(A). Defendant will pay all applicable employer-side payroll taxes.  Ex. B (Settlement Agreement) § 3.5(C).

28.     Class Members who are entitled to receive payments from the Fund include two groups of persons employed by KeyBank as RMs ("Class Members"):

      a.     Rule 23 Class:  The "Rule 23 Class" consists of the following six sub-classes of individuals ("Rule 23 Class Members"):

            i.     New York Sub-Class:  The "New York Sub-Class" consists of all individuals who were employed as RMs in the State of New York from June 13, 2006 to the date of the Preliminary Approval Order;

            ii.     Ohio Sub-Class:   The "Ohio Sub-Class" consists of all individuals who were employed as RMs in the State of Ohio from June 13, 2009 to the date of the Preliminary Approval Order;

            iii.     Colorado Sub-Class:  The "Colorado Sub-Class" consists of all individuals who were employed as RMs in the State of Colorado from June 13, 2009 to the date of the Preliminary Approval Order;

            iv.     Washington Sub-Class:   The "Washington Sub-Class" consists of all individuals who were employed as RMs in the State of Washington from June 13, 2009 to the date of the Preliminary Approval Order;

            v.     Oregon Sub-Class:  The "Oregon Sub-Class" consists of all individuals who were employed as RMs in the State of Oregon from June 13, 2009 to the date of the Preliminary Approval Order; and

            vi.     Maine Sub-Class:  The "Maine Sub-Class" consists of all individuals who were employed as RMs in the State of Maine from June 13, 2009 to the date of the Preliminary Approval Order.  Ex. B (Settlement Agreement) § 1.29.

      b.     FLSA Class Members: "FLSA Class Members" consist of all individuals who were employed as RMs from June 13, 2009 to the date of the Preliminary Approval Order.  Ex. B (Settlement Agreement) § 1.14.

29.    Defendant agreed not to oppose the Preliminary Approval Motion.  Ex. B (Settlement Agreement) § 2.3(E).

30.    The "Net Settlement Fund" is the Settlement Fund less:  (i) court-approved attorneys' fees and costs; (ii) court-approved service payments to Plaintiffs; (iii) the Claims Administrator's fees and costs; and (v) a $50,000 reserve fund to cover errors and omissions and approved additional claims ("Reserve Fund").  Ex. B (Settlement Agreement) § 1.18.

31.    Each New York Sub-Class member will be assigned one point for each week worked in New York between June 13, 2006 and the date of the Preliminary Approval Order.  Ex. B (Settlement Agreement) § 3.4(B)(1).

32.    All other Class Members will be assigned one point for each week worked in any state other than New York between June 13, 2009 and the date of the Preliminary Approval Order.  Ex. B (Settlement Agreement) § 3.4(B)(2).

33.    The Claims Administrator will then divide the total number of points for each class member by the total number of points for all Class Members to determine each class member's portion of the Fund.  Ex. B (Settlement Agreement) § 3.4(B)(a), (b).  The Claims Administrator will then multiply each class member's portion of the Fund by the Fund to determine the amount to be paid to each class member. Ex. B (Settlement Agreement) § 3.4(B)(4).

34.    Unnegotiated settlement checks to Rule 23 Class Members will be redistributed among the Class Members who have timely negotiated their checks, except that if the aggregate remaining funds are less than fifty thousand dollars ($50,000), the unclaimed funds will be

donated to charity under the *cy pres* doctrine.  Ex. B (Settlement Agreement) § 3.1(D).
Unnegotiated settlement checks to FLSA Class Members outstanding one-hundred and eighty
(180) days after the Final Approval Order shall revert to KeyBank.  Ex. B (Settlement
Agreement) § 3.1(E).

35.     KeyBank reserves the right to revoke the Settlement Agreement if more than 10%
of the Rule 23 Class Members timely and properly opt out pursuant to the terms of the
Settlement Agreement.  Ex. B (Settlement Agreement) § 2.6.  If KeyBank exercises its right to
revoke the Settlement Agreement, the litigation will continue as if there were no attempt to settle
the matter.  Ex. B (Settlement Agreement) § 2.6.

36.     The individual settlement payments include sums for wages, interest and
liquidated damages.  The Parties agree that fifty percent (50%) of all payments to claimants will
be treated as back wages.  Ex. B (Settlement Agreement) § 3.5(A).  The remaining fifty percent
(50%) will be deemed to constitute interest, liquidated damages, and other non-wage payments.
Ex. B (Settlement Agreement) § 3.5(A).  The employee portion of all payroll taxes and
withholdings on this portion of the payments will be the responsibility of the individual class
member receiving a settlement payment.  Ex. B (Settlement Agreement) § 3.5(B).  Defendant
will pay the employer's portion of all such payroll taxes and withholdings.  Ex. B (Settlement
Agreement) § 3.5(C).

37.     Class Members will each receive an average net settlement payment (net of
attorneys' fees and costs, service awards, claims administration fees, and reserve for errors and
omissions) of approximately $1,500.

**Claims Administration**

38.      The Parties jointly selected Kurtzman Carson Consultants LLC, an experienced wage and hour claims administrator, to administer the settlement.  Ex. B (Settlement Agreement) § 1.30.

39.      There are approximately 1,579 Rule 23 Class Members.

40.      Plaintiffs Beckman, Bunch, Griffin, Harrington, Leiva, Parke, Walker, Wiseman, Braun, Scott, Morgan, and Forrest have reacted positively to the settlement, which is also evidenced by their signatures on the Settlement.

41.      Attached as **Exhibit C** is a Notice of Proposed Settlement of Class Action Lawsuit and Fairness Hearing ("Proposed Rule 23 Notice").

42.      Attached as **Exhibit D** is a Notice of Proposed Settlement of Collective Action Lawsuit and Fairness Hearing ("Proposed FLSA Notice").

I declare under penalty of perjury, under 28 U.S.C. § 1746, that the foregoing is true and correct.

Executed this 6th day of November, 2012
New York, New York.

 /s/ Justin M. Swartz_____
Justin M. Swartz
**Outten & Golden LLP**
3 Park Avenue, 29th Floor
New York, NY 10016
(212) 245-1000