# EXHIBIT B

## JOINT STIPULATION OF SETTLEMENT AND RELEASE

This Joint Stipulation of Settlement and Release (the "Agreement") is entered into by and between Eric Beckman, Ivana Harrington, Jack Leiva, Jeri Griffin, Pete Wiseman, Steve Bunch, Teri Parke, Thomas Walker, Renee Braun, Elizabeth Scott, Veronica Morgan and Theresa Forrest (collectively, the "Named Plaintiffs"), individually and on behalf of the classes of individuals that they seek to represent (collectively with Named Plaintiffs, "Plaintiffs") in the matter *Beckman, et al. v. KeyBank, N.A.*, and Defendant KeyBank, N.A. ("Defendant") (together with Plaintiffs, the "Parties").

### RECITALS

**WHEREAS**, the Parties have agreed to the filing, for settlement purposes only, of a Class and Collective Action Complaint to assert claims against Defendants under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the wage and hour laws of Colorado, Maine, New York, Ohio, Oregon, and Washington for the alleged failure to pay overtime compensation to Plaintiffs (the "Litigation"); and

**WHEREAS**, the purpose of this Agreement is to settle fully and finally all Released Claims (as hereinafter defined) between Plaintiffs and KeyBank, including all claims asserted in the Litigation; and

**WHEREAS**, KeyBank denies all of the allegations made by Named Plaintiffs in the Litigation and deny that they are liable or owe damages to anyone with respect to the alleged facts or causes of action asserted in the Litigation. Nonetheless, without admitting or conceding any liability or damages whatsoever, Defendant has agreed to settle the Litigation on the terms and conditions set forth in this Agreement, to avoid the burden, expense, and uncertainty of continuing the Litigation; and

**WHEREAS**, on or around June 27, 2011, Named Plaintiffs and Defendant agreed to engage in dialogue regarding the possibility of a voluntary resolution of the claims asserted in the Litigation and agreed to toll the limitations period on the FLSA and state wage and hour claims at issue and enter into a confidentiality agreement to facilitate an exchange of information and payroll data; and

**WHEREAS**, on June 13, 2012, the Parties participated in a mediation session of this matter in Chicago, Illinois, which was conducted by experienced class action mediator, David Rotman, Esq., of Gregorio Haldeman & Rotman, and reached an accord resulting in this Agreement; and

**WHEREAS**, without admitting or conceding any liability or damages whatsoever, KeyBank agreed to settle the Litigation on the terms and conditions set forth in this Agreement, to avoid the burden, expense, and uncertainty of continuing the Litigation; and

**WHEREAS**, Plaintiffs' Counsel analyzed and evaluated the merits of the claims made against KeyBank in the Litigation, conducted interviews with putative class and collective members, obtained and reviewed documents relating to KeyBank's compensation policies, and analyzed payroll data, and based upon their analysis and evaluation of a number of factors, and

recognizing the substantial risks of litigation, including the possibility that the Litigation, if not settled now, might not result in any recovery or might result in a recovery less favorable, and that any recovery would not occur for several years, Plaintiffs' Counsel are satisfied that the terms and conditions of this Agreement are fair, reasonable, and adequate and that this Agreement is in the best interests of the Plaintiffs.

      **NOW, THEREFORE**, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties hereto agree to a full and complete settlement of the Litigation on the following terms and conditions:

1. **DEFINITIONS**

      The defined terms set forth in this Agreement have the meanings ascribed to them below.

1.1     **Agreement.** "Agreement" means this Joint Stipulation of Settlement and Release.

1.2     **Acceptance Period.** "Acceptance Period" means the 90 days that a Class Member has to sign and cash a Settlement Check.

1.3     **Charity.** "Charity" means National Employment Law Project and The Legal Aid Society Employment Law Project, in equal proportions.

1.4     **Class Counsel.** "Class Counsel" or "Plaintiffs' Counsel" means Outten & Golden LLP and Shavitz Law Group, P.A.

1.5     **Class Members.** "Class Members" are the FLSA Collective Action Members, and all Rule 23 Class Members.

1.6     **Court.** "Court" means the United States District Court for the Southern District of New York.

1.7     **Days.** "Days" means business days if the specified number is less than 10, and calendar days if the specified number is 10 or greater.

1.8     **Defendant.** "Defendant" or "KeyBank" means KeyBank, N.A.

1.9     **Defendant's Counsel.** "Defendant's Counsel" means Ulmer & Berne LLP and Moran • Karamouzis LLP. For purposes of providing any notices required under this Agreement, Defendant's Counsel shall refer to Andrew P. Karamouzis, Esq. of Moran • Karamouzis LLP and Mark Katz, Esq. of Ulmer & Berne LLP.

1.10     **Effective Date.** "Effective Date" shall be the last of the following dates:

     (A)     If there is no appeal of the Court's Order Granting Final Approval of the Settlement, the date five (5) days after entry of such Order; or

- 2 -

(B)     If there is an appeal of the Court's Order Granting Final Approval of the Settlement, the day after all appeals are resolved in favor of final approval.

**1.11    Employer Payroll Taxes.** "Employer Payroll Taxes" means all taxes and withholdings an employer is required to make arising out of or based upon the payment of employment compensation in this Litigation, including FICA, FUTA, and SUTA obligations.

**1.12    Fairness Hearing.** "Fairness Hearing" means the hearing before the Court relating to the Motion for Final Approval.

**1.13    Final Approval Order.** "Final Approval Order" means the Order entered by the Court after the Fairness Hearing, approving the terms and conditions of this Agreement, distribution of the Settlement Checks and Service Awards, and Dismissal of the Litigation.

**1.14    FLSA Class Members.** "FLSA Class Members" means any and all current and former Relationship Managers (as hereinafter defined) employed by KeyBank during the period from June 13, 2009 through and including the date the Court grants preliminary approval of this settlement.

**1.15    Gross Settlement Amount.** "Gross Settlement Amount" means the Four Million Nine Hundred Thousand and No/100ths Dollars ($4,900,000.00), which Defendant has agreed to pay to settle the Litigation, as set forth in this Agreement.

**1.16    Litigation.** "Litigation" means the claims represented in the class and collective action complaint Named Plaintiffs will file for settlement purposes only alleged violations of the FLSA and the wage and hours laws of Colorado, Maine, New York, Ohio, Oregon, and Washington and captioned *Beckman, et al. v. KeyBank, N.A.*

**1.17    Named Plaintiffs.** "Named Plaintiffs" means Eric Beckman, Ivana Harrington, Jack Leiva, Jeri Griffin, Pete Wiseman, Steve Bunch, Teri Parke, Thomas Walker, Renee Braun, Elizabeth Scott, Veronica Morgan and Theresa Forrest.

**1.18    Net Settlement Fund.** "Net Settlement Fund" means the remainder of the Gross Settlement Amount after deductions for: (1) the Settlement Claim Administrator's fees and costs; (2) Court-approved attorneys' fees and costs for Class Counsel; (3) Court-approved Service Awards to Named Plaintiffs; and (4) a $50,000 reserve fund to cover errors and omissions.

**1.19    Notice or Notices.** "Notice" or "Notices" means the Court-approved Notice of Proposed Settlement of Class Action and Collective Action Lawsuit and Fairness Hearing and the Court-approved Notice of Proposed Settlement of FLSA Collective Action Lawsuit and Fairness Hearing.

**1.20    Objector.** "Objector" means an individual who files an objection to this Agreement, and does not include any individual who opts-out of this Agreement.

1.21 **Opt-in Plaintiffs.** "Opt-in Plaintiffs" means those individuals who opt into the Litigation by negotiating their Settlement Checks before the end of the ninety (90) day Acceptance Period.

1.22 **Opt-out Period. "Opt-out Period" means the period of time that Rule 23 Class Members have to opt-out of the settlement, which period shall be thirty (30) days from the mailing of the Notice to the Class Member, but no later than sixty (60) days from the Preliminary Approval Order.**

1.23 **Opt-out Statement.** "Opt-out Statement" is a written signed statement that an individual Rule 23 Class Member has decided to opt-out and not be included in this Agreement.

1.24 **Parties.** "Parties" shall mean, collectively, Named Plaintiffs, the Rule 23 Class Members, FLSA Class Members, and Defendant.

1.25 **Plaintiffs.** "Plaintiffs" shall mean Named Plaintiffs, the Rule 23 Class Members, and FLSA Class Members.

1.26 **Preliminary Approval Order.** "Preliminary Approval Order" means the Order entered by the Court preliminarily approving the terms and conditions of this Agreement, and directing the manner and timing of providing Notices to the Class Members.

1.27 **Qualified Settlement Fund or QSF.** "Qualified Settlement Fund" or "QSF" means the account established by the Settlement Claims Administrator for the Settlement Amount paid by Defendant. The QSF will be controlled by the Settlement Claims Administrator subject to the terms of this Agreement and the Court's Orders for Preliminary Approval and Final Approval. Interest, if any, earned on the QSF will become part of the Settlement Amount.

1.28 **Relationship Managers.** "Relationship Managers" or "RMs" means KeyBank Relationship Managers (RMI – Job Category 76; RMII – Job Category 78; and RMII Licensed – Job Category 79).

1.29 **Rule 23 Class Members; State Sub-Classes.** "Rule 23 Class Members" are RMs who fit within the definitions set forth in subparagraphs (A) through (F) below (the "State Sub Classes").

    (A)    The **Colorado Sub-Class** means all individuals who were employed as RMs in the State of Colorado from June 13, 2009 to the date of the Preliminary Approval Order; and

    (B)    The **Maine Sub-Class** means all individuals who were employed as RMs in the State of Maine from June 13, 2009 to the date of the Preliminary Approval Order; and

    (C)    The **New York Sub-Class** means all individuals who were employed as RMs in the State of New York from June 13, 2006 to the date of the Preliminary Approval Order; and

(D)     The **Ohio Sub-Class** means all individuals who were employed as RMs in the State of Ohio from June 13, 2009 to the date of the Preliminary Approval Order; and

(E)     The **Oregon Sub-Class** means all individuals who were employed as RMs in the State of Maine from June 13, 2009 to the date of the Preliminary Approval Order; and

(F)     The **Washington Sub-Class** means all individuals who were employed as RMs in the State of Washington from June 13, 2009 to the date of the Preliminary Approval Order.

1.30    **Settlement Claims Administrator.** The "Settlement Claims Administrator" will be **Kurtzman Carson Consultants LLC**, which was jointly selected by Class Counsel and Defendant's Counsel. The Settlement Claims Administrator will be responsible for locating Class Members; mailing the Notices to Class Members; responding to Class Member inquiries; resolving disputes relating to Class Members' workweeks worked and settlement share amounts; calculating Class Members' settlement shares; reporting on the state of the Settlement to the Parties; distributing settlement payments and withholding Class Members' share of taxes; remitting such withheld funds to the appropriate taxing authorities; coordinating collection and compilation of the Settlement Checks for filing with the Court; preparing a declaration regarding its due diligence in the claims administration process; and performing such other duties as the Parties may jointly direct or as are specified herein. The Settlement Claims Administrator's fees shall be borne by the QSF.

1.31    **Settlement Checks.** "Settlement Checks" means checks issued to Class Members for their share of the Net Settlement Fund calculated in accordance with this Agreement.

2.      **APPROVAL AND CLASS NOTICE**

2.1     **Binding Agreement.** This Agreement is a binding agreement and contains all material agreed-upon terms for the Parties to seek a full and final settlement of the Litigation.

2.2     **Retention of the Settlement Claims Administrator.** The Settlement Claims Administrator will be responsible for the mailing of Notices to Class Members in accordance with the Court's Preliminary Approval Order, distributing Service Awards, calculating the Settlement Checks in accordance with the Court's Final Approval Order, the claims administration process, distribution of the Settlement Checks to Class Members, providing the original Settlement Checks signed by the Class Members to Defendant's Counsel, providing copies of the Settlement Checks to Class Counsel for filing with the Court, and all other ancillary or related claims administration matters.

(A)     The Parties will have equal access to the Settlement Claims Administrator and all information related to the administration of the settlement. The Settlement Claims Administrator will provide regular reports to the Parties regarding the status of the mailing of the Notices to Class Members, the claims administration process, and distribution of the Settlement Checks.

(B)     Defendant agrees to cooperate with the Settlement Claims Administrator, provide accurate information, to the extent reasonably available, necessary to calculate the Settlement Checks, and assist the Settlement Claims Administrator in locating Class Members.

**2.3    Preliminary Approval Motion.**

(A)     For settlement purposes only, the Parties stipulate to the filing by Named Plaintiffs of a class and collective action complaint in the United States District Court for the Southern District of New York (the "Court") alleging claims for unpaid overtime wages against Defendant.

(B)     Within fifteen (15) days after the execution of this Agreement, Plaintiffs will submit to Defendant a draft Class and Collective Action Complaint ("Complaint") and a draft Motion for an Order Conditionally Certifying the Settlement Class and Preliminarily Approving the Class Action Settlement ("Preliminary Approval Motion"). Named Plaintiffs will allow Defendant ten (10) days to review and comment on the terms of the Complaint and Preliminary Approval Motion.

(C)     At the expiration of the review and comment period described *supra*, Named Plaintiffs will file the Complaint. Within ten (10) days thereof, Named Plaintiffs will file the Preliminary Approval Motion. In connection with the Preliminary Approval Motion, Plaintiffs will submit to the Court a proposed Notice of Settlement of Class and Collective Action Lawsuit and Fairness Hearing; a proposed Notice of Settlement of Collective Action Lawsuit and Fairness Hearing; a proposed distribution method for the Settlement Amount and calculation of the Settlement Checks; and a proposed Preliminary Approval Order.

(D)     The proposed Preliminary Approval Order will include the findings required by Federal Rule of Civil Procedure 23(a) and 23(b)(3) as well as the FLSA, 29 U.S.C. § 201 *et seq.*,. The Preliminary Approval Motion also will seek the setting of date(s) for individuals to opt-out of the Rule 23 Class and/or file objections to the settlement, which date shall be thirty (30) days from the mailing of the Notice to the Class Member, but no later than sixty (60) days from the Preliminary Approval Order, and for a Fairness Hearing for Final Approval of the settlement before the Court at the earliest practicable date.

(E)     In the Preliminary Approval Motion, Class Counsel will inform the Court of the intended process to obtain a "Final Approval Order" and a "Judgment of Dismissal" that will, among other things: (1) approve the settlement as fair, adequate and reasonable; (2) incorporate the terms of the Release, as described herein; (3) dismiss the Litigation with prejudice; (4) award Class Counsel fees and costs; and (5) award Service Awards to Named Plaintiffs. Defendant shall not oppose the Preliminary Approval Motion.

(F)   If the Court denies the Preliminary Approval Motion, unless the Parties jointly agree to seek reconsideration of the ruling or to seek Court approval of a renegotiated settlement, the Litigation will resume as if no settlement had been attempted.  Defendant retains the right to contest whether the Litigation should be maintained as a class action or collective action and to contest the merits of the claims being asserted in the Litigation.

(G)   The Parties will work together, diligently and in good faith, to obtain expeditiously a Preliminary Approval Order, Final Approval Order, and Final Judgment and Dismissal.

**2.4   Notice to Class Members**

(A)   Within ten (10) days of the Court's issuance of a Preliminary Approval Order, Defendant will provide the Settlement Claims Administrator, in electronic form, for all Class Members, as of the date of the Preliminary Approval Order, the following information: name, Social Security Number, last known addresses, last known personal and business email addresses, dates of employment, job titles, with dates, and workweeks within the applicable statute of limitations, as that information exists on file with Defendant ("Class List").

(B)   Within twenty (20) days of the Court's issuance of the Preliminary Approval Order, the Settlement Claims Administrator will mail to all Rule 23 Class Members, via First Class United States Mail, postage prepaid, the Court-approved Notice of Settlement of Class and Collective Action Lawsuit and Fairness Hearing.

(C)   Within twenty (20) days of the Court's issuance of the Preliminary Approval Order, the Settlement Claims Administrator will mail to all FLSA Collective Action Members, via First Class United States Mail, postage prepaid, the Court-approved Notice of Settlement of Collective Action Lawsuit and Fairness Hearing.

(D)   The Settlement Claims Administrator will take reasonable steps to obtain the correct address of any Class Members for whom a Notice is returned by the post office as undeliverable and shall attempt re-mailings as described in this Agreement.  The Settlement Claims Administrator will notify Class Counsel and Defendant's Counsel of any Notice sent to a Class Member that is returned as undeliverable after the first mailing, as well as any such Notice returned as undeliverable after any subsequent mailing(s) as set forth in this Agreement.

**2.5   Rule 23 Class Member Opt-outs.**

(A)   Rule 23 Class Members who choose to opt-out of the settlement as set forth in this Agreement must mail, via First Class United States Mail, postage prepaid, a written, signed statement to the Settlement Claims Administrator that states he or she is opting out of the settlement, and include his or her name, job title, address, and telephone numbers and states, "I opt out of the KeyBank wage and hour

settlement" ("Opt-out Statement").  To be effective, an Opt-out Statement must be postmarked within thirty (30) days from the mailing of the Notice to the Class Member and no later than sixty (60) days from the Preliminary Approval Order (the "Opt-out Period").

(B) Class Members whose first mailing was returned to the Settlement Claims Administrator as undeliverable will be allowed to opt-out or object up to thirty (30) days from the date of the second mailing but no later than sixty (60) days from the Preliminary Approval Order. The Settlement Claims Administrator shall not attempt more than two (2) mailings of the Notice and Claim Form to any Class Member, and no mailing shall occur more than thirty (30) days after the first mailing to Class Members.

(C) The Settlement Claims Administrator shall keep accurate records of the dates on which it sends Notices to Class Members.

(D) The Settlement Claims Administrator will stamp the postmark date on the original of each Opt-out Statement that it receives and shall serve copies of each Opt-out Statement on Class Counsel and Defendant's Counsel not later than five (5) days after receipt thereof.  The Settlement Claims Administrator will also, within five (5) days of the end of the Opt-out Period, file with the Clerk of Court, stamped copies of any Opt-out Statements.  The Settlement Claims Administrator will, within twenty-four (24) hours of the end of the Opt-out Period, send a final list of all Opt-out Statements to Class Counsel and Defendant's Counsel by both email and overnight delivery.  The Settlement Claims Administrator will retain the stamped originals of all Opt-out Statements and originals of all envelopes accompanying Opt-out Statements in its files until such time as the Settlement Claims Administrator is relieved of its duties and responsibilities under this Agreement.

(E) Any Class Member who does not properly submit an Opt-out Statement pursuant to this Agreement, will be deemed to have accepted the settlement and the terms of this Agreement and will be issued a Settlement Check, which will contain a release of both their FLSA and state law claims, and a consent-to-join the Litigation, as set forth in this Agreement.

2.6 **KeyBank's Ability to Revoke.** KeyBank has the right to revoke this Agreement if more than 10% of the Rule 23 Class Members timely and properly opt-out under Sections 2.5(A) and (B), by delivering written notice to Plaintiffs' Counsel of its intent to revoke within ten (10) days after the end of the Opt-out Period.  If KeyBank revokes this Agreement, the Litigation will proceed as if there was no attempt at settlement.  In that event, the classes certified for purposes of settlement shall be decertified, and KeyBank may contest whether this Litigation should be maintained as a class action or collective action and contest the merits of the claims being asserted by Plaintiffs in the Litigation.

**2.7    Objections to Settlement.**

    (A)    Class Members who wish to present objections to the proposed settlement at the Fairness Hearing must first do so in a written statement ("Written Objection"). To be considered, the Written Objection must be mailed to the Settlement Claims Administrator, via First-Class United States Mail, postage prepaid, and be received by the Settlement Claims Administrator by a date certain thirty (30) days from the mailing of the Notice to the Class Member and no later than sixty (60) days from the Preliminary Approval Order. The Written Objection must include (1) the words, "I object to the Key Bank wage and hour settlement;" (2) all reasons for the objection (any reasons not included in the statement will not be considered); and the name, job title, address, and telephone numbers for the Class Member making the objection. An objection will not be valid or considered by the Court if it does not specifically comply with all of the requirements listed herein. The Settlement Claims Administrator will stamp the date received on the original and send copies of each Written Objection to Class Counsel and KeyBank's Counsel by email and overnight delivery no later than three (3) days after receipt thereof. The Settlement Claims Administrator will also file the date-stamped originals of any and all Written Objections with the Court within three (3) days after the end of the Opt-out Period.

    (B)    An individual who files objections to the settlement ("Objector") also has the right to appear at the Fairness Hearing either in person or through counsel hired by the Objector. An Objector who wishes to appear at the Fairness Hearing must state his or her intention to do so in writing on his or her written objections at the time he or she submits his or her written objections. An Objector may withdraw his or her objections at any time. No Class Member may appear at the Fairness Hearing unless he or she has filed a timely objection that complies with the procedures provided in this section. No Class Member may present an objection at the Fairness Hearing based on a reason not stated in his or her Written Objections. A Class Member who has submitted an Opt-out Statement may not submit objections to the Settlement or speak at the Fairness Hearing.

    (C)    The Parties may file with the Court written responses to any filed objections no later than three (3) days before the Fairness Hearing.

**2.8    Motion for Judgment and Final Approval.** Not later than fifteen (15) days before the Fairness Hearing, Plaintiffs will submit a Motion for Judgment and Final Approval.

**2.9    Entry of Judgment.** At the Fairness Hearing, the Parties will request that the Court, among other things, (a) certify the State Sub-Classes for purposes of settlement, (b) enter Judgment in accordance with this Agreement, (c) approve the settlement and Agreement as final, fair, reasonable, adequate, and binding on all Class Members who have not timely opted out pursuant to Section 2.5, and (d) dismiss the Litigation with prejudice.

**2.10    Effect of Failure to Grant Final Approval.** In the event the Court fails to enter Judgment in accordance with this Agreement or such Judgment does not become Final as

defined herein, the Parties shall resume the Litigation unless the Parties jointly agree to:
(1) seek reconsideration or appellate review of the decision denying entry of Judgment, or
(2) attempt to renegotiate the settlement and seek Court approval of the renegotiated
settlement. In the event any reconsideration and/or appellate review is denied, or a
mutually agreed-upon settlement is not approved:

(A)     The Litigation will proceed as if no settlement had been attempted. In that event,
        the class certified for purposes of settlement shall be decertified, and Defendants
        may contest whether this Litigation should be maintained as a class action or
        collective action and contest the merits of the claims being asserted by Plaintiffs
        in this action. In such a case, the Parties will negotiate and submit for Court
        approval a revised case management schedule.

(B)     The Court will provide notice to Class Members that the Agreement did not
        receive final approval and that, as a result, no payments will be made to Class
        Members under the Agreement. Such notice shall be mailed by the Settlement
        Claims Administrator via First Class United States Mail, postage prepaid, to the
        addresses used by the Settlement Claims Administrator in mailing the Notice of
        Proposed Settlement of Class Action Lawsuit and Fairness Hearing.

**2.11   Releases and Consents to Join.**

(A)     A Class Member who does not timely return an Opt-out Statement will be issued
        a Settlement Check by the Settlement Claims Administrator from the QSF in
        accordance with the Final Approval Order.

(B)     All Settlement Checks shall contain on the back of the check, the following
        limited endorsement:

        **"CONSENT TO JOIN AND FINAL RELEASE OF CLAIMS:**

        I understand that I have up to ninety (90) days from the date I was mailed this
        Settlement Check to sign and cash this Settlement Check.

        By endorsing this check, I consent to join in the case entitled *Beckman, et al. v.
        KeyBank, N.A.*, No. 12 Civ. XX (XX), now pending in the United States District
        Court for the Southern District of New York, and agree to be bound by the
        Settlement Agreement negotiated by Class Counsel in that case.

        I irrevocably and unconditionally waive, release, extinguish, acquit, and forever
        discharge any claim that I have or might have against KeyBank, its parents,
        affiliates, subsidiaries, officers, directors, shareholders, agents, and/or employees,
        for unpaid wages or overtime pay, or any other claim for violations of all
        applicable federal or state wage and hour laws, relating to my employment with
        KeyBank as a Relationship Manager up to and including the date of the
        Preliminary Approval Order.

_____        Dated:_____

Signature

(C)    The Settlement Checks will be mailed to the Class Members and the attorneys' fees and costs checks mailed to Class Counsel by the Settlement Claims Administrator three (3) days after the time to appeal the Final Approval Order and Judgment for Dismissal has expired.

(D)    The Court will retain jurisdiction over the case following the entry of the Judgment for Dismissal until thirty (30) days after the end of the Acceptance Period. The Settlement Claims Administrator will notify the Court of the expiration of the Acceptance Period.

## 3.    SETTLEMENT TERMS

### 3.1    Settlement Amount.

(A)    KeyBank agrees to pay the Gross Settlement Amount (Four Million Nine Hundred Thousand and No/100ths Dollars ($4,900,000.00)), which shall fully resolve and satisfy any and all claims for attorneys' fees and costs approved by the Court, any and all amounts to be paid to Class Members, any Court-approved Service Awards to Named Plaintiffs, any and all fees and costs associated with investing and liquidating the QSF, and the Settlement Claims Administrator's fees and costs. Other than the employer payroll taxes described in Section 3.5(C), KeyBank will not be required to pay more than the gross total of Four Million Nine Hundred Thousand and No/100ths Dollars ($4,900,000.00) under the terms of this Agreement.

(B)    By no later than ten (10) days after the date of the Preliminary Approval Order, KeyBank shall deposit Four Million Nine Hundred Thousand and No/100ths Dollars ($4,900,000.00) into the QSF. Any interest accrued from the QSF shall immediately be added to and become part of the Gross Settlement Amount.

(C)    Class Members will have ninety (90) days from the date of mailing to negotiate their Settlement Checks (the "Acceptance Period"). Class Members will be informed of the Acceptance Period in the Notices and on the Settlement Checks.

(D)    The Settlement Claims Administrator shall set aside Fifty Thousand Dollars ($50,000.00) of the QSF to cover any correctable errors or omissions, and satisfy any claim for relief allowed pursuant to Fed. R. Civ. P. 60(b)(1) or 60(d). This amount will remain in the QSF. Any amount remaining one hundred eighty (180) days after the Final Approval Order and after any correctable errors or omissions are covered will be redistributed among the Rule 23 Class Members and Opt-in Plaintiffs who have timely cashed their checks. Additionally, any unnegotiated Settlement Checks to Rule 23 Class Members or Service Award checks outstanding one hundred eighty (180) days after the Final Approval Order will be redistributed among the Class Members who have timely negotiated their checks. However, if the aggregate remaining funds from the QSF and any unnegotiated settlement checks for Rule 23 Class Members is less than the sum of

Fifty Thousand Dollars ($50,000.00) in the aggregate thereby making redistribution impractical, the unclaimed funds will be donated to the Charity under the *cy pres* doctrine. To the extent the aggregate remaining funds exceed $50,000.00, but it is determined to still be impractical to distribute the remaining amount, it will be paid to the Charity under the *cy pres* doctrine only if agreed by both parties, and subject to Court approval.

(E)     Any unnegotiated Settlement Checks to FLSA Collective Action Members outstanding in the QSF one hundred eighty (180) days after the Final Approval Order shall revert to KeyBank. These remaining funds shall be sent to KeyBank by the Settlement Administrator no later than ten (10) days after the expiration of the one hundred eighty (180) day period.

**3.2     Settlement Amounts Payable as Attorneys' Fees and Costs.**

(A)     At the Fairness Hearing and Motion for Final Approval, Class Counsel will petition the Court for an award of attorneys' fees of no more than one-third (1/3) of the Settlement Amount, and, in addition, for reimbursement of their actual litigation costs and expenses to be paid from the QSF. KeyBank will not oppose this application. After depositing the Settlement Amount with the Settlement Claims Administrator for the QSF, KeyBank shall have no additional liability for Class Counsel's attorneys' fees and costs.

(B)     The substance of Class Counsel's application for attorneys' fees and costs is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Litigation. The outcome of any proceeding related to Class Counsel's application for attorneys' fees and costs shall not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Final Approval.

**3.3     Service Awards to Certain Plaintiffs.**

(A)     In return for services rendered to the Class Members, at the Fairness Hearing, Named Plaintiffs Eric Beckman, Ivana Harrington, Jack Leiva, Jeri Griffin, Pete Wiseman, Steve Bunch, Teri Parke, and Thomas Walker will each apply to the Court to receive Seven Thousand Five Hundred and No/100ths Dollars ($7,500.00) as a Service Award from the QSF, and Named Plaintiffs Renee Braun, Elizabeth Scott, Veronica Morgan and Theresa Forrest will each apply to the Court to receive Five Thousand and No/100ths Dollars ($5,000.00) as a Service Award from the QSF. KeyBank will not oppose such applications. Additionally, Named Plaintiffs Ivana Harrington and Jack Leiva shall be assigned one additional point for each week worked in New York between June 27, 2005 and June 12, 2006 pursuant to the formula in 3.4(B)(1), and Named Plaintiffs Eric Beckman, Jeri Griffin, Pete Wiseman, Steve Bunch, Teri Parke, and Thomas Walker shall be assigned one additional point for each week worked in any State other than New York between June 27, 2008 and June 12, 2009 pursuant to the formula in 3.4(B)(2).

(B)     The application for Service Awards is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Litigation.   The outcome of the Court's ruling on the application for Service Awards will not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Final Approval or for Final Judgment and Dismissal.

**3.4     Net Settlement Fund and Allocation to Class Members.**

(A)     The allocation to Class Members for Settlement Checks will be made from the Net Settlement Fund.

(B)     A Class Member's proportionate share of the Net Settlement Fund will be determined by the Settlement Claims Administrator pursuant to the following formula:

(1)     Each Class Member who worked in the State of New York shall be assigned one point for each week worked in New York between June 13, 2006 and the date of the Preliminary Approval Order.

(2)     Each Class Member who worked in any State other than New York shall be assigned one point for each week worked in any State other than New York between June 13, 2009 and the date of the Preliminary Approval Order.

(3)     To calculate each Class Member's proportionate share:

(a)     Add all points for Class Members together to obtain the "Total Denominator;"

(b)     Divide the number of points for each Class Member by the Total Denominator to obtain each Class Member's "Portion of the Net Settlement Fund."

(4)     Multiply each Class Member's Portion of the Net Settlement Fund by the Net Settlement Fund to determine each Class Member's "Settlement Award."

**3.5     Tax Characterization.**

(A)     For tax purposes, 50% (fifty percent) of payments to Class Members pursuant to Section 3.4 shall be treated as back wages and 50% (fifty percent) of such payments shall be treated as interest and/or liquidated damages.

(B)     Payments treated as back wages pursuant to Section 3.5(A) shall be made net of all applicable employment taxes, including, without limitation, federal, state and local income tax withholding and the employee share of the FICA tax, and shall be reported to the Internal Revenue Service ("IRS") and the payee under the

payee's name and social security number on an IRS Form W-2. Payments treated as interest and/or liquidated damages pursuant to Section 3.5(A) shall be made without withholding and shall be reported to the IRS and the payee, to the extent required by law, under the payee's name and social security number on an IRS Form 1099. Payments of attorneys' fees and costs pursuant to Section 3.2 shall be made without withholding and reported to the IRS and the payee under the payee's name and taxpayer identification number, which each such payee shall provide for this purpose, on an IRS Form 1099. Any Service Award payment pursuant to Section 3.3 shall be made without withholding and reported to the IRS and the payee under the payee's name and social security number on an IRS Form 1099.

(C)      KeyBank shall pay an estimate of all state and federal payroll taxes imposed by applicable law, including the employer's share of the FICA tax and any federal and state unemployment tax due, with respect to the amounts treated as wages pursuant to Section 3.5(A), as determined by the Settlement Administrator. KeyBank shall pay the amount necessary within sixty (60) days from the Preliminary Approval Order or whenever due under applicable law, whichever is sooner.

(D)      Plaintiffs acknowledge and agree that each will be solely responsible for all taxes, interest and penalties due with respect to any payment received pursuant to this Agreement (other than taxes specified in Section 3.5(C)) and will indemnify, defend and hold KeyBank and the Settlement Claims Administrator harmless from and against any and all taxes, interest, penalties, attorneys' fees and other costs imposed on KeyBank or the Settlement Claims Administrator as a result of a Plaintiffs' failure to timely pay such taxes.

(E)      The employee portion of all applicable income and payroll taxes will be the responsibility of the individual Class Member receiving a Settlement Check or Service Award.

## 4.    RELEASE

### 4.1    Release of Claims.

By operation of the entry of the Judgment and Final Approval, and except as to such rights or claims as may be created by this Agreement,

(A)      Each individual Rule 23 Class Member who does not timely opt-out pursuant to this Agreement forever and fully releases KeyBank from all wage and hour claims asserted under state law by and on behalf of the State Sub-Classes (the "Released Rule 23 Claims"). The Released Rule 23 Claims include all claims under the state laws of Colorado, Maine, New York, Ohio, Oregon, and Washington for unpaid regular or overtime wages, any related wage and hour claims, all derivative benefit claims (both ERISA and non-ERISA benefits), interest on such claims, and attorneys' fees and costs related to such claims relating to Rule 23

Class Members' employment with Defendant as Relationship Managers from June 13, 2009 through the date of the Final Approval Order or six (6) months from the date of the Preliminary Approval Order, whichever is earlier, except for: (i) claims under the state laws of New York, where the claims period extends from June 13, 2006, and (ii) claims for the Named Plaintiffs whose claims go back prior to June 13, 2009 and were tolled under the Tolling Period.

(B)     In addition to the Released Rule 23 Claims, by signing and negotiating the Settlement Checks, all Rule 23 Class Members and Opt-in Plaintiffs forever and fully release KeyBank, its parents, affiliates, subsidiaries, officers, directors, shareholders, agents, and/or employees, from all FLSA claims asserted in the Litigation ("Released FLSA Claims"). The Released FLSA Claims include all FLSA claims for unpaid regular or overtime wages, any related wage and hour claims, all derivative benefit claims (both ERISA and non-ERISA benefits), interest on such claims, and attorneys' fees and costs related to such claims relating to Rule 23 Class Members' and Opt-in Plaintiffs' employment with Defendant as Relationship Managers from June 13, 2009 through the date of the Final Approval Order or six (6) months from the date of the Preliminary Approval Order, whichever is earlier.

(C)     In additional to the Released Rule 23 Claims and Released FLSA Claims, by signing and negotiating their Settlement Checks, all Named Plaintiffs receiving a Service Award forever and fully release KeyBank, its parents, affiliates, subsidiaries, officers, directors, shareholders, agents, and/or employees from any and all claims for unpaid regular or overtime wages, any related wage and hour claims, all derivative benefit claims (both ERISA and non-ERISA benefits), interest on such claims, and attorneys' fees and costs related to such claims relating to their employment with Defendant as Relationship Managers from June 13, 2009 through the date of the Final Approval Order or six (6) months from the date of the Preliminary Approval Order, whichever is earlier.

(D)     Except as provided in this Agreement, Class Counsel and Named Plaintiffs, on behalf of the Class Members and each individual Class Member, hereby irrevocably and unconditionally release, acquit, and forever discharge any claim that he, she or they may have against KeyBank for attorneys' fees or costs associated with Class Counsel's representation of the Class Members. Class Counsel further understands and agrees that any fee payments approved by the Court will be the full, final and complete payment of all attorneys' fees and costs associated with Class Counsel's representation in the Litigation.

4.2     **Non-Admission of Liability.** KeyBank has agreed to the terms of settlement herein without in any way acknowledging any fault or liability, and with the understanding that terms have been reached because this settlement will (i) provide substantial benefits to KeyBank's shareholders, (ii) avoid the further expense and disruption of KeyBank's business due to the pendency and expense of litigation, and (iii) put the claims in the Litigation finally to rest. Nothing in this Agreement shall be deemed or used as an

admission of liability by KeyBank, or as an admission that a class should be certified for any purpose other than settlement purposes.

**4.3**     **Representations and Warranties of Named Plaintiffs.** By signing this Agreement, the Named Plaintiffs each acknowledge and agree that:

    (A)     He/she has been afforded a reasonable and sufficient period of time for review, for deliberation thereon and for negotiation of the terms thereof, and he/she has been specifically urged by KeyBank to consult with legal counsel or a representative of his/her choice, has had the opportunity to do so and has, in fact, done so by consulting with the firms of Outten & Golden and/or The Shavitz Law Group, his/her attorneys of record;

    (B)     He/she has read and understands the terms of this Agreement, all of which have been fully explained to him/her;

    (C)     He/she has signed this Agreement freely and voluntarily and without duress or coercion and with full knowledge of its significance and consequences and of the rights relinquished, surrendered, released and discharged hereunder;

    (D)     The only consideration for signing this Agreement are the terms stated herein and no other promise, agreement or representation of any kind has been made to **any of** the Named Plaintiffs by any person or entity whatsoever to cause him/her to sign this Agreement; and

    (E)     He/she has not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Litigation.

## 5.     INTERPRETATION AND ENFORCEMENT

**5.1**     **Cooperation Between the Parties; Further Acts.** The Parties shall reasonably cooperate with each other and shall use their reasonable best efforts to obtain the Court's approval of this Agreement and all of its terms. Each party, upon the request of any other party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

**5.2**     **No Assignment.** Class Counsel and Named Plaintiffs, on behalf of the individual Class Members, represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Litigation, or any related action.

**5.3**     **Entire Agreement.** This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement.

**5.4**     **Binding Effect.**  This Agreement shall be binding upon the Parties and, with respect to the Named Plaintiffs, the Opt-in Plaintiffs, and all Class Members, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys and assigns.

**5.5**     **Arms' Length Transaction; Materiality of Terms.**  The Parties have negotiated all the terms and conditions of this Agreement at arms' length.  All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement, unless otherwise expressly stated.

**5.6**     **Captions.**  The captions or headings of the Sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

**5.7**     **Construction.**  The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties.  Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

**5.8**     **Blue Penciling.**  If any provision of this Agreement is held by a court of competent jurisdiction to be void, voidable, unlawful or unenforceable, the remaining portions of this Agreement will remain in full force and effect.

**5.9**     **Governing Law.**  This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of New York, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

**5.10**    **Continuing Jurisdiction.**  The United States District Court for the Southern District of New York **shall** retain exclusive jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby.

**5.11**    **Waivers, etc. to Be in Writing.**  No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval.  Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

**5.12    Publicity.**   The Parties agree that they will respond to any press inquiries with the response that "the parties have resolved their differences to their mutual satisfaction" or words to that effect.

**5.13    CAFA Notice.**   Defendant shall timely provide notice as required by the Class Action Fairness Act ("CAFA").

**5.14    When Agreement Becomes Effective; Counterparts.**   This Agreement shall become effective upon its execution.   The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same instrument.

**5.15    Signatures of Named Plaintiffs.**   This Agreement is valid and binding if signed by KeyBank's authorized representative and the majority of Named Plaintiffs, provided all Rule 23 sub-class Plaintiffs sign.

**5.16    Facsimile and Email Signatures.**   Any party may execute this Agreement by causing its counsel to sign on the designated signature block below and transmitting that signature page via facsimile or email to counsel for the other party.   Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

WE AGREE TO THESE TERMS:

DATED: **9/25**, 2012          KEYBANK, N.A.:

By: _William R Koehler_
WILLIAM R. KOEHLER

Its: _President, Key Community Bank_

DATED: _____, 2012          **ERIC BECKMAN**

_____

DATED: _____, 2012          **IVANA HARRINGTON**

_____

DATED: _____, 2012          **JACK LEIVA**

_____

DATED: _____, 2012          **JERI GRIFFIN**

_____

DATED: _____, 2012          **PETE WISEMAN**

_____

**WE AGREE TO THESE TERMS:**

DATED: _____, 2012          **KEYBANK, N.A.:**

By: _____

Its: _____

DATED: *9/25*, 2012          **ERIC BECKMAN**

_____

DATED: _____, 2012          **IVANA HARRINGTON**

_____

DATED: _____, 2012          **JACK LEIVA**

_____

DATED: _____, 2012          **JERI GRIFFIN**

_____

DATED: _____, 2012          **PETE WISEMAN**

_____

- 19-

**WE AGREE TO THESE TERMS:**

DATED: _____, 2012          **KEYBANK, N.A.:**

By: _____

Its: _____

DATED: _____, 2012          **ERIC BECKMAN**

_____

DATED: 9.28, 2012          **IVANA HARRINGTON**

*Ivana Karina Harrington*

DATED: _____, 2012          **JACK LEIVA**

_____

DATED: _____, 2012          **JERI GRIFFIN**

_____

DATED: _____, 2012          **PETE WISEMAN**

_____

**WE AGREE TO THESE TERMS:**

DATED: _____, 2012          **KEYBANK, N.A.:**

By: _____

Its: _____

DATED: _____, 2012          **ERIC BECKMAN**

_____

DATED: _____, 2012          **IVANA HARRINGTON**

_____

DATED: 9/29, 2012          **JACK LEIVA**

_____

DATED: _____, 2012          **JERI GRIFFIN**

_____

DATED: _____, 2012          **PETE WISEMAN**

_____

- 19-

**WE AGREE TO THESE TERMS:**

DATED: _____, 2012      **KEYBANK, N.A.:**

By: _____

Its: _____

DATED: _____, 2012      **ERIC BECKMAN**

_____

DATED: _____, 2012      **IVANA HARRINGTON**

_____

DATED: _____, 2012      **JACK LEIVA**

_____

DATED: 10/3, 2012      **JERI GRIFFIN**

_____

DATED: _____, 2012      **PETE WISEMAN**

_____

- 19-

**WE AGREE TO THESE TERMS:**

DATED: _____, 2012          **KEYBANK, N.A.:**

By: _____

Its: _____

DATED: _____, 2012          **ERIC BECKMAN**

_____

DATED: _____, 2012          **IVANA HARRINGTON**

_____

DATED: _____, 2012          **JACK LEIVA**

_____

DATED: _____, 2012          **JERI GRIFFIN**

_____

DATED: 5/30th, 2012          **PETE WISEMAN**

_____

DATED: 9-26, 2012          STEVE BUNCH

_____

DATED: _____, 2012          TERI PARKE

_____

DATED: _____, 2012          THOMAS WALKER

_____

DATED: _____, 2012          RENEE BRAUN

_____

DATED: _____, 2012          ELIZABETH SCOTT

_____

DATED: _____, 2012          VERONICA MORGAN

_____

DATED: _____, 2012          THERESA FORREST

_____

DATED: \_\_\_\_\_, 2012          **STEVE BUNCH**

DATED: 9/25, 2012          **TERI PARKE**

DATED: \_\_\_\_\_, 2012          **THOMAS WALKER**

DATED: \_\_\_\_\_, 2012          **RENEE BRAUN**

DATED: \_\_\_\_\_, 2012          **ELIZABETH SCOTT**

DATED: \_\_\_\_\_, 2012          **VERONICA MORGAN**

DATED: \_\_\_\_\_, 2012          **THERESA FORREST**

DATED: _____, 2012          **STEVE BUNCH**

_____

DATED: _____, 2012          **TERI PARKE**

_____

DATED: *10/3*, 2012          **THOMAS WALKER**

_Thomas Walker_
_____

DATED: _____, 2012          **RENEE BRAUN**

_____

DATED: _____, 2012          **ELIZABETH SCOTT**

_____

DATED: _____, 2012          **VERONICA MORGAN**

_____

DATED: _____, 2012          **THERESA FORREST**

_____

- 20-

DATED: _____, 2012          STEVE BUNCH

_____

DATED: _____, 2012          TERI PARKE

_____

DATED: _____, 2012          THOMAS WALKER

_____

DATED: 9-28, 2012          RENEE BRAUN

_Renee Braun_
_____

DATED: _____, 2012          ELIZABETH SCOTT

_____

DATED: _____, 2012          VERONICA MORGAN

_____

DATED: _____, 2012          THERESA FORREST

_____

DATED: _____, 2012          **STEVE BUNCH**

_____

DATED: _____, 2012          **TERI PARKE**

_____

DATED: _____, 2012          **THOMAS WALKER**

_____

DATED: _____, 2012          **RENEE BRAUN**

_____

DATED: Sept 27 , 2012        **ELIZABETH SCOTT**

_____

DATED: _____, 2012          **VERONICA MORGAN**

_____

DATED: _____, 2012          **THERESA FORREST**

_____

- 20-

DATED: _____, 2012          **STEVE BUNCH**

_____

DATED: _____, 2012          **TERI PARKE**

_____

DATED: _____, 2012          **THOMAS WALKER**

_____

DATED: _____, 2012          **RENEE BRAUN**

_____

DATED: _____, 2012          **ELIZABETH SCOTT**

_____

DATED: 9/26, 2012          **VERONICA MORGAN**

_____

DATED: _____, 2012          **THERESA FORREST**

_____

DATED: _____, 2012          **STEVE BUNCH**


DATED: _____, 2012          **TERI PARKE**


DATED: _____, 2012          **THOMAS WALKER**


DATED: _____, 2012          **RENEE BRAUN**


DATED: _____, 2012          **ELIZABETH SCOTT**


DATED: _____, 2012          **VERONICA MORGAN**


DATED: 9/26, 2012          **THERESA FORREST**

_Theresa Forrest_