**OUTTEN & GOLDEN LLP**
Justin M. Swartz
Jennifer L. Liu
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone:  (212) 245-1000

**SHAVITZ LAW GROUP, P.A.**
Gregg I. Shavitz (admitted *pro hac vice*)
Susan H. Stern (admitted *pro hac vice*)
1515 S. Federal Highway, Suite 404
Boca Raton, Florida 33432
Telephone: (561) 447-8888

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ERIC BECKMAN, STEVE BUNCH, JERI GRIFFIN, IVANA HARRINGTON, JACK LEIVA, TERI PARKE, THOMAS WALKER, PETE WISEMAN, RENEE BRAUN, ELIZABETH SCOTT, VERONICA MORGAN, and  THERESA FORREST, individually and on behalf of all others similarly situated, | No. 12 Civ. 7836 (RWS) (RLE) |
| Plaintiffs, | |
| v. | |
| KEYBANK, N.A., | |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION
FOR CERTIFICATION OF THE SETTLEMENT CLASS, FINAL APPROVAL OF THE
CLASS ACTION SETTLEMENT, AND APPROVAL OF THE FLSA SETTLEMENT**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................. 1

FACTUAL AND PROCEDURAL BACKGROUND ........................................................... 2

     I.     Factual Allegations ........................................................................................... 2

     II.    Overview of Investigation .................................................................................. 2

     III.   Settlement Negotiations .................................................................................... 3

     IV.   Litigation ........................................................................................................... 4

     V.    CAFA Notice ...................................................................................................... 4

SUMMARY OF THE SETTLEMENT TERMS ................................................................... 4

     I.     The Settlement Fund .......................................................................................... 4

     II.    Eligible Employees ............................................................................................ 5

     III.   Releases ............................................................................................................. 5

     IV.   Allocation Formula ........................................................................................... 6

     V.    Attorneys' Fees, Litigation Costs, and Service Awards .................................... 7

     VI.   Settlement Claims Administrator ....................................................................... 7

ARGUMENT ....................................................................................................................... 7

     I.     The Settlement Class Meets the Legal Standard for Class Certification. ............... 7

           A.    Numerosity ................................................................................................ 8

           B.    Commonality ............................................................................................. 9

           C.    Typicality .................................................................................................. 10

D.    Adequacy of the Named Plaintiffs ............................................................ 11

E.    Certification Is Proper Under Rule 23(b)(3). ............................................ 11

        1.    Common Questions Predominate .................................................. 12

        2.    A Class Action Is a Superior Mechanism ..................................... 12

II.    The Proposed Settlement Is Fair, Reasonable, and Adequate and Should Be
        Approved in All Respects. ....................................................................... 14

        A.    The Proposed Settlement Is Procedurally Fair.......................................... 14

        B.    The Proposed Settlement Is Substantively Fair ....................................... 16

                1.    Litigation Through Trial Would be Complex,Costly, and Long
                      (*Grinnell* Factor 1). ........................................................ 17

                2.    The Reaction of the Class Has Been Positive
                      (*Grinnell* Factor 2). ........................................................ 17

                3.    Discovery Has Advanced Far Enough to Allow the Parties
                      to Resolve the Case Responsibly (*Grinnell* Factor 3)................... 18

                4.    Plaintiffs Would Face Real Risks if the Case Proceeded
                      (*Grinnell* Factors 4 and 5)............................................ 20

                5.    Maintaining the Class Through Trial Would Not Be Simple
                      (*Grinnell* Factor 6). ........................................................ 21

                6.    KeyBank's Ability to Withstand a Greater Judgment Is Not
                      Determinative (*Grinnell* Factor 7). ................................ 22

                7.    The Settlement Fund Is Substantial, Even in Light of the Best
                      Possible Recovery and the Attendant Risks of Litigation
                      (*Grinnell* Factors 8 and 9)............................................ 22

        I.    Approval of the FLSA Settlement Is Appropriate Under Federal Law. ............... 24

CONCLUSION.................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997)............................................................................................................11, 13

*Ansoumana v. Gristede's Operating Corp.*,
  201 F.R.D. 81 (S.D.N.Y. 2001) ...........................................................................................24

*In re Austrian & German Bank Holocaust Litig.*,
  80 F. Supp. 2d 164 (S.D.N.Y. 2000)........................................................................17, 19, 20

*In re BankAmerica Corp. Sec. Litig.*,
  210 F.R.D. 694 (E.D. Mo. 2002) ..........................................................................................15

*Blackmon v. Brookshire Grocery Co.*,
  835 F.2d 1135 (5th Cir. 1988) ..............................................................................................24

*Cagan v. Anchor Sav. Bank FSB*,
  No. 88 Civ. 3024, 1990 WL 73423 (E.D.N.Y. May 22, 1990)..............................................23

*Castagna v. Madison Square Garden, L.P.*,
  No. 09 Civ. 10211, 2011 WL 2208614 (S.D.N.Y. Jun. 7, 2011)...........................................16

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974)............................................................................................14, 23

*Clark v. Ecolab Inc.*,
  Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2010 WL 1948198 (S.D.N.Y. May
  11, 2010) ................................................................................................................................9

*Clements v. Serco, Inc.*,
  530 F.3d 1224 (10th Cir. 2008) ............................................................................................24

*Consol. Rail Corp. v. Town of Hyde Park*,
  47 F.3d 473 (2d Cir. 1995).....................................................................................................8

*D'Amato v. Deutsche Bank*,
  236 F.3d 78 (2d Cir. 2001).......................................................................................14, 15, 17

*Damassia v. Duane Reade, Inc.*,
  250 F.R.D. 152 (S.D.N.Y. 2008) ..........................................................................................13

*Denney v. Deutsche Bank AG*,
  443 F.3d 253 (2d Cir. 2006)...................................................................................................7

*Desmond v. PNGI Charles Town Gaming, LLC*,
  630 F.3d 351 (4th Cir. 2011) ................................................24

*Diaz v. E. Locating Serv. Inc.*,
  No. 10 Civ. 4082, 2010 WL 5507912 (S.D.N.Y. Nov. 29, 2010) ....................................16, 20

*Dziennik v. Sealift, Inc.*,
  No. 05 Civ. 4659, 2007 WL 1580080 (E.D.N.Y. May 29, 2007)............................................11

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
  No. 05 Civ. 10240, 2007 WL 2230177 (S.D.N.Y. July 27, 2007) .........................................15

*Frank v. Eastman Kodak Co.*,
  228 F.R.D. 174 (W.D.N.Y. 2005)................................................................ passim

*Gen. Tel. Co. of Sw. v. Falcon*,
  457 U.S. 147 (1982)................................................................9

*Goldberger v. Integrated Res., Inc.*,
  209 F.3d 43 (2d Cir. 2000)................................................................16

*Green v. Wolf Corp.*,
  406 F.2d 291 (2d Cir. 1968)................................................................12

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ................................................................13

*Henry v. Quicken Loans, Inc.*,
  698 F.3d 897 (2012)................................................................21

*Hernandez v. Merrill Lynch & Co., Inc.*,
  No. 11 Civ. 8472, 2012 WL 5862749 (S.D.N.Y. Nov. 15, 2012) ...............................10, 12, 16

*Hoffmann-LaRoche Inc. v. Sperling*,
  493 U.S. 165 (1989) ................................................................25

*In re Interpublic Sec. Litig.*,
  No. 02 Civ. 6527, 2004 WL 2397190 (S.D.N.Y. Oct. 26, 2004) ...........................................16

*In re Ira Haupt & Co.*,
  304 F. Supp. 917 (S.D.N.Y. 1969)................................................................20

*Johnson v. Brennan*,
  No. 10 Civ. 4712, 2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011)..............................11, 13, 20

*Kamean v. Local 363, Int'l Bhd. of Teamsters*,
  109 F.R.D. 391 (S.D.N.Y. 1986) ................................................................9

*Khait v. Whirlpool Corp.*,
   No. 06 Civ. 6381, 2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010).......................................18, 20

*Lynn's Food Stores, Inc. v. United States*,
   679 F.2d 1350 ..........................................................................................................................25

*Maley v. Del Global Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002)......................................................................................17

*Marisol A. v. Giuliani*,
   126 F.3d 372 (2d Cir. 1997)...............................................................................................8, 10

*Marlo v. United Parcel Serv., Inc.*,
   639 F.3d 942 (9th Cir. 2011) ...................................................................................................22

*Matheson v. T-Bone Rest., LLC*,
   No. 09 Civ. 4214, 2011 WL 6268216 (S.D.N.Y. Dec. 13, 2011)...........................................20

*McBean v. City of New York*,
   228 F.R.D. 487 (S.D.N.Y. 2005) .............................................................................................12

*McKenna v. Champion Intern. Corp.*,
   747 F.2d 1211 (8th Cir. 1984) .................................................................................................25

*McMahon v. Olivier Cheng Catering & Events*,
   LLC, No. 08 Civ. 8713, 2010 WL 2399328 (S.D.N.Y. Mar. 3, 2010).............................11, 20

*Miles v. Merrill Lynch & Co. (In re Initial Pub. Offering Sec. Litig.)*,
   471 F.3d 24 (2d Cir. 2006).......................................................................................................12

*Morris v. Affinity Health Plan, Inc.*,
   859 F. Supp. 2d 611 (S.D.N.Y. 2012)..................................................................9, 10, 11, 13

*Myers v Hertz Corp.*,
   624 F.3d 537 (2d Cir. 2010)....................................................................................................22

*Officers for Justice v. Civil Serv. Comm'n*,
   688 F.2d 615 (9th Cir. 1982) ...................................................................................................23

*In re Painewebber Ltd. P'ships Litig.*,
   171 F.R.D. 104 (S.D.N.Y. 1997) .............................................................................................20

*Perkins v. S. New England Tel., Co.*,
   No. 07 Civ. 967, 2011 WL 4460248 (D. Conn. Sept. 27, 2011) .............................................24

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*,
   237 F.R.D. 26 (E.D.N.Y. 2006) .................................................................................................8

*Reyes v. Altamarea Grp., LLC*,
    No. 10 Civ. 6451, 2011 WL 4599822 (S.D.N.Y. Aug. 16, 2011) ........................13, 14, 15, 25

*RMED Int'l, Inc. v. Sloan's Supermkts., Inc.*,
    No. 94 Civ. 5587, 2003 WL 21136726 (S.D.N.Y. May 15, 2003)........................................18

*Robidoux v. Celani*,
    987 F.2d 931 (2d Cir. 1993)...............................................................................................10

*Rossini v. Ogilvy & Mather, Inc.*,
    798 F.2d 590 (2d Cir. 1986)...............................................................................................11

*Sewell v. Bovis Lend Lease, Inc.*,
    No. 09 Civ 6548, 2012 WL 1320124 (S.D.N.Y. Apr. 16, 2012)..........................................9

*Spann v. AOL Time Warner, Inc.*,
    No. 02 Civ. 8238, 2005 WL 1330937 (S.D.N.Y. June 7, 2005)........................................14

*In re Top Tankers, Inc. Sec. Litig.*,
    No. 06 Civ. 13761, 2008 WL 2944620 (S.D.N.Y. July 31, 2008) .....................................15

*Torres v. Gristede's Corp.*,
    No. 04 Civ. 3316, 2006 WL 2819730 (S.D.N.Y. Sept. 29, 2006).....................................12

*Toure v. Amerigroup Corp.*,
    No. 10 Civ. 5391, 2012 WL 3240461 (E.D.N.Y. Aug. 6, 2012)........................................14

*Toure v. Cent. Parking Sys. of N.Y.*,
    No. 05 Civ. 5237, 2007 WL 2872455 (S.D.N.Y. Sept. 28, 2007) .....................................11

*Urnikis–Negro v. Am. Family Prop. Servs.*,
    616 F.3d 665 (7th Cir. 2010) .............................................................................................24

*Valerio v. Putnam Assocs. Inc.*,
    173 F.3d 35 (1st Cir. 1999)................................................................................................24

*Velez v. Majik Cleaning Serv., Inc.*,
    No. 03 Civ. 8698, 2007 WL 7232783 (S.D.N.Y. June 25, 2007)......................................20

*In re Visa Check/MasterMoney Antitrust Litig.*,
    280 F.3d 124 (2d Cir. 2001)..........................................................................................12, 13

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005)............................................................................................14, 15

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004)...............................................................................................19

*Willix v. Healthfirst, Inc.*,
  No. 07 Civ. 1143, 2011 WL 754862 (E.D.N.Y. Feb. 18, 2011)..............................................18

*Wright v. Stern*,
  553 F. Supp. 2d 337 (S.D.N.Y. 2008)....................................................................................18

*Zivali v. AT&T Mobility, LLC*,
  784 F. Supp. 2d 456 (S.D.N.Y. 2011)....................................................................................21

STATUTES

28 U.S.C. § 1715(d) ...........................................................................................................................4

29 U.S.C. § 216(b) ............................................................................................................................21

29 U.S.C. § 255.................................................................................................................................21

OTHER AUTHORITIES

Fed. R. Civ. P. 23(a) ...................................................................................................................8, 11

Fed. R. Civ. P. 23(b) ............................................................................................................. passim

Fed. R. Civ. P. 23(e) ......................................................................................................................14

**<u>INTRODUCTION</u>**

Plaintiffs submit this Memorandum of Law in support of their Motion for Certification of the Settlement Class, Final Approval of the Class Action Settlement, and Approval of the FLSA Settlement ("Plaintiffs' Motion for Final Approval").  The parties' $4,900,000 settlement of this wage and hour class and collective action satisfies all of the criteria for final approval.  Plaintiffs seek an order: (1) certifying the settlement class described below; (2) approving as fair and adequate the class-wide settlement of this action, as set forth in the Joint Stipulation of Settlement and Release ("Settlement Agreement") attached as Exhibit A to the Declaration of Justin M. Swartz  in Support of Plaintiffs' Motion for Certification of the Settlement Class, Final Approval of Class Action Settlement, and Approval of the FLSA Settlement ("Swartz Declaration");[1] and (3) approving the FLSA Settlement.

On December 11, 2012, the Court took the first step in the settlement approval process by granting preliminary approval, directing that notice be mailed to Class Members, and setting the date for the final fairness hearing.  Swartz Decl. ¶ 16; ECF No. 13.  Class Members have been notified of the terms of the settlement, the monetary relief, the allocation formula, and their right to opt out of or object to the settlement.  No Class Member has objected to the settlement, and only eight Rule 23 Class Members have opted out.  Ex. B (Decl. of Jeffrey Gyomber ("Gyomber Decl.")) ¶¶ 12-13; Ex. C (Rule 23 Notice); Ex. D (FLSA Notice).  With such overwhelming support, and for the reasons stated below, the Court should grant final approval.

---

[1]     Unless otherwise indicated, all exhibits are attached to the Swartz Declaration.

## FACTUAL AND PROCEDURAL BACKGROUND

**I.      Factual Allegations**

Plaintiffs and Class Members are current and former employees of KeyBank who have worked

as Relationship Managers ("RMs")[2] or in comparable positions at KeyBank branches

nationwide.  Plaintiffs alleged that KeyBank violated the Fair Labor Standards Act ("FLSA")

and the wage and hour laws of New York, Ohio, Colorado, Washington, Oregon, and Maine by

improperly classifying them and other RMs as exempt from federal and state overtime

requirements and failing to pay them overtime wages for hours worked over 40 in a workweek.

Swartz Decl. ¶ 16.

**II.      Overview of Investigation**

Before the initiation of this action, Plaintiffs conducted a thorough investigation into the merits

of the potential claims and defenses.  *Id.* ¶ 5.  Plaintiffs focused their investigation and legal

research on the underlying merits of Class Members' claims, the damages to which they were

entitled, and the propriety of class certification.  *Id.*  Class Counsel conducted in-depth

interviews with the twelve Plaintiffs to determine the hours that they worked, the wages they

were paid, the nature of their duties and responsibilities, and other information relevant to their

claims.  *Id.* ¶ 6.  Class Counsel also obtained and reviewed numerous documents from Plaintiffs

related to their employment with KeyBank, including pay records, offer letters, employee

handbooks, and other related documents.  *Id.*  Plaintiffs conducted in-depth background research

on KeyBank, including reviewing SEC filings and other public documents, to obtain information

on KeyBank's corporate structure and facilities.  *Id.* ¶ 7.  Plaintiffs also obtained numerous job

postings for the RM position from across the country to determine the nature of the duties and

---

[2]      Unless otherwise indicated, all capitalized terms have the definitions set forth in the
Settlement Agreement.

responsibilities of the position.  *Id.*  Plaintiffs also obtained investigation reports and other documents about KeyBank's labor practices from the U.S. Department of Labor through a Freedom of Information Act request.  *Id.*

**III.        Settlement Negotiations**

On June 17, 2011, Plaintiffs sent KeyBank a letter in which they summarized their potential claims and invited KeyBank to engage in pre-litigation settlement discussions.  *Id.* ¶ 8.  In response to the letter, KeyBank agreed to enter a tolling agreement to allow the parties to discuss a possible resolution of Plaintiffs' claims.  *Id.* ¶ 9.  On November 29, 2011, the parties met in New York to exchange their initial positions.  *Id.*  Over the next several months, the parties negotiated a process for attempting to resolve the claims and entered into a confidentiality agreement to facilitate the exchange of documents and other data to assess the claims and calculate damages in advance of private mediation.  *Id.*

Prior to the parties' mediation, KeyBank produced various documents, including job descriptions for the RM positions, a copy of the entire U.S. Department of Labor investigatory file concerning its review of KeyBank job classifications from February 2009, and data showing the number of Class Members in relevant job titles, salaries, incentive pay, weeks worked, and location of employment.  *Id.* ¶ 10.  KeyBank additionally produced documents evidencing branch hours by location to assist in the analysis of hours worked.  *Id.*  Plaintiffs and KeyBank both retained economic experts to analyze the data and perform damages calculations.  *Id.*

On June 13, 2012, the parties attended a full day mediation session in Chicago with David Rotman, Esq., a well-known and experienced mediator in wage and hour law, who traveled from California to assist the parties.  *Id.* ¶ 11.  At the mediation, the parties reached agreement on the settlement amount and several other key terms.  *Id.*  During the next several

months, the parties negotiated the remaining terms of the settlement, which were memorialized in a formal Joint Settlement and Release ("Settlement Agreement"). *Id.* ¶ 12.

### IV.      Litigation

As contemplated in the Settlement Agreement, on October 19, 2012, Plaintiffs filed a Class Action Complaint against KeyBank in the United States District Court for the Southern District of New York on behalf of themselves and others similarly situated alleging that KeyBank violated the Fair Labor Standards Act ("FLSA") and the wage and hour laws of New York, Ohio, Colorado, Washington, Oregon, and Maine by improperly classifying Relationship Managers as exempt from federal and state overtime requirements, and sought recovery of overtime wages, attorneys' fees and costs, interest, and liquidated damages. *Id.* ¶ 14.

### V.      CAFA Notice

KeyBank sent notices to federal and state authorities required by the Class Action Fairness Act ("CAFA") on or before November 15, 2012. *See* 28 U.S.C. § 1715(d); Swartz Decl. ¶ 17. The 90-day CAFA notice period concluded on February 13, 2013. *Id.*

### SUMMARY OF THE SETTLEMENT TERMS

### I.      The Settlement Fund

The Settlement Agreement creates a common fund of $4,900,000 to settle claims against the KeyBank (the "Fund"). Ex. A (Settlement Agreement) § 3.1(A). The Fund covers Class Members' awards, service payments, attorneys' fees and costs, and the settlement administrator's fees and costs. *Id.* § 3.1(A). KeyBank will additionally pay all applicable employer-side payroll taxes. *Id.* § 3.5(C).

## II.    Eligible Employees

Class Members who are entitled to receive payments from the Fund include two groups:

the "Rule 23 Class" and the "FLSA Class."  The Rule 23 Class consists of the following six sub-

classes of individuals ("Rule 23 Class Members"):

a.    New York Sub-Class:  The "New York Sub-Class" consists of all individuals who were employed as RMs in the State of New York from June 13, 2006 to December 11, 2012; and

b.    Ohio Sub-Class:  The "Ohio Sub-Class" consists of all individuals who were employed as RMs in the State of Ohio from June 13, 2009 to December 11, 2012; and

c.    Colorado Sub-Class:  The "Colorado Sub-Class" consists of all individuals who were employed as RMs in the State of Colorado from June 13, 2009 to December 11, 2012; and

d.    Washington Sub-Class:  The "Washington Sub-Class" consists of all individuals who were employed as RMs in the State of Washington from June 13, 2009 to December 11, 2012; and

e.    Oregon Sub-Class:  The "Oregon Sub-Class" consists of all individuals who were employed as RMs in the State of Oregon from June 13, 2009 to December 11, 2012; and

f.    Maine Sub-Class:  The "Maine Sub-Class" consists of all individuals who were employed as RMs in the State of Maine from June 13, 2009 to December 11, 2012.  *Id.* § 1.29.

The "FLSA Class Members" consist of all individuals who were employed as RMs from

June 13, 2009 to December 11, 2012 (together with Rule 23 Class Members, "Class Members").

*Id.* § 1.14.

## III.    Releases

The Settlement Agreement provides that all Rule 23 Class Members who do not timely

opt out of the settlement will release their state wage and hour law claims.  *Id.* § 4.1(A).  Rule 23

Class Members and FLSA Class Members who timely sign and negotiate their settlement checks

("Opt-in Plaintiffs") will release their FLSA claims by signing and negotiating settlement checks. *Id.* § 4.1(B).

### IV.     <u>Allocation Formula</u>

Class Members will be paid pursuant to an allocation formula based on the number of weeks for which they were employed during the relevant limitations periods, and whether they are members of the New York Sub-Class, Ohio Sub-Class, Colorado Sub-Class, Washington Sub-Class, Oregon Sub-Class, the Maine Sub-Class, or the FLSA Class. Each New York Sub-Class Members will be assigned one point for each week worked in New York from June 13, 2006 through December 11, 2012. *Id.* § 3.4(B)(1). Each Class Member who worked in any state other than New York shall be assigned one point for each week worked in any state other than New York from June 13, 2009 through December 11, 2012. *Id.* § 3.4(B)(2). The Claims Administrator will then divide the total number of points for each Class Member by the total number of points for all Class Members to determine each Class Member's settlement share. *Id.* § 3.4(B)(3)(a)-(b). The Claims Administrator will then multiply each Class Member's settlement share by the Net Settlement Fund to determine the amount to be paid to each Class Member. *Id.* § 3.4(B)(4).

Any unnegotiated settlement checks to Rule 23 Class Members will be redistributed among the Rule 23 Class Members and FLSA Class Members who have timely negotiated their checks, except that if the aggregate remaining funds are less than fifty thousand dollars ($50,000), the unclaimed funds will be donated to charity under the *cy pres* doctrine. *Id.* § 3.1(D). Any unnegotiated settlement checks to FLSA Class Members remaining in the Fund 180 days after the Court enters a Final Approval Order will revert to KeyBank. *Id.* § 3.1(E).

**V.**       **Attorneys' Fees, Litigation Costs, and Service Awards**

Class Counsel have filed a Motion for Attorneys' Fees and Reimbursement of Expenses and a Motion for Approval of Service Awards simultaneously with this Motion.

**VI.**      **Settlement Claims Administrator**

The parties retained Kurtzman Carson Consultants ("KCC"), a wage and hour claims administrator, to administer the settlement.  Swartz Decl. ¶ 22.  On December 31, 2012, the Claims Administrator mailed the Court-approved Notices to approximately 2,092 Class Members whose names and addresses were provided by KeyBank.  Ex. B (Gyomber Decl.) ¶ 8. After the Notices were mailed, the Claims Administrator received 51 Notices returned as undeliverable by the Post Office without updated addresses.  *Id.* ¶ 10.  No new addresses were found for 19 Class Members.  *Id.*  Notices were re-mailed to Class Members for whom new addresses were located.  *Id.*

The Rule 23 Notice advised Rule 23 Class Members, among other things, that they could object to or exclude themselves from the settlement.  Ex. C (Rule 23 Notice).  No Class Member has objected to the Settlement.  Ex. B (Gyomber Decl.) ¶ 13.   Only eight Rule 23 Class Members have opted out of the settlement.  *Id.* ¶ 12.

## ARGUMENT

**I.**       **The Settlement Class Meets the Legal Standard for Class Certification.**

When faced with a proposed class action settlement, courts first examine whether the settlement class can be certified.  *Denney v. Deutsche Bank AG,* 443 F.3d 253, 270 (2d Cir. 2006).  On December 11, 2012, the Court preliminarily certified the settlement classes.  The Court should now grant final certification because the settlement meets all of the requirements of Federal Rule of Civil Procedure 23 ("Rule 23").  Plaintiffs respectfully request that the Court certify the New York Sub-Class, Ohio Sub-Class, Colorado Sub-Class,  Washington Sub-Class,

Oregon Sub-Class, and Maine Sub-Class for purposes of effectuating the settlement.

Under Rule 23, a class action may be maintained if all of the prongs of Rule 23(a) are met, as well as one of the prongs of Rule 23(b).  Rule 23(a) requires that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).

Rule 23(b)(3) requires the Court to find that:

> questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

*Id.* at (b)(3).  In the Second Circuit, "Rule 23 is given liberal rather than restrictive construction, and courts are to adopt a standard of flexibility" in evaluating class certification.  *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 31 (E.D.N.Y. 2006) (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997)).

## A. Numerosity

Numerosity is satisfied when the class is "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  "[N]umerosity is presumed at a level of 40 members . . . ."  *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).  Plaintiffs easily satisfy the numerosity requirement because there are approximately 1,735 Rule 23 Class Members.  Swartz Decl. ¶ 35.

###### B.        Commonality

The proposed class also satisfies the commonality requirement, the purpose of which is to test "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982).  Although the claims need not be identical, they must share common questions of fact or law. *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 181 (W.D.N.Y. 2005).  There must be a "unifying thread" among the claims to warrant class certification. *Kamean v. Local 363, Int'l Bhd. of Teamsters*, 109 F.R.D. 391, 394 (S.D.N.Y. 1986).  Courts construe the commonality requirement liberally. *Frank*, 228 F.R.D. at 181.  Even where state and federal wage and hour claimants do not share "exact experiences in terms of uncompensated or improperly compensated hours worked, the claims are based on similar allegations, which give rise to the same or similar legal arguments." *Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548, 2012 WL 1320124, at *3 (S.D.N.Y. Apr. 16, 2012)

This case involves many common issues.  Plaintiffs and Class Members all bring the identical claims that KeyBank misclassified them as exempt employees and failed to pay them overtime wages in violation of state wage and hour laws and failed to keep accurate time records of the hours they worked. *See Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 615-16 (S.D.N.Y. 2012) (commonality satisfied where, among other allegations, plaintiffs claimed that defendant had a policy of not paying all class members overtime pay); *Clark v. Ecolab Inc.*, Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2010 WL 1948198, at *3 (S.D.N.Y. May 11, 2010) (common issues included "whether [defendant] failed to pay [p]laintiffs and the . . . [c]lass [m]embers overtime premium pay for all hours they worked over 40 in a workweek; and . . .

whether [defendant] maintained accurate time records of the hours [p]laintiffs and the state

settlement [c]lass [m]embers worked")).

C.     **Typicality**

Typicality is also satisfied because "each class member's claim arises from the same

course of events, and each class member makes similar legal arguments to prove the defendant's

liability." *Marisol A.*, 126 F.3d at 376 (internal quotation marks omitted).  "Like the

commonality requirement, typicality does not require the representative party's claims to be

identical to those of all class members." *Frank*, 228 F.R.D. at 182.  "Minor variations in the fact

patterns underlying individual claims" do not defeat typicality when the defendant directs "the

same unlawful conduct" at the named plaintiffs and the class.  *Robidoux v. Celani*, 987 F.2d 931,

936-37 (2d Cir. 1993).

Plaintiffs' claims arise from the same factual and legal circumstances that form the bases

of the Rule 23 Class Members' claims.  KeyBank classified all Plaintiffs and Class Members as

exempt from overtime pursuant to the same company policy.  Plaintiffs shared the same job titles

and had the same job duties as Class Members.  They also claim the same injuries as do Class

Members – that KeyBank failed to properly pay them for overtime hours worked.  Because

Plaintiffs' wage and hour claims arise from the same factual and legal circumstances that form

the basis of Class Members' claims, Plaintiffs satisfy the typicality requirement.  *See Hernandez*

*v. Merrill Lynch & Co., Inc.*, No. 11 Civ. 8472, 2012 WL 5862749, at *3 (S.D.N.Y. Nov. 15,

2012) (typicality satisfied where "[p]laintiffs' claims for overtime pay [arose] from the same

factual and legal circumstances that form[ed] the bases of the [c]lass [m]embers' claims");

*Morris*, 859 F. Supp. 2d at 616 (same).

### D.        Adequacy of the Named Plaintiffs

Plaintiffs are adequate class representatives because they have "fairly and adequately protect[ed] the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "The adequacy requirement exists to ensure that the named representatives will have an interest in vigorously pursuing the claims of the class, and . . . have no interests antagonistic to the interests of other class members."  *Toure v. Cent. Parking Sys. of N.Y.*, No. 05 Civ. 5237, 2007 WL 2872455, at *7 (S.D.N.Y. Sept. 28, 2007) (internal quotation marks omitted); *McMahon v. Olivier Cheng Catering & Events,* LLC, No. 08 Civ. 8713, 2010 WL 2399328, at *2 (S.D.N.Y. Mar. 3, 2010). "[O]nly a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status."  *Dziennik v. Sealift, Inc.*, No. 05 Civ. 4659, 2007 WL 1580080, at *6 (E.D.N.Y. May 29, 2007) (internal quotation marks omitted).  There is no evidence that the Plaintiffs' and the class members' interests are at odds.  *See Morris*, 859 F. Supp. 2d at 616 (finding adequacy requirement met where there was no evidence that plaintiffs' and class members' interests were at odds); *Johnson v. Brennan*, No. 10 Civ. 4712, 2011 WL 4357376, at *5 (S.D.N.Y. Sept. 16, 2011) (same).

### E.        Certification Is Proper Under Rule 23(b)(3).

Rule 23(b)(3) requires that the common questions of law or fact "predominate over any questions affecting only individual members and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).  Satisfaction of Rule 23(a) "goes a long way toward satisfying the Rule 23(b)(3) requirement of commonality."  *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986).

### 1.   Common Questions Predominate.

Predominance requires that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole . . . predominate over those issues that are subject only to individualized proof." *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001) (internal quotation marks omitted), *abrogated on other grounds by Miles v. Merrill Lynch & Co. (In re Initial Pub. Offering Sec. Litig.)*, 471 F.3d 24 (2d Cir. 2006). The essential inquiry is whether "liability can be determined on a class-wide basis, even when there are some individualized damage issues." *In re Visa Check*, 280 F.3d at 139. Where plaintiffs are "unified by a common legal theory" and by common facts, the predominance requirement is satisfied. *McBean v. City of New York*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005).

Here, Rule 23 Class Members' common factual allegations and common legal theory – that KeyBank violated federal and state wage and hour laws by misclassifying them as exempt administrative employees and failing to pay them for premium overtime hours – predominate over any factual or legal variations among class members. *See Hernandez*, 2012 WL 5862749, at *4 (common factual allegations and legal theory predominated over variations in wage and hour misclassification case); *Torres v. Gristede's Corp.*, No. 04 Civ. 3316, 2006 WL 2819730, at *16 (S.D.N.Y. Sept. 29, 2006) (plaintiffs "introduced sufficient proof that Defendants engaged in a common practice to deny employees overtime pay," and "this issue predominates over any individual calculations of overtime wages").

### 2.   A Class Action Is a Superior Mechanism.

Plaintiffs also satisfy the superiority requirement. Superiority analyzes whether "the class action device [is] superior to other methods available for a fair and efficient adjudication of the controversy." *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968). Rule 23(b)(3) sets

forth a non-exclusive list of relevant factors, including whether individual class members wish to

bring, or have already brought, individual actions; and the desirability of concentrating the

litigation of the claims in the particular forum.  Fed. R. Civ. P. 23(b)(3).[3]

Class adjudication of this case is superior to individual adjudication because it will

conserve judicial resources and is more efficient for class members, particularly those who lack

the resources to bring their claims individually.  *See Johnson*, 2011 WL 4357376, at *7; *Reyes v.*

*Altamarea Grp., LLC*, No. 10 Civ. 6451, 2011 WL 4599822, at *3 (S.D.N.Y. Aug. 16, 2011).

Plaintiffs and the class members have limited financial resources with which to prosecute

individual actions.  Concentrating the litigation in this Court is desirable because much of the

allegedly wrongful conduct occurred within its jurisdiction.

Employing the class device here will not only achieve economies of scale for class

members, but will also conserve judicial resources and preserve public confidence in the

integrity of the system by avoiding the waste and delay of repetitive proceedings and preventing

inconsistent adjudications.  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1023 (9th Cir. 1998)

 (class action superior when individual claims would burden judiciary, be inefficient for

plaintiffs, and yield inconsistent results); *see also Morris*, 859 F. Supp. 2d at 617; *Damassia v.*

*Duane Reade, Inc.*, 250 F.R.D. 152, 161, 164 (S.D.N.Y. 2008).

---

[3]     Another factor, whether the case would be manageable as a class action at trial, is not of
consequence in the context of a proposed settlement.  *See Amchem*, 521 U.S. at 620
("[c]onfronted with a request for settlement-only class certification, a district court need not
inquire whether the case, if tried, would present intractable management problems, . . . for the
proposal is that there be no trial") (internal citation omitted); *Frank*, 228 F.R.D. at 183 ("The
court need not consider the [manageability] factor, however, when the class is being certified
solely for the purpose of settlement.").  Moreover, denying class certification on manageability
grounds is "disfavored" and "should be the exception rather than the rule."  *In re Visa Check*,
280 F.3d at 140 (internal quotation marks omitted).

**II.       The Proposed Settlement Is Fair, Reasonable, and Adequate and Should Be Approved in All Respects.**

Rule 23(e) requires court approval for a class action settlement to insure that it is procedurally and substantively fair, reasonable and adequate.  Fed. R. Civ. P. 23(e).  To determine procedural fairness, courts examine the negotiating process leading to the settlement.  *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001).  To determine substantive fairness, courts determine whether the settlement's terms are fair, adequate, and reasonable according to the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974).

Courts examine procedural and substantive fairness in light of the "strong judicial policy in favor of settlement" of class action suits.  *Wal-Mart Stores*, 396 F.3d at 116 (internal quotation marks omitted); *see also Spann v. AOL Time Warner, Inc.*, No. 02 Civ. 8238, 2005 WL 1330937, at *6 (S.D.N.Y. June 7, 2005) ("[P]ublic policy favors settlement, especially in the case of class actions").  When, as here, "a settlement is negotiated prior to class certification, . . . it is subject to a higher degree of scrutiny in assessing its fairness."  *D'Amato*, 236 F.3d at 85; *Spann*, 2005 WL 1330937, at *5.  Even under high scrutiny, procedural and substantive considerations support approving the proposed settlement.

### a.       The Proposed Settlement Is Procedurally Fair.

The proposed settlement is procedurally fair because it was reached through vigorous, arm's-length negotiations and after experienced counsel had evaluated the merits of Plaintiffs' claims.  *See Toure v. Amerigroup Corp.*, No. 10 Civ. 5391, 2012 WL 3240461, at *3 (E.D.N.Y. Aug. 6, 2012) (finding settlement to be "procedurally fair, reasonable, adequate, and not a product of collusion" after plaintiffs conducted a thorough investigation and enlisted the services of an experienced employment law mediator); *Reyes*, 2011 WL 4599773, at *4 (same).  A

14

"presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (internal quotation marks omitted); *see also D'Amato,* 236 F.3d at 85.  "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement."  *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007); *see also In re Top Tankers, Inc. Sec. Litig.*, No. 06 Civ. 13761, 2008 WL 2944620, at *3 (S.D.N.Y. July 31, 2008); *In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694, 700 (E.D. Mo. 2002).

Here, the settlement was reached after Plaintiffs conducted a thorough investigation and evaluated the claims and defenses, and after extensive arm's-length negotiations and information exchange between the parties.  Swartz Decl. ¶¶ 4-13.  Plaintiffs and KeyBank both retained economic experts to analyze the data and perform damages calculations.  *Id.* ¶ 10.  The parties attended an all-day mediation with an experienced employment law mediator on June 13, 2012, during which they engaged in a vigorous exchange regarding their respective claims and defenses.  *Id.* ¶ 11.  At the conclusion of the mediation, the parties came to a preliminary agreement and executed a memorandum of understanding covering the settlement amount and several other key terms.  *Id.*  During the next several months, the parties negotiated the remaining terms of the settlement, which were memorialized in a formal settlement agreement including all terms.  *Id.* ¶ 12, Ex. A (Settlement Agreement).  At all times during the settlement process, the parties negotiated on an arm's-length basis.  Swartz Decl. ¶ 13.  These arm's-length negotiations involved counsel and a mediator well-versed in wage and hour law, raising a presumption that the settlement achieved meets the requirements of due process.  *See Wal-Mart Stores*, 396 F.3d at 116; *Reyes*, 2011 WL 4599822, at *4.

15

In addition, courts encourage early settlement of class actions, when warranted, because early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere.  *See Hernandez*, 2012 WL 5862749, at *2 (endorsing early settlement of wage and hour class action); *Castagna v. Madison Square Garden, L.P.*, No. 09 Civ. 10211, 2011 WL 2208614, at *6 (S.D.N.Y. Jun. 7, 2011) (commending Plaintiffs' attorneys for negotiating early settlement); *Diaz v. E. Locating Serv. Inc.*, No. 10 Civ. 4082, 2010 WL 5507912, at *3 (S.D.N.Y. Nov. 29, 2010) (granting final approval of pre-suit class settlement in wage and hour case); *In re Interpublic Sec. Litig.*, No. 02 Civ. 6527, 2004 WL 2397190, at *12 (S.D.N.Y. Oct. 26, 2004) (early settlements should be encouraged when warranted by the circumstances of the case).  The parties here acted responsibly in reaching an early pre-suit settlement.  *See Hernandez*, 2012 WL 5862749, at *2; *In re Interpublic Sec. Litig.*, 2004 WL 2397190, at *12.

### b.    The Proposed Settlement Is Substantively Fair.

In *Grinnell*, the Second Circuit provided the analytical framework for evaluating the substantive fairness of a class action settlement.  495 F.2d at 448, *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).  The *Grinnell* factors guide district courts in making this determination.  They are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages;  (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement

fund to a possible recovery in light of all the attendant risks of litigation.  *Id.* at 463.  All of the *Grinnell* factors weigh in favor of final approval of the Settlement Agreement.

### 1.    Litigation Through Trial Would be Complex, Costly, and Long (*Grinnell* Factor 1).

By reaching a favorable settlement prior to dispositive motions or trial, Plaintiffs seek to avoid significant expense and delay, and instead ensure recovery for the class.  "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them."  *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000) ("*In re Austrian*"), *aff'd sub. nom. D'Amato*, 236 F.3d 78.  This case is no exception, with approximately 2,092 Class Members and claims under federal and state law.  Swartz Decl. ¶ 23.

Further litigation would cause additional expense and delay.  Extensive discovery would be required to establish liability and damages.  In addition, the parties likely would file cross-motions for summary judgment on KeyBank's exemption defense.  If the Court denied the motions, a fact-intensive trial would be necessary to determine Plaintiffs' and Class Members' exemption status.  A trial would be lengthy and complex and would consume tremendous time and resources for all parties and the Court.  Any judgment would likely be appealed, further extending the litigation.  The settlement, on the other hand, makes monetary relief available to Class Members in a prompt and efficient manner.  Therefore, the first *Grinnell* factor weighs in favor of final approval.

### 2.    The Reaction of the Class Has Been Positive (*Grinnell* Factor 2).

"It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy."  *Maley v. Del Global Techs. Corp.,*

186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002).  The lack of class member objections "may itself be

taken as evidencing the fairness of a settlement."  *RMED Int'l, Inc. v. Sloan's Supermkts., Inc.*,

No. 94 Civ. 5587, 2003 WL 21136726, at \*1 (S.D.N.Y. May 15, 2003).

Here, the Notices sent to Class Members included an explanation of the allocation

formula and an estimate of each Class Member's award.  Ex. C (Rule 23 Notice) ¶¶ 7-8; Ex. D

(FLSA Notice) ¶¶ 7-8.  The Rule 23 Notice also informed Rule 23 Class Members of their right

to object to or exclude themselves from the settlement and explained how to do so.  Ex. C (Rule

23 Notice) ¶¶ 12, 17-18.  No Class Member objected to the settlement.  Ex. B (Gyomber Decl.) ¶

13.  Only eight Rule 23 Class Members opted out of the settlement.  *Id.* ¶ 12.  Class Counsel also

received numerous phone calls and emails from Class Members who reacted very positively to

the settlement.  Swartz Decl. ¶ 24.  This favorable response demonstrates that the class approves

of the settlement, which further supports final approval.  *See Willix v. Healthfirst, Inc.*, No. 07

Civ. 1143, 2011 WL 754862, at \*4 (E.D.N.Y. Feb. 18, 2011) (approving settlement where seven

of 2,025 class member submitted timely objections and two requested exclusion); *Khait v.

Whirlpool Corp.*, No. 06 Civ. 6381, 2010 WL 2025106, at \*5 (E.D.N.Y. Jan. 20, 2010) (the fact

that no class members objected and two opted out demonstrated favorable response weighing in

favor of final approval); *Wright v. Stern*, 553 F. Supp. 2d 337, 344-45 (S.D.N.Y. 2008) ("[t]he

fact that the vast majority of class members neither objected nor opted out is a strong indication"

of fairness).

### 3.  Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (*Grinnell* Factor 3).

Although preparing this case through trial would require hundreds of hours of discovery

for both sides, the parties have completed enough informal discovery to recommend settlement.

The proper question is "whether counsel had an adequate appreciation of the merits of the case

18

before negotiating." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004).

"[T]he pretrial negotiations and discovery must be sufficiently adversarial that they are not

designed to justify a settlement . . . [, but] an aggressive effort to ferret out facts helpful to the

prosecution of the suit." *In re Austrian*, 80 F. Supp. 2d at 176 (internal quotations omitted).

The parties' discovery here meets this standard.  Plaintiffs' Counsel conducted in-depth

interviews with the twelve Plaintiffs to determine the hours that they worked, the wages they

were paid, the nature of their duties and responsibilities, and other information relevant to their

claims.  Swartz Decl. ¶ 6.  Plaintiffs conducted in-depth background research on KeyBank,

including reviewing SEC filings and other public documents, to obtain information on

KeyBank's corporate structure and facilities.  *Id.* ¶ 7.  Plaintiffs also obtained numerous job

postings for the Relationship Manager position from across the country to determine the nature

of the duties and responsibilities of the position.  *Id.*  Plaintiffs also obtained investigation reports

and other documents about KeyBank's labor practices from the U.S. Department of Labor

through a Freedom of Information Act request.  *Id.*

KeyBank also produced to Plaintiffs various documents, including job descriptions for

the RM positions, a copy of the entire U.S. Department of Labor investigatory file concerning its

review of KeyBank job classifications from February 2009, and data showing the number of

Class Members in relevant job titles, salaries, incentive pay, weeks worked, and location of

employment.  *Id.* ¶ 10.  KeyBank additionally produced documents evidencing branch hours per

locations to assist in the analysis of hours worked.  *Id.*  Plaintiffs and KeyBank both retained

economic experts to analyze the data and perform damages calculations.  *Id.*

Courts often grant final approval of class settlements in cases where the parties conducted

the same amount or even less discovery than the amount accomplished in this case.  *See, e.g.,*

*Matheson v. T-Bone Rest., LLC*, No. 09 Civ. 4214, 2011 WL 6268216, at *5 (S.D.N.Y. Dec. 13, 2011) (granting final approval in case where discovery consisted of informal information exchange); *Johnson*, 2011 WL 4357376, at *9-10 (finding that parties were "well-equipped to evaluate the strengths and weaknesses of the case" and granting final approval where parties engaged in informal discovery and no depositions were taken); *Diaz*, 2010 WL 5507912, at *5 (granting final approval of pre-suit class settlement, where informal discovery consisted of pre-suit document exchange); *McMahon*, 2010 WL 2399328, at *5 (granting final approval where parties conducted informal discovery); *Khait*, 2010 WL 2025106, at *6 (approving settlement where parties conducted informal discovery). The significant amount of informal discovery conducted here allowed the parties to thoroughly assess the merits and risks of the case and to calculate damages. Therefore, this factor favors final approval.

### 4.   Plaintiffs Would Face Real Risks if the Case Proceeded (*Grinnell* Factors 4 and 5).

Although Plaintiffs believe their case is strong, it is subject to considerable risk. "Litigation inherently involves risks." *In re Painewebber Ltd. P'ships Litig.,* 171 F.R.D. 104, 126 (S.D.N.Y. 1997). Indeed, "[i]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *In re Ira Haupt & Co.,* 304 F. Supp. 917, 934 (S.D.N.Y. 1969); *see also Velez v. Majik Cleaning Serv., Inc.,* No. 03 Civ. 8698, 2007 WL 7232783, at *6 (S.D.N.Y. June 25, 2007). In weighing the risks of establishing liability and damages, the court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *In re Austrian*, 80 F. Supp. 2d at 177 (internal quotation marks omitted).

A trial on the merits would involve significant risks for Plaintiffs as to both liability and damages. Plaintiffs would have to overcome KeyBank's defense that Plaintiffs and Class

Members were subject to the administrative exemption to the FLSA, and the corresponding exemptions under applicable state laws.  While Plaintiffs believe that they could ultimately establish KeyBank's liability, this would require significant factual development.  For example, after seven years of litigation and a five-week trial, a jury in a similar misclassification case involving financial services employees classified as exempt administrative employees reached a defense verdict, which was upheld by both the district court and the Sixth Circuit Court of Appeals.  *See Henry v. Quicken Loans, Inc.*, 698 F.3d 897 (2012).  Plaintiffs also would have had to prove willfulness in order to obtain a third year of liability and damages.  *See* 29 U.S.C. § 255.  In addition, Plaintiffs likely would have had to confront a fluctuating workweek argument, which would have posed further risk as to damages.  Plaintiffs' Counsel are experienced and realistic, and understand that the resolution of liability issues, the outcome of the trial, and the inevitable appeals process are inherently uncertain in terms of outcome and duration.  The proposed settlement alleviates these uncertainties.  This factor therefore weighs in favor of final approval.

## 5.   Maintaining the Class Through Trial Would Not Be Simple (*Grinnell* Factor 6).

The risk of obtaining collective and class certification and maintaining both through trial is also present.  The Court has not yet granted permission for Plaintiffs to proceed on their FLSA claims on behalf of a collective pursuant to 29 U.S.C. § 216(b).  If the Court did authorize notice to the FLSA collective, KeyBank would likely challenge that determination at a later date, after the close of discovery.  *See, e.g.*, *Zivali v. AT&T Mobility, LLC*, 784 F. Supp. 2d 456, 470 (S.D.N.Y. 2011) (granting defendant's motion to decertify collective action).

In addition, the Court has not certified the Rule 23 Sub-Classes yet, and the parties anticipate that such a determination would be reached only after further discovery and intense, exhaustive briefing.  In opposing class certification, KeyBank would likely argue that the

21

differences among various job positions and branches and other individualized questions preclude class certification.  Although Plaintiffs disagree with these agreements, defendants have prevailed on arguments like these.  *See, e.g.*, *Marlo v. United Parcel Serv., Inc.*, 639 F.3d 942, 949 (9th Cir. 2011) (affirming decertification, citing "variations in job duties that appear to be a product of employees working at different facilities, under different managers, and with different customer bases"); *Myers v Hertz Corp.*, 624 F.3d 537, 549-51 (2d Cir. 2010) (affirming denial of class certification in misclassification case based on evidence that class members' duties varied by location).  Risk, expense, and delay permeate such processes.  Settlement eliminates this risk, expense, and delay.  This factor favors final approval.

### 6. KeyBank's Ability to Withstand a Greater Judgment Is Not Determinative (*Grinnell* Factor 7).

There is no evidence here that KeyBank could not withstand a greater judgment.  However, even if KeyBank could withstand a greater judgment, their ability to do so, "standing alone, does not suggest that the settlement is unfair."  *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian*, 80 F. Supp. 2d at 178 n.9).  Thus, this factor is neutral and does not preclude the Court from granting final approval.

### 7. The Settlement Fund Is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9).

KeyBank has agreed to settle this case for a substantial amount, $4.9 million.  This amount represents substantial value given the attendant risks of litigation, even though recovery could be greater if Plaintiffs attained both collective and class certification, overcame motions to decertify any class or collective, succeeded on all claims at trial, and survived an appeal.

The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'"  *Frank*, 228 F.R.D. at 186

(quoting *In re Austrian*, 80 F. Supp. 2d at 178). "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). "[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell Corp.*, 495 F.2d at 455 n.2. "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982); *see also Cagan v. Anchor Sav. Bank FSB*, No. 88 Civ. 3024, 1990 WL 73423, at *12-13 (E.D.N.Y. May 22, 1990) (approving $2.3 million class settlement over objections that the "best possible recovery would be approximately $121 million").

Here, the settlement provides much more than "a fraction of the potential recovery." By Class Counsel's estimation, the $4.9 million settlement represents approximately 84% of the class's lost wages over the liability period (six years in New York and three years in all other states) ($5,844,855), assuming that Class Members worked an average of 40 overtime weeks per year and 5 overtime hours per week,[4] if KeyBank were to prevail on a fluctuating workweek argument. Even if Plaintiffs defeated KeyBank's fluctuating workweek argument, which would

---

[4] Class Counsel's estimate of 40 overtime weeks per year takes into account the number of weeks in which there fell a bank holiday or in which Class Members likely took paid days off, thus making it unlikely that they would have worked overtime in that week. Swartz Decl. ¶ 18. KeyBank estimated even fewer overtime weeks. *Id.* Class Counsel's investigation indicated that RMs typically worked an average of 5 overtime hours per week. *Id.* ¶ 19.

be contrary to the holdings of all of the Circuit Courts of Appeal that have considered the issue,[5] the settlement would still represent approximately 26% of the class's lost wages ($19,023,840). The settlement represents a substantial recovery for Class Members, particularly in light of the risks of litigation.  These risks included the risk of losing both collective and class certification, having a collective action decertified, losing on the merits, and losing on appeal, in addition to the risk of KeyBank prevailing on a fluctuating workweek argument.  Swartz Decl. ¶ 20.

Here, each Class Member will receive a payment based upon the number of weeks for which they were employed during the relevant limitations periods.  Class Members will each receive an average net settlement payment (net of attorneys' fees and costs, service awards, claims administration fees, and reserve for errors and omissions) of approximately $1,500.  *Id.* ¶ 21.  Weighing the benefits of the settlement against the available evidence and the risks associated with proceeding in the litigation, the settlement amount is reasonable.

**I.**       **Approval of the FLSA Settlement Is Appropriate Under Federal Law.**

Plaintiffs also request that the Court approve the settlement of their FLSA claims.  They have brought their FLSA claims as a collective action.  Unlike the procedure under Rule 23, collective members must affirmatively opt into the litigation in order to join it.  *See Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 84-85 (S.D.N.Y. 2001).  Because, under the FLSA, "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date," FLSA collective actions do not implicate the same due process

---

[5]       Although there is authority among district courts in this Circuit for applying time and a half damages in a misclassification case, *see, e.g.*, *Perkins v. S. New England Tel., Co.*, No. 07 Civ. 967, 2011 WL 4460248, at *4 (D. Conn. Sept. 27, 2011), every federal appellate court that has considered the issue has endorsed the fluctuating workweek method of calculating damages. *See Desmond v. PNGI Charles Town Gaming, LLC*, 630 F.3d 351, 357 (4th Cir. 2011); *Urnikis–Negro v. Am. Family Prop. Servs.*, 616 F.3d 665, 681-83 (7th Cir. 2010); *Clements v. Serco, Inc.*, 530 F.3d 1224, 1230-31 (10th Cir. 2008); *Valerio v. Putnam Assocs. Inc.*, 173 F.3d 35, 39-40 (1st Cir. 1999); *Blackmon v. Brookshire Grocery Co.*, 835 F.2d 1135, 1138-39 (5th Cir. 1988).

concerns as Rule 23 actions.  *McKenna v. Champion Intern. Corp.*, 747 F.2d 1211, 1213 (8th

Cir. 1984), *abrogated on other grounds by Hoffmann-LaRoche Inc. v. Sperling*, 493 U.S. 165

(1989); *Reyes*, 2011 WL 4599822, at *6.  Accordingly, the high standard for approval of a class

action under Rule 23 does not apply to an FLSA settlement.

Courts approve FLSA settlements when they are reached as a result of contested

litigation to resolve *bona fide* disputes.  *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d

1350, 1353 n.8 (11th Cir. 1982); *Reyes*, 2011 WL 4599822, at *6.  If the proposed settlement

reflects a reasonable compromise over contested issues, the court should approve the settlement.

*Id.* at 1354; *Reyes*, 2011 WL 4599822, at *6.  In this case, the settlement was the result of arm's-

length negotiation involving vigorous back and forth.  Swartz Decl. ¶ 25.  During the entire

process, Plaintiffs and KeyBank were represented by counsel experienced in wage and hour law.

Because the Settlement Agreement resolves a clear and actual dispute and was reached after

vigorous arm's-length settlement negotiations, it should be approved.

<u>**CONCLUSION**</u>

For the reasons set forth above, Plaintiffs respectfully request that the Court: (1) certify the

settlement class; (2) grant final approval of the class settlement; and (3) approve the FLSA

settlement.

Dated:  March 4, 2013
        New York, New York

                         Respectfully submitted,
                          **OUTTEN & GOLDEN LLP**

                         /s/ Justin M. Swartz
                         Justin M. Swartz

                         Justin M. Swartz
                         Jennifer L. Liu
                         3 Park Avenue, 29th Floor
                         New York, New York 10016

Telephone:  (212) 245-1000
Facsimile:  (212) 977-4005

**SHAVITZ LAW GROUP, P.A.**
Gregg I. Shavitz (admitted *pro hac vice*)
Susan H. Stern (admitted *pro hac vice*)
1515 S. Federal Highway, Suite 404
Boca Raton, Florida 33432
Telephone: (561) 447-8888

**Attorneys for Plaintiffs and the Class**