| | |
|---|---|
| **OUTTEN & GOLDEN LLP**<br>Justin M. Swartz<br>Jennifer L. Liu<br>3 Park Avenue, 29th Floor<br>New York, New York 10016<br>Telephone:  (212) 245-1000 | **SHAVITZ LAW GROUP, P.A.**<br>Gregg I. Shavitz (admitted *pro hac vice*)<br>Susan H. Stern (admitted *pro hac vice*)<br>1515 S. Federal Highway, Suite 404<br>Boca Raton, Florida 33432<br>Telephone: (561) 447-8888 |

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ERIC BECKMAN, STEVE BUNCH, JERI GRIFFIN, IVANA HARRINGTON, JACK LEIVA, TERI PARKE, THOMAS WALKER, PETE WISEMAN, RENEE BRAUN, ELIZABETH SCOTT, VERONICA MORGAN, and  THERESA FORREST, individually and on behalf of all others similarly situated,<br><br>                                        Plaintiffs,<br><br>     v.<br><br>KEYBANK, N.A.,<br><br>                                        Defendant. | No. 12 Civ. 7836 (RWS) (RLE) |

**DECLARATION OF JUSTIN M. SWARTZ IN SUPPORT OF PLAINTIFFS'
MOTION FOR APPROVAL OF ATTORNEYS' FEES AND REIMBURSEMENT OF
EXPENSES AND PLAINTIFFS' MOTION FOR APPROVAL OF SERVICE AWARDS**

1

I, Justin M. Swartz, declare as follows:

1. I am a partner in the firm of Outten & Golden LLP ("O&G") in New York, New York, Plaintiff's counsel herein, and co-chair of its Class Action Practice Group. O&G is a 30+ attorney firm based in New York City that focuses on representing plaintiffs in a wide variety of employment matters, including individual and class action litigation that involve wage and hour, discrimination, and harassment claims, as well as contract and severance negotiations.

2. Along with Shavitz Law Group, P.A. ("Shavitz Law Group") (together with O&G, "Class Counsel"), I have been one of the lawyers primarily responsible for prosecuting Plaintiffs' claims on behalf of the proposed class.

3. I make these statements based on personal knowledge and would so testify if called as a witness at trial.

**Time Spent on the Litigation**

4. O&G has significant experience prosecuting wage and hour class and collective actions such as this one. O&G is or was co-lead counsel on several wage and hour cases that district courts have certified as class actions and/or collective actions including *Torres v. Gristede's Operating Corp.*, No. 04 Civ. 3316, 2006 WL 2819730 (S.D.N.Y. Sept. 29. 2006), in which the Court granted summary judgment in favor of Plaintiffs and a class of more than 300 grocery store workers, *see* 628 F. Supp. 2d 447 (S.D.N.Y. Aug. 28, 2008). Others include *Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548, 2012 WL 1320124, at *9 (S.D.N.Y. Apr. 16, 2012) (approving settlement of wage and hour class action brought under New York and federal law; *Johnson v. Brennan*, No. 10 Civ. 4712, 2011 WL 1872405, at *1 (S.D.N.Y. May 17, 2011) (same); *Dorn v. Eddington Sec., Inc.*, No. 08 Civ. 10271, 2011 WL 382200, at *3 (S.D.N.Y. Jan. 21, 2011) (same); *Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143, 2010 WL 5509089, at *1 (E.D.N.Y. Nov. 29, 2010) (approving settlement of wage and hour class action brought under

New York and federal law); *Diaz v. Eastern Locating Serv. Inc.*, No. 10 Civ. 4082, 2010 WL 2945556, at *2 (S.D.N.Y. July 22, 2010) (certifying class and approving settlement of wage and hour class action brought under New York and federal law); *Clark v. Ecolab Inc.*, Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2009 WL 6615729, at *4 (S.D.N.Y. May 11, 2010) (certifying class and approving settlement of multi-state wage and hour class action); *Westerfield v. Washington Mut. Bank*, Nos. 06 Civ. 2817, 08 Civ. 287, 2009 WL 6490084, at *1-3 (E.D.N.Y. June 26, 2009) (same); and *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 165 (S.D.N.Y. 2008) (granting class certification and appointing O&G class counsel in multi-state wage and hour class action). Class Counsel's experience was directly responsible for bringing about the positive settlement and weighs in favor of granting the requested fees.

5.  As of March 4, 2013, O&G has spent more than 281 hours litigating and settling this litigation, including time spent by attorneys, paralegals, law clerks, and administrative assistants. Although O&G is relatively large for a plaintiffs' side employment law firm, a small team of attorneys were utilized at any one time in order to minimize duplication of efforts and maximize billing judgment. O&G also made every effort to have work performed by the attorney or paralegal with the lowest hourly rate who was able to perform the work effectively. Attached as **Exhibit A** are summaries of the time spent by each attorney, paralegal, and support staff member as of June 1, 2012, and the costs incurred.

6.  The hours reported are reasonable for a case of this complexity and size and were compiled from contemporaneous time records maintained by each attorney, paralegal, and support staff person participating in the case.

7.  Attached as **Exhibit B** are O&G's contemporaneous time records.

8.  As of March 4, 2013, O&G's total lodestar on the case was $109,911. As of

March 4, 2013, Class Counsel's total lodestar on the case was $230,445.  Class Counsel's request for 33% of the fund, or $1,617,000, is 7.0 times their lodestar.

9. As of March 4, 2013, O&G has incurred approximately $2,089 in out-of-pocket costs prosecuting this litigation.  As of March 4, 2013, Class Counsel has incurred approximately $38, 928 in out-of-pocket costs prosecuting this litigation.  These costs were incidental and necessary to the prosecution of this lawsuit and include court and process server fees, postage and courier fees, transportation, working meals, photocopies, electronic research, expert fees, and Plaintiffs' share of the mediator's fees.  A summary of O&G's itemized costs is attached as **Exhibit C**.

10. In our experience, New York City law firms that represent plaintiffs in employment matters typically charge their clients at least one-third of their gross recoveries when they represent them on a contingency basis.  In Plaintiffs' retainer agreements with Class Counsel, Plaintiffs agreed that Class Counsel could apply to the Court for 33% of a class-wide recovery and that they would pay Class Counsel 33% of any individual recovery.

11. The requested attorneys' fees are not based solely on time and effort already expended; they are also meant to compensate Class Counsel for time that they will be required to spend administering the settlement in the future.  In our experience, administering class settlements of this nature and size requires a substantial and ongoing commitment.  For example, since the Notices were mailed, Class Counsel and staff have responded to dozens of inquiries from class members requesting information regarding the terms of the settlement and the amount of their settlement award.  Class Counsel expects to respond to more class member inquiries after final approval, especially after checks are issued.  Class Counsel also expects to spend additional time working on this case, including preparing for and attending the final fairness hearing,

answering class member questions, answering questions from the claims administrator, and negotiating and possibly litigating disagreements with Defendant about administering the settlement and distributing the fund.  *See, e.g.*, *Nash v. CVS Caremark Corp.*, No. 09 Civ. 79, 2013 WL 684836, at *1 (D.R.I. Feb. 25, 2013) (granting in part plaintiffs' motion to order defendants to comply with class settlement agreement); *Johnson v. Brennan*, No. 10 Civ. 4712, 2012 WL 6584019, at *1-3 (S.D.N.Y. Dec. 12, 2012) (resolving dispute over whether *cy pres* designee was appropriate); *Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548, ECF Nos. 73, 74 (S.D.N.Y. Apr. 16, 2012) (allowing late opt-in to participate in class settlement) (attached hereto as **Exhibit D**); *Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05 Civ. 3452, 2009 WL 466148 (S.D.N.Y. Feb. 24, 2009) (granting plaintiff's motion for contempt sanctions and ordering defendants to comply with the Court's orders).

12. Class Counsel undertook to prosecute this action without any assurance of payment for their services, litigating the case on a wholly contingent basis in the face of tremendous risk.  Wage and hour cases of this type are, by their very nature, complicated and time-consuming.  Lawyers undertaking representation of large numbers of affected employees in wage and hour actions inevitably must be prepared to make a tremendous investment of time, energy and resources.  Due also to the contingent nature of the customary fee arrangement, lawyers are asked to be prepared to make this investment with the very real possibility of an unsuccessful outcome and no fee of any kind.  Class Counsel stood to gain nothing in the event the case was unsuccessful.

13. O&G ordinarily and regularly bills clients on an hourly fee basis, based upon each attorney's standard hourly rate.  Currently, O&G's rates range from $550 to $1000 per partner's hour, $575 to $650 per counsel's hour, $250 to $450 per associate's hour, $220 per law clerk's

hour, and $170 to $215 per paralegal's hour.  The firm's clients regularly accept and pay O&G's hourly rates.

14.     Based upon O&G's records, in 2011, approximately 30% of the hours lawyers spent on client matters were billed to paying clients. There is no shortage of hourly work at O&G.  Thus, when O&G lawyers spend time on contingency matters, they do so at significant opportunity cost for the firm.  Indeed, O&G frequently turns away hourly matters, including hourly litigation matters, in order to enable its attorneys to work on contingency matters, primarily (though not exclusively) class actions.

15.     To date, Class Counsel has worked without compensation of any kind, and the fee has been wholly contingent upon the result achieved.

**Overview of Investigation**

16.     Before the initiation of this action, I, along with a team of attorneys and paralegals at O&G and our co-counsel, the Shavitz Law Group, conducted a thorough investigation into the merits of the potential claims and defenses.  We focused our investigation and legal research on the underlying merits of Class Members' claims, the damages to which they were entitled, and the propriety of class certification.

17.     We conducted in-depth interviews with the twelve Plaintiffs to determine the hours that they worked, the wages they were paid, the nature of their duties and responsibilities, and other information relevant to their claims.  We also obtained and reviewed numerous documents from Plaintiffs related to their employment with KeyBank, including pay records, offer letters, employee handbooks, and other related documents.

18.     We conducted in-depth background research on KeyBank, including reviewing SEC filings and other public documents, to obtain information on KeyBank's corporate structure

and facilities. We also obtained numerous job postings for the RM position from across the country to determine the nature of the duties and responsibilities of the position.  We also obtained investigation reports and other documents about KeyBank's labor practices from the U.S. Department of Labor through a Freedom of Information Act request.

**Settlement Negotiations**

19.     On June 17, 2011, Plaintiffs sent KeyBank a letter in which they summarized their potential claims and invited KeyBank to engage in pre-litigation settlement discussions.

20.     In response to the letter, the parties agreed to enter a tolling agreement to allow the parties to discuss a possible resolution of Plaintiffs' claims.  On November 29, 2011, the parties met in New York to exchange their initial positions.  Over the next several months, the parties negotiated a process for attempting to resolve the claims and entered into a confidentiality agreement to facilitate the exchange of documents and other data to assess the claims and calculate damages in advance of private mediation.

21.     Prior to the parties' mediation, Defendant produced various documents, including job descriptions for the RM positions, a copy of the entire U.S. Department of Labor investigatory file concerning its review of KeyBank job classifications from February 2009, and data showing the number of Class Members in relevant job titles, salaries, incentive pay, weeks worked, and location of employment.  Defendant additionally produced documents evidencing branch hours by location to assist in the analysis of hours worked.  Plaintiffs and Defendant both retained economic experts to analyze the data and perform damages calculations.

22.     On June 13, 2012, the parties attended a full day mediation session in Chicago with David Rotman, Esq., a well-known and experienced mediator in wage and hour law, who

traveled from California to assist the parties. At the mediation, the parties reached agreement on the settlement amount and several other key terms.

23. During the next several months, the parties negotiated the remaining terms of the settlement, which were memorialized in a formal Joint Settlement and Release ("Settlement Agreement"). A true and correct copy of the Settlement Agreement is attached hereto as **Exhibit E**.

**Litigation**

24. As contemplated in the Settlement Agreement, on October 19, 2012, Plaintiffs filed a Class Action Complaint against Defendant in the United States District Court for the Southern District of New York on behalf of themselves and others similarly situated alleging that Defendant violated the Fair Labor Standards Act ("FLSA") and the wage and hour laws of New York, Ohio, Colorado, Washington, Oregon, and Maine by improperly classifying Relationship Managers as exempt from federal and state overtime requirements, and sought recovery of overtime wages, attorneys' fees and costs, interest, and liquidated damages.

**Efforts of the Named Plaintiffs**

25. Named Plaintiffs Eric Beckman, Steve Bunch, Jeri Griffin, Ivana Harrington, Jack Leiva, Teri Parke, Thomas Walker, Pete Wiseman, Renee Braun, Elizabeth Scott, Veronica Morgan, and Theresa Forrest ("Named Plaintiffs") have made important contributions to the prosecution and fair resolution of this action on behalf of Class Members.

26. Named Plaintiffs assisted Class Counsel's investigation and prosecution of the claims by providing detailed factual information regarding their job duties and those of other Class Members, the wages they were paid, the hours that they worked, and other information relevant to their claims, and by assisting with the preparation and review of the complaint.

27. Throughout the pre-litigation negotiations and the litigation, Named Plaintiffs regularly made themselves available to communicate with Class Counsel when necessary, including throughout mediation.

**Claims Administration**

28. The parties jointly selected Kurtzman Carson Consultants LLC ("Claims Administrator"), an experienced wage and hour claims administrator, to administer the settlement.

29. Attached as **Exhibit F** is a Notice of Proposed Settlement of Class Action Lawsuit and Fairness Hearing ("Proposed Rule 23 Notice").

30. Attached as **Exhibit G** is a Notice of Proposed Settlement of Collective Action Lawsuit and Fairness Hearing ("Proposed FLSA Notice").

31. Attached as **Exhibit H** is the Declaration of Jeffrey Gyomber, dated March 1, 2013, who supervised the administration of the settlement notices in this case ("Gyomber Declaration").

**Additional Authorities**

32. Attached as **Exhibit I** is a true and correct copy of the Declaration of D. Maimon Kirschenbaum in Support of Plaintiff's Motion for Final Approval of Class Action Settlement in *Ramirez v. Lovin' Oven Catering Suffolk, Inc.*, No. 11 Civ. 520 (S.D.N.Y. filed Feb. 16, 2012), a wage and hour class action settlement in which Class Counsel's lodestar was $174,671.25 ("*Ramirez* Declaration").

I declare under penalty of perjury, under 28 U.S.C. § 1746, that the foregoing is true and correct.

Executed this 4th day of March, 2013
New York, New York.

      /s/ Justin M. Swartz
Justin M. Swartz
**Outten & Golden LLP**
3 Park Avenue, 29th Floor
New York, NY 10016
(212) 245-1000