USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 4-29-13

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ERIC BECKMAN, et al., | : |
| Plaintiffs, | : |
| - against - | : |
| KEYBANK, N.A., | : |
| Defendant. | : |

**OPINION AND ORDER**

**12 Civ. 7836 (RLE)**

**RONALD L. ELLIS, United States Magistrate Judge:**

## I.   INTRODUCTION

Plaintiffs Eric Beckman, Steve Bunch, Jeri Griffin, Ivana Harrington, Jack Leiva, Teri Parke, Thomas Walker, Pete Wiseman, Renee Braun, Elizabeth Scott, Veronica Morgan, and Theresa Forrest (together, "Plaintiffs") are individuals who worked as Relationship Managers (RMs) for Defendant KeyBank, N.A. ("KeyBank" or "Defendant"). On October 19, 2012, Plaintiffs commenced this action as a putative class action under Federal Rule of Civil Procedure 23 and as a collective action under 29 U.S.C. § 216(b), claiming that KeyBank failed to pay them overtime wages to which they were entitled under the wage and hour laws of New York, Ohio, Colorado, Washington, Oregon and Maine, and the Fair Labor Standards Act ("FLSA"). Plaintiffs sought unpaid overtime wages, attorneys' fees and costs, interest, liquidated damages, and injunctive and declaratory relief. Before the Court are Plaintiffs' motions for certification of settlement class, final approval of the class action settlement, approval of the FLSA settlement, and approval of attorney's fees, reimbursement of expenses, and service awards.

Having considered the Motion for Final Approval, the Motion for Attorneys' Fees and Reimbursement of Expenses, the Motion for Service Awards, and the supporting declarations, the oral argument presented at the March 19, 2013 fairness hearing, and the complete record in

this matter, for the reasons set forth therein and stated on the record at the March 19, 2013

fairness hearing, and for good cause shown,

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED:**

**CERTIFICATION OF THE SETTLEMENT CLASS**

The Court certifies the following sub-classes under Federal Rule of Civil Procedure

23(e), for settlement purposes (the "Rule 23 Class Members"):

(1)    all individuals who were employed as RMs in the State of New York from June
       13, 2006 to December 11, 2012;

(2)    all individuals who were employed as RMs in the State of Ohio from June 13,
       2009 to December 11, 2012;

(3)    all individuals who were employed as RMs in the State of Colorado from June 13,
       2009 to December 11, 2012;

(4)    all individuals who were employed as RMs in the State of Washington from June
       13, 2009 to December 11, 2012;

(5)    all individuals who were employed as RMs in the State of Oregon from June 13,
       2009 to December 11, 2012; and

(6)    all individuals who were employed as RMs in the State of Maine from June 13,
       2009 to December 11, 2012.

## II.    BACKGROUND

After exchanging informal discovery to enable Plaintiffs to calculate damages and

undertaking extensive and vigorous negotiations, the parties reached a settlement totaling $4.9

million.  Decl. of Justin M. Swartz in Supp. of Pls.' Mot. for Certification of the Settlement

Class, Final Approval of the Class Action Settlement, and Approval of the FLSA Settlement

("Swartz Decl.") ¶¶ 4-13.  The parties reached this settlement after a formal mediation under the supervision of an experienced employment law mediator, David Rotman, Esq.  *Id.* ¶ 11.  At the mediation, the parties reached agreement on the settlement amount and several other key terms. *Id.* ¶ 11.  During the next several months, the parties negotiated the remaining terms of the settlement, which were memorialized in a formal settlement agreement ("Settlement Agreement").  *Id.* ¶ 12.

On December 11, 2012, this Court entered an Order preliminarily approving the settlement on behalf of the class set forth therein (the "Class" or the "Class Members"), conditionally certifying the settlement class, appointing Outten & Golden LLP and Shavitz Law Group P.A. as Class Counsel, and authorizing notice to all Class Members.  ECF No. 13.

On December 31, 2012, a claims administrator sent Court-approved notices to all Class Members informing them of their rights under the settlement, including the right to opt out or object to the settlement for Class Members in the six states where Rule 23 claims were brought, and of Class Counsel's intention to seek up to one-third of the settlement fund for attorneys' fees, and their out-of-pocket expenses.  Swartz Decl., Ex. B (Gyomber Decl.) ¶ 6.  No Class Members objected to the settlement, and eight opted out of the settlement.  *Id.* ¶¶ 12-13. On March 4, 2013, Plaintiffs filed a Motion for Certification of the Settlement Class, Final Approval of the Class Action Settlement, and Approval of the FLSA Settlement ("Motion for Final Approval").  That same day, Plaintiffs also filed Motions for Approval of Attorneys' Fees and Reimbursement of Expenses ("Motion for Attorneys' Fees") and for Service Awards ("Motion for Service Awards").  Defendants took no position with respect to any of these motions and did not object to the requests for attorneys' fees, costs, or service payments. The Court held a fairness hearing on March 19, 2013.  No Class Member objected to the

settlement at the hearing.

### III.   DISCUSSION

Plaintiffs meet all of the requirements for class certification under Federal Rule of Civil Procedure 23(a) and (b)(3).  Plaintiffs satisfy Federal Rule of Civil Procedure 23(a)(1) because there are approximately 1,735 Rule 23 Class Members and, thus, joinder is impracticable.  *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) ("[N]umerosity is presumed at a level of 40 members.").  The proposed class also satisfies Federal Rule of Civil Procedure 23(a)(2), the commonality requirement.  Plaintiffs and the Class Members share common issues of fact and law, including whether Defendant misclassified them as exempt employees, failed to pay them overtime wages in violation of state wage and hour laws, and failed to keep accurate records of time worked.  *See Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 615-16 (S.D.N.Y. 2012) (commonality satisfied where, among other allegations, plaintiffs claimed that defendant had a policy of not paying all class members overtime pay); *Clark v. Ecolab Inc.*, No. 07 Civ. 8623 (PAC), 2010 WL 1948198, at *3 (S.D.N.Y. May 11, 2010) (common issues that help to satisfy Rule 23 commonality requirement include "whether [Defendant] failed to pay Plaintiffs and the state settlement Class Members overtime premium pay for all hours they worked over 40 in a workweek; and . . . whether [Defendant] maintained accurate time records of the hours Plaintiffs and the state settlement Class Members worked").

Plaintiffs satisfy Federal Rule of Civil Procedure 23(a)(3), typicality, because Plaintiffs' claims arose from the same factual and legal circumstances that form the bases of the class members' claims.  *See Morris*, 859 F. Supp. 2d at 616 (typicality satisfied where "[p]laintiffs' claims for overtime pay [arose] from the same factual and legal circumstances that form[ed] the bases of the [c]lass [m]embers' claims").  Plaintiffs also satisfy Federal Rule of Civil Procedure

4

23(a)(4) because there is no evidence that the Plaintiffs' and the class members' interests are at odds. *Id.* at 616; *Johnson v. Brennan*, No. 10 Civ. 4712 (CM), 2011 WL 4357376, at *5 (S.D.N.Y. Sept. 16, 2011).

In addition, the lawyers at Outten & Golden LLP "have substantial experience prosecuting and settling employment class actions, including wage and hour class actions[,] and are well-versed in wage and hour law and class action law." *Guaman v. Ajna-Bar NYC*, No. 12 Civ. 2987, 2013 WL 445896, at *3 (S.D.N.Y. Feb. 5, 2013). Likewise, Plaintiffs' Counsel Shavitz Law Group, P.A. ("Shavitz Law Group") has acted as lead counsel or co-counsel on dozens of wage and hour class and collective actions. *See Palacio v. E*TRADE Fin. Corp.*, No. 10 Civ. 4030, 2012 WL 1058409, at *2 (S.D.N.Y. Mar. 12, 2012) (appointing the Outten and Golden LLP and Shavitz Law Group as Class Counsel based on their experience in "numerous wage and hour class and collective actions").

Plaintiffs also satisfy Rule 23(b)(3). Plaintiffs' common factual allegations and a common legal theory – that Defendant violated federal and state wage and hour laws by misclassifying Plaintiffs as exempt administrative employees and failing to pay them for premium overtime hours – predominate over any factual or legal variations among class members. *See Torres v. Gristede's Corp.*, No. 04 Civ. 3316, 2006 WL 2819730, at *16 (S.D.N.Y. Sept. 29, 2006) (plaintiffs "introduced sufficient proof that Defendants engaged in a common practice to deny employees overtime pay," and "this issue predominates over any individual calculations of overtime wages").

Class adjudication of this case is superior to individual adjudication because it will conserve judicial resources and is more efficient for class members, particularly those who lack the resources to bring their claims individually. *See Reyes v. Altamarea Grp., LLC*, No. 10 Civ.

5

6451, 2011 WL 4599822, at *3 (S.D.N.Y. Aug. 16, 2011). Plaintiffs and Class Members have limited financial resources with which to prosecute individual actions. Concentrating the litigation in this Court is desirable because the allegedly wrongful conduct occurred within its jurisdiction. Employing the class device here will not only achieve economies of scale for class members, but will also conserve judicial resources and preserve public confidence in the integrity of the system by avoiding the waste and delay repetitive proceedings and preventing inconsistent adjudications. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1023 (9th Cir. 1998) (class action superior when individual claims would burden judiciary, be inefficient for plaintiffs, and yield inconsistent results); *see also Morris*, 859 F. Supp. 2d at 617; *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 161, 164 (S.D.N.Y. 2008).

A.      **Approval of Settlement Agreement**

Rule 23(e) requires court approval for a class action settlement to ensure that it is procedurally and substantively fair, reasonable, and adequate. Fed. R. Civ. P. 23(e). To determine procedural fairness, courts examine the negotiating process leading to the settlement. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001). To determine substantive fairness, courts determine whether the settlement's terms are fair, adequate, and reasonable according to the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974).

Courts examine procedural and substantive fairness in light of the "strong judicial policy favoring settlements" of class action suits. *Wal-Mart Stores*, 396 F.3d at 116; *see also In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007); *Spann v. AOL Time Warner, Inc.*, No. 02 Civ. 8238, 2005 WL 1330937, at *6 (S.D.N.Y. June 7, 2005).

6

A "presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (*quoting* Manual for Complex Litigation, Third, § 30.42 (1995)); *see also D'Amato*, 236 F.3d at 85. "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 2007 WL 2230177, at *4; *see also In re Top Tankers, Inc. Sec. Litig.*, No. 06 Civ. 13761, 2008 WL 2944620, at *3 (S.D.N.Y. July 31, 2008); *In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694, 700 (E.D. Mo. 2002).

### 1.    Procedural Fairness

The settlement is procedurally fair, reasonable, adequate, and not a product of collusion. *See* Fed. R. Civ. P. 23(e); *Reyes*, 2011 WL 4599822, at *4. The settlement was reached after the Parties had conducted a thorough investigation and evaluated the claims and defenses, and after arm's-length negotiations between the Parties. Swartz Decl. ¶¶ 4-13.

Class Counsel examined Defendant's data showing the number of Class Members in relevant job titles, salaries, incentive pay, weeks worked, location of employment, and branch hours information. *Id.* ¶ 10. Plaintiffs and Defendant both retained economic experts to analyze the data and perform damages calculations. *Id.* On June 13, 2012, the Parties attended an all-day mediation in Chicago with an experienced employment law mediator. *Id.* ¶ 11. The Parties came to a preliminary agreement on the material terms of the settlement at the mediation. *Id.* These arm's-length negotiations involved counsel and a mediator well-versed in wage and hour law, raising a presumption that the settlement achieved meets the requirements of due process. *See Wal-Mart Stores*, 396 F.3d at 116; *Reyes*, 2011 WL 4599822, at *4.

7

In addition, courts encourage early settlement of class actions, when warranted, because early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere. *See Hernandez v. Merrill Lynch & Co., Inc.*, No. 11 Civ. 8472, 2012 WL 5862749, at *2 (S.D.N.Y. Nov. 15, 2012) (endorsing early settlement of wage and hour class action); *Castagna v. Madison Square Garden, L.P.*, No. 09 Civ. 10211, 2011 WL 2208614, at *6 (S.D.N.Y. June 7, 2011) (commending Plaintiffs' attorneys for negotiating early settlement); *Diaz v. E. Locating Serv. Inc.*, No. 10 Civ. 4082, 2010 WL 5507912, at *3 (S.D.N.Y. Nov. 29, 2010) (granting final approval of pre-suit class settlement in wage and hour case); *In re Interpublic Sec. Litig.*, No. 02 Civ. 6527, 2004 WL 2397190, at *12 (S.D.N.Y. Oct. 26, 2004) (early settlements should be encouraged when warranted by the circumstances of the case). The parties here acted responsibly in reaching an early pre-suit settlement. *See Hernandez*, 2012 WL 5862749, at *2; *In re Interpublic Sec. Litig.*, 2004 WL 2397190, at *12.

## 2. Substantive Fairness

The settlement is substantively fair. All of the factors set forth in *Grinnell*, which provides the analytical framework for evaluating the substantive fairness of a class action settlement, weigh in favor of final approval. The *Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. 495 F.2d

at 463.

Litigation through trial would be complex, expensive and long. Therefore, the first *Grinnell* factor weighs in favor of final approval. The class's reaction to the settlement was positive. The Notices included an explanation of the allocation formula and an estimate of each Class Member's award. The Rule 23 Notice also informed Rule 23 Class Members of their right to object to or exclude themselves from the Settlement and explained how to do so. No Class Member objected to the Settlement, and only eight of the 1,735 Rule 23 Class Members opted out. This favorable response demonstrates that the class approves of the Settlement and supports final approval. *See Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143, 2011 WL 754862, at *4 (E.D.N.Y. Feb. 18, 2011) (approving settlement where seven of 2,025 class member submitted timely objections and two requested exclusion); *Khait v. Whirlpool Corp.*, No. 06 Civ. 6381, 2010 WL 2025106, at *5 (E.D.N.Y. Jan. 20, 2010) (the fact that no class members objected and two opted out demonstrated favorable response weighing in favor of final approval); *Wright v. Stern*, 553 F. Supp. 2d 337, 344-45 (S.D.N.Y. 2008) ("[t]he fact that the vast majority of class members neither objected nor opted out is a strong indication" of fairness).

The Parties have completed enough discovery to recommend settlement. The pertinent question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004) (internal quotation marks omitted). Here, through an efficient, informal exchange of information, Plaintiffs obtained sufficient discovery to weigh the strengths and weaknesses of their claims and to accurately estimate the damages at issue. The Parties' participation in a day-long mediation allowed them to further explore the claims and defenses. The third Grinnell factor weighs in favor of final approval.

The risk of establishing liability and damages further weighs in favor of final approval. "Litigation inherently involves risks." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997). Indeed, the primary purpose of settlement is to avoid the uncertainty of a trial on the merits. *In re Ira Haupt & Co.*, 304 F. Supp. 917, 934 (S.D.N.Y. 1969); *see also Velez v. Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698, 2007 WL 7232783, at *6 (S.D.N.Y. June 25, 2007). Here, Plaintiffs faced numerous risks as to both liability and damages, including overcoming Defendant's defense that Plaintiffs and Class Members were exempt from federal and state overtime requirements, proving willfulness in order to obtain a third year of liability and damages, and overcoming Defendant's likely fluctuating workweek argument. The proposed settlement eliminates this uncertainty. This factor therefore weighs in favor of final approval.

The risk of obtaining collective and class certification and maintaining both through trial is also present. Contested collective and class certification motion would likely require extensive discovery and briefing. If the Court did authorize notice to the FLSA collective, Defendant would likely challenge that determination by seeking decertification at a later date, after the close of discovery. If the Court were to grant class certification, Defendant might seek to file an appeal under Federal Rule of Civil Procedure 23(f), the resolution of which would require an additional round of briefing. Settlement eliminates the risk, expense, and delay inherent in the litigation process. The fifth *Grinnell* factor weighs in favor of final approval.

Even if Defendant could have withstood a greater judgment, a "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) *(quoting In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 178 n.9 (S.D.N.Y. 2000) (alterations and

10

citation omitted)).  Accordingly, this factor is neutral and does not preclude the Court from approving the settlement.

The substantial amount of the settlement weighs in favor of final approval.  The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Frank*, 228 F.R.D. at 186 *(quoting In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178).  "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'"  *Id. (quoting Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).  The seventh *Grinnell* factor weighs in favor of final approval.

The Court hereby grants Plaintiffs' Motion for Final Approval and finally approves the settlement as set forth in the Settlement Agreement.

**B.      Approval of the FLSA Settlement**

Because, under the FLSA, "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date," FLSA collective actions do not implicate the same due process concerns as Rule 23 actions.  *McKenna v. Champion Intern. Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984); *see Reyes*, 2011 WL 4599822, at *6.  Accordingly, the standard for approval of an FLSA settlement is lower than for a class action under Rule 23. Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes.  *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 n.8 (11th Cir. 1982); *Reyes*, 2011 WL 4599822, at *6.  Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. *Lynn's Food Stores*, 679 F.2d at 1353-54.  If the proposed FLSA settlement reflects a reasonable

11

compromise over contested issues, it should be approved.  *Id.* at 1354; *Reyes*, 2011 WL
4599822, at *6.

     In this case, the settlement was the result of arm's-length negotiation involving vigorous
back and forth.  Swartz Decl. ¶ 13.  During the entire process, Plaintiffs and Defendant were
represented by counsel experienced in wage and hour law.  Accordingly, the Settlement
Agreement resolves a clear and actual dispute under circumstances supporting a finding that is
fair and reasonable. The Court hereby approves the FLSA settlement.

**C.**    **Dissemination of Notice**

     Pursuant to the Preliminary Approval Order, the Rule 23 and FLSA Notices were sent by
first-class mail to each respective Class Member at his or her last known address (with re-
mailing of returned Notices for which new addresses could be located).  The Court finds that the
Rule 23 and FLSA Notices fairly and adequately advised Class Members of the terms of the
Settlement, as well as the right of Rule 23 Class Member to opt out of or to object to the
Settlement, and to appear at the fairness hearing conducted on March 19, 2013.  Class Members
were provided with the best notice practicable under the circumstances.  The Court further finds
that the Notices and their distribution comported with all constitutional requirements, including
those of due process.  The Court confirms Kurtzman Carson Consultants, LLC as the claims
administrator.

**D.**    **Attorneys' Fees and Costs, and Service Awards**

     On December 11, 2012, the Court appointed Outten & Golden LLP and Shavitz Law
Group, P.A. as Class Counsel because they met all of the requirements of Federal Rule of Civil
Procedure 23(g).  *See Damassia*, 250 F.R.D. at 165 (Rule 23(g) requires the court to consider
"the work counsel has done in identifying or investigating potential claims in the action, . . .

counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action, . . . counsel's knowledge of the applicable law, and . . . the resources counsel will commit to representing the class") (internal quotation marks omitted).

Class Counsel are experienced employment lawyers with good reputations among the employment law bar. *See Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548, 2012 WL 1320124, at *12 (S.D.N.Y. Apr. 16, 2012) (noting O&G's reputation as a "respected labor and employment firm" and that O&G attorneys had "prosecuted and favorably settled many employment law class actions, including wage and hour class actions"); *Palacio*, 2012 WL 1058409, at *2 (appointing O&G and the Shavitz Law Group as Class Counsel based on their experience in "numerous wage and hour class and collective actions"). The work that Class Counsel has performed in litigating and settling this case demonstrates their commitment to the class and to representing the class's interests. Class Counsel have committed substantial resources to prosecuting this case.

The trend in this Circuit is to use the percentage of the fund method to compensate attorneys in common fund cases like this one. *McDaniel v. County of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010); *Wal-Mart Stores*, 396 F.3d at 121; *Reyes*, 2011 WL 4599822, at *7. Although the Court has discretion to award attorneys' fees based on the lodestar method or the percentage-of-recovery method, *McDaniel*, 595 F.3d at 417, in wage and hour class action lawsuits, public policy favors a common fund attorneys' fee award, *Sewell*, 2012 WL 1320124, at *13; *Reyes*, 2011 WL 4599822, at *7. Fee awards in wage and hour cases are meant to "encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel." *Sand v. Greenberg*, No. 08 Civ. 7840, 2010 WL 69359, at *3 (S.D.N.Y. Jan. 7, 2010). The FLSA and state wage and hour

13

statutes are remedial statutes, the purposes of which are served by adequately compensating attorneys who protect wage and hour rights. *Reyes*, 2011 WL 4599822, at *7; *Sand*, 2010 WL 69359, at *3.

Where relatively small claims can only be prosecuted through aggregate litigation, and the law relies on prosecution by "private attorneys general," attorneys who fill the private attorney general role must be adequately compensated for their efforts. *Reyes*, 2011 WL 4599822, at *7; *Sand*, 2010 WL 69359, at *3. If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk. *Reyes*, 2011 WL 4599822, at *7; *Sand*, 2010 WL 69359, at *3 ("But for the separate provision of legal fees, many violations of the Fair Labor Standards Act would continue unabated and uncorrected."). Class Counsel's request for 33% of the Fund is reasonable and "consistent with the norms of class litigation in this circuit." *Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05 Civ. 3452, 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008).

Although *Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany*, 522 F.3d 182 (2d Cir. 2008), does not address a common fund fee petition, it supports class counsel's request for one-third of the fund because "'reasonable, paying client[s]' . . . typically pay one-third of their recoveries under private retainer agreements." *Reyes*, 2011 WL 4599822, at *8 (*quoting Arbor Hill*, 522 F.3d at 191) (internal citation omitted). While *Arbor Hill* is not controlling because it does not address a common fund fee petition, it supports an award of one-third of the fund. *Reyes*, 2011 WL 4599822, at *8; *deMunecas v. Bold Food, LLC*, No. 09 Civ. 440, 2010 WL 3322580, at *9 (S.D.N.Y. Aug. 23, 2010).

In addition, in Plaintiffs' retainer agreements with Class Counsel, Plaintiffs agreed that Class Counsel could apply to the Court for 33% of a class-wide recovery and that they would

14

pay Class Counsel 33% of any individual recovery.  Decl. of Justin M. Swartz in Supp. of Pls.'

Mot. for Approval of Attys' Fees and Reimbursement of Expenses and Pls.' Mot. for Approval

of Service Awards ("Swartz Fees & Service Awards Decl.") ¶ 10.  This also provides support for

Class Counsel's request for 33% of the fund.  No Class Member objected to Class Counsel's

request for 33% of the fund, which also provides support for Class Counsel's fee request.

### 1.     *Goldberger* Factors

Reasonableness is the touchstone when determining whether to award attorneys' fees.  In

*Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000), the Second Circuit set

forth the following six factors to determine the reasonableness of a fee application:

"(1) the time and labor expended by counsel; (2) the magnitude and complexities of the

litigation; (3) the risk of the litigation . . .; (4) the quality of representation; (5) the requested fee

in relation to the settlement; and (6) public policy considerations."

### a.     **Class Counsel's Time and Labor**

As previously explained, Class Counsel spent significant effort to achieve the $4.9

million settlement.  Before the initiation of this action, Plaintiffs conducted a thorough

investigation into the merits of the potential claims and defenses.  Swartz Fees & Service

Awards Decl. ¶ 16.  Plaintiffs focused their investigation and legal research on underlying merits

of Class Members' claims, the damages to which they were entitled, and the propriety of class

certification.  *Id.*  Class counsel conducted in-depth interviews with the twelve Plaintiffs to

determine the hours that they worked, the wages they were paid, the nature of their duties and

responsibilities, and other relevant information.  *Id.* ¶ 17.  Class Counsel also obtained and

reviewed numerous documents from Plaintiffs related to their employment with KeyBank,

including pay records, offer letters, employee handbooks, and other related documents.  *Id.*

Plaintiffs conducted in-depth background research on KeyBank, including reviewing SEC filings and other public documents, to obtain information on KeyBank's corporate structure and facilities. *Id.* ¶ 18. Plaintiffs also obtained numerous job postings for the RM position from across the country to determine the nature of the duties and responsibilities of the position. *Id.* Plaintiffs also obtained investigation reports and other documents about KeyBank's labor practices from the United States Department of Labor ("DOL") through a Freedom of Information Act Request. *Id.*

Plaintiffs engaged in pre-litigation settlement discussions with KeyBank. *Id.* ¶ 19. After an initial meeting, the Parties engaged in informal discovery to assess the claims and calculate the damages. *Id.* ¶ 20. KeyBank produced various documents, including job descriptions for RM positions, a copy of the entire DOL investigatory file concerning its review of KeyBank job classifications, and data showing the number of Class Members in relevant job titles, salaries, incentive pay, weeks worked, and location of employment. *Id.* ¶ 21. KeyBank also produced documents evidencing branch hours per location to assist in the analysis of hours worked. *Id.* Plaintiffs and KeyBank retained economic experts to analyze the data and perform damage calculations. *Id.*

On June 13, 2012, the Parties attended a full day mediation session in Chicago with David Rotman, Esq., where an agreement was reached regarding the settlement amount and other key terms. *Id.* ¶ 22. Over the next several months, the Parties reached an agreement for all of the key terms, which were memorialized in the Settlement Agreement. *Id.* ¶ 23. Pursuant to the Settlement Agreement, Plaintiffs filed a class action complaint on October 19, 2012, against KeyBank on behalf of themselves and others similarly situated, alleging that KeyBank violated FLSA and wage and hour laws of New York, Ohio, Colorado, Washington, Oregon, and Maine

16

by improperly classifying Relationship Managers as exempt from federal and state overtime requirements. Plaintiffs also sought recovery of overtime wages, attorneys' fees and costs, interest, and liquidated damages. *Id.* ¶ 24.

Class Counsel has expended over 550 hours of attorney, paralegal, and staff member time. *Id.* ¶¶ 5, 8; Shavitz Decl. ¶¶ 14, 15. Class Counsel will also expend hours administering the settlement in the future. Swartz Decl. ¶ 11; Shavitz Decl. ¶ 20; *see Reyes*, 2011 WL 4599822, at *8 ("The fact that Class Counsel's fee award will not only compensate them for time and effort already expended, but for time that they will be required to spend administering the settlement going forward also supports their fee request" of 33% of the fund).

### b.  Magnitude and Complexity of the Litigation

The size and difficulty of the issues in a case are significant factors to be considered in making a fee award. *In re Prudential Sec. In. Ltd. P'ship Litig.*, 912 F. Supp. 97, 100 (S.D.N.Y. 1996). "FLSA claims typically involve complex mixed questions of fact and law," and issues must be resolved "in light of volumes of legislative history and over four decades of legal interpretation and administrative rulings." *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 743 (1981). Among FLSA cases, the most complex type is the "hybrid" action brought here, where state wage and hour violations are brought as an "opt out" class action pursuant to Rule 23 in the same action as the FLSA "opt in" collective action pursuant to 29 U.S.C. § 216(b). Justice is served and consistency and efficiency are achieved by having the litigation in one forum because the same set of operative facts are being applied and analyzed under both statutory frameworks. *See Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 89 (S.D.N.Y. 2001).

17

### c.    Risk of Litigation

"Contingency risk is the principal, though not exclusive, factor courts should consider in their determination of attorneys' fees." *In re Dreyfus Aggressive Growth Mut. Fund Litigation*, 2001 WL 709262, *6 (S.D.N.Y. June 22, 2001). When considering fee applications, courts must approach it "with an eye to moderation" because of the belief that counsel bring class and collective actions as a "quest for attorneys['] fees." *Goldberger*, 209 F.3d at 53. In *Goldberger*, the court held that the risk needed to enhance attorneys' fees did not exist, and thereby, affirmed the district court's decision to decrease the requested fee award. *Id.* at 54 ("[T]he district court found that, from counsel's perspective, this was a 'promising' case, with almost certain prospects of a large recovery from solvent defendants. The court reasonably concluded that enhancing fees above already generous rates included in the lodestar 'would likely result in counsel's overcompensation.'").

The same cannot be said in the instant action. Here, Class Counsel faced unique risks on the merits of the claim, as there existed potential difficulties in proving uniformity in Relationship Managers' primary duties. According to KeyBank's compensation policy, which was produced during informal discovery, sales performance influenced only a small fraction of their incentive compensation, making it potentially difficult to prove that sales was the primary duty. Additionally, misclassification claims are difficult to prove.[1] Particularly relevant to this case is *Christopher v. SmithKline Beecham Corp.*, __ U.S. __, 132 S. Ct. 2156 (2012), where the Court held that pharmaceutical sales representatives were exempt outside salespersons. In

---

[1] Many overtime claims in misclassification cases have been dismissed in this District. *See, e.g., Ramos v. Baldor Specialty Foods, Inc.*, No. 10 Civ. 6271, 2011 WL 2565330 (S.D.N.Y. June 16, 2011) (executive exemption); *Gold v. New York Life Ins. Col.*, No. 09 civ. 3210, 2011 WL 2421281 (S.D.N.Y. May 19, 2011) (outside sales exemption); *Franklin v. Breton Int'l, Inc.*, No 06 civ. 487, 2006 WL 3591949 (S.D.N.Y. Dec. 11, 2006) (professional exemption); *Tomney v. Int'l Ctr. Forthe Disabled*, 357 F. Supp. 2d 721 (S.D.N.Y. 2005) (professional exemption).

18

reaching its decision, the Court noted that the DOL's longstanding acquiescence to the practice of classifying pharmaceutical sales representatives as outside salespersons weighed in favor of applying the exemption. Here, Class Counsel would be required to overcome the DOL's conclusion that Relationship Managers were not misclassified as exempt employees.

In light of *Wal-Mart Stores, Inc. v. Dukes*, __ U.S. __, 131 S. Ct. 2541 (2011), Class Counsel faced significant risk associated with class certification under Rule 23 because of the question of whether the Plaintiffs' job duties were sufficiently similar. In *Wal-Mart*, the Court held that allegations that all of Wal-Mart's female employees since 1996 suffered from gender discrimination in violation of Title VII was insufficient to certify a class under Rule 23. *Id.* at 2557, 2561. Hiring decisions on the local level were left to the discretion of the store managers' subjective criteria and lacked corporate oversight. *Id.* at 2547. The Court provided that commonality "requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" and that merely alleging a violation of Title VII does not suffice. *Id.* at 2551 ("Their claims must depend upon a common contention – for example, the assertion of discriminatory bias on the part of the same supervisor.") The Court held that because "the invalidity of one manager's use of discretion will do nothing to demonstrate the invalidity of another's," Rule 23 was not satisfied. Here, Class Counsel proceeded with the action despite having similar, albeit not the same, corporate structure as Wal-Mart, in that several subclasses are located in different regions of the country. *See, e.g., Myers v. Hertz Corp.*, 624 F.3d 537, 549-51 (2d Cir. 2010) (affirming denial of class certification in misclassification case based on evidence that members' duties varied by location).

Since *Wal-Mart*, courts in this District have denied numerous Rule 23 motions in misclassification cases. *See Shayler v. Midtown Investigations, Ltd.*, No. 12 Civ. 4685, 2013 WL

772818 (S.D.N.Y. Feb. 27, 2013) (denying motion to certify class of security guards allegedly misclassified as independent contractors); *Trawinksi v. KPMG LLP*, No. 11 Civ. 2978, 2012 WL 6758059, at *6 (S.D.N.Y. Dec. 21, 2012) (denying motion to certify class of transaction associates allegedly misclassified as exempt administrators); *Romero v. H.B. Auto Grp., Inc.*, No. 11 Civ. 386 (CM), 2012 WL 1514810 (S.D.N.Y. May 1, 2012) (denying motion to certify class of auto dealership employees in misclassification case); *White v. Western Beef Props., Inc.*, No. 07 Civ. 2354, 2011 WL 6140512 (E.D.N.Y. Dec. 9, 2011) (adopting report and recommendation to deny motion to certify class of department managers and assistant department managers allegedly misclassified under executive exemption). Similarly, courts in this District have increasingly decertified FLSA collectives. *See Morano v. Intercontinental Capital Grp., Inc.*, No. 10 Civ. 2192, 2012 WL 2952893 (S.D.N.Y. July 17, 2012) (decertification of the FLSA collective in off the clock case brought by loan officers); *Zivali v. AT &T Mobility, LLC*, 784 F. Supp. 2d 456 (S.D.N.Y. 2011) (decertification of collective in off the clock case).

Unlike in *Goldberger*, the instant matter was not a "'promising' case, with almost certain prospects of a large recovery." 209 F.3d at 54. Class Counsel faced the general risk of recovery, namely, non-collection because of potential bankruptcy and collective and class action waivers. Specifically, Class Counsel faced significant risk with Rule 23 class and FLSA collective certification and proving the merits of the claim. The risk associated with this litigation weigh in favor of granting a contingency fee.

### d.    Quality of Representation

"To determine the quality of the representation, courts review, among other things, the recovery obtained and the background of the lawyers involved in the lawsuit." *Taft v.*

*Ackermans*, No. 02 Civ. 7951, 2007 WL 414493, *1 (S.D.N.Y. Jan. 31, 2007). Defendants have agreed to pay a total of $4.9 million to settle this litigation, which amounts to approximately 84% of the class's lost wages over the liability period, calculated on a half-time basis, and 26% of the class's lost wages calculated on a time-and-a-half basis. *See* Mem. of Law in Supp. of Pl.'s Mot. for Final Approval, at 23, 23 n.4, 24, 24 n.5. Weighing the benefits of the settlement against the risks associated with proceeding in the litigation, the settlement is reasonable.

As previously mentioned, Class Counsel has substantial experience in wage and hour class and collective action cases. *See* Swartz Decl. ¶ 4 (listing cases); Shavitz Decl. ¶ 6 (listing cases). Courts have viewed counsel's experience in wage and hour cases as directly responsible for a favorable settlement. *See Velezi*, 2007 WL 7232783, at *7 (holding that "Lead Counsel's experience representing plaintiffs in class actions" supported a contingency fee award); *Frank*, 228 F.R.D. at 189 (citing plaintiffs' counsel's experience to support an attorneys' fee award of 40% of the fund). Class Counsel's experience in wage and labor litigation also weighs in favor of finding that the fee award is reasonable.

### e.     Requested Fee in Relation to the Settlement

Courts consider the size of a settlement to ensure that the percentage awarded does not constitute a windfall. "[T]he percentage used in calculating any given fee award must follow a sliding-scale and must bear an inverse relationship to the amount of the settlement." *In re Indep. Energy Holdings PLC Sec. Litig.*, No. 00 Civ. 6689, 2003 WL 22244676, *6 (S.D.N.Y. Sept. 28, 2003). Where the size of the fund is relatively small, courts typically find that requests for a greater percentage of the fund are reasonable. *See, e.g., In re Gilat Satellite Networks, Ltd.*, No. 02 Civ. 1510, 2007 WL 2743675, *16 n. 41 (finding a 30% fee would not constitute a windfall "given the modest size of the [$20 million] settlement").

21

Class Counsel is requesting 33% of the $4.9 million settlement. This case does not require a "sliding scale" approach to prevent a windfall because the requested amount is "consistent with the norms of class litigation in this circuit." *Willix*, 2011 WL 754865, at *6-7 (awarding one-third of $7.675 million settlement fund in FLSA and NYLL wage and hour action); *see also Clark v. Ecolab, Inc.*, No. 07 Civ. 8623 (PAC), 2010 WL 1948198, at *8-9 (S.D.N.Y. May 11, 2010) (awarding 33% of $6 million settlement fund in FLSA and multi-state wage and hour case).

### f.    Public Policy Considerations

When determining whether a fee award is reasonable, courts consider the social and economic value of the class action, "and the need to encourage experienced and able counsel to undertake such litigation." *In re Sumitomo Cooper Litig.*, 74 F. Supp. 2d at 399. FLSA and NYLL are remedial statutes designed to protect the wages of workers. The remedial purposes of these statutes require adequate compensation for attorneys who protect those rights. *Khait*, 2010 WL 2025106, at *8; *Sand*, 2010 WL 69359, at *3 ("But for the separate provision of legal fees, many violations of the Fair Labor Standards Act would continue unabated and uncorrected."). Moreover, class actions are an invaluable safeguard for public rights. *See Phillips Petroleum Co. v. Shutts* 427 U.S. 797, 809 (1985). The public policy benefits of this action weigh in favor of awarding the requested attorneys' fees. Class Counsel successfully negotiated a settlement agreement that redresses a substantial portion of the monetary damage suffered by Plaintiffs, complies with this Circuit's precedent, and has resulted in new policies within KeyBank's organization. When considering all the *Goldberger* factors, the requested fee award appears to be reasonable.

### 2.   Lodestar "cross check"

Applying the lodestar method as a "cross check," *see Goldberger*, 209 F.3d at 50, the
Court finds that the fee that Class Counsel seeks is reasonable.  Courts regularly award lodestar
multipliers of up to eight times the lodestar, and in some cases, even higher multipliers.  *See
Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052-54 (9th Cir. 2002) (listing nationwide class
action settlements where multiplier ranged up to 8.5 times); *Sewell*, 2012 WL 1320124, at *13
("Courts routinely award lodestar multipliers between two to six."); *In re Lloyd's Am. Trust
Fund Litig.*, No. 96 Civ. 1262, 2002 WL 31663577, at *27 (S.D.N.Y. Nov. 26, 2002) (a
"multiplier of 2.09 is at the lower end of the range of multipliers awarded by courts within the
Second Circuit"); *see, e.g., Steiner v. Am. B'casting Co., Inc.*, 248 Fed. Appx. 780, 783 (9th Cir.
2007) (multiplier of 6.85 "falls well within the range of multipliers that courts have allowed);
*Ramirez v. Lovin' Oven Catering Suffolk, Inc.*, No. 11 Civ. 520, 2012 WL 651640, at *4
(S.D.N.Y. Feb. 24, 2012) (granting attorneys' fees equal to 6.8 times lodestar[2]); *Davis v. J.P.
Morgan Chase & Co.*, 827 F. Supp. 2d 172, 184-86 (W.D.N.Y. 2011) (awarding multiplier of 5.3
in wage and hour class action); *Buccellato v. AT&T Operations, Inc.*, No. 10 Civ. 463, 2011 WL
3348055, at *2 (N.D. Cal. Jun. 30, 2011) (awarding multiplier of 4.3 in wage and hour class
action); *New England Carpenters Health Benefits Fund v. First Databank, Inc.*, No. 05 Civ.
11148, 2009 WL 2408560, at *2 (D. Mass. Aug. 3, 2009) (awarding multiplier of 8.3); *In re
Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732, 803 (S.D. Tex. 2008)
(awarding multipler of 5.2); *In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 768
(S.D. Ohio 2007) (awarding multiplier of six); *In re Rite Aid Sec. Litig.*, 362 F. Supp. 2d 587
(E.D. Pa. 2005) (awarding multiplier of seven); *Maley v. Del Global Techs. Corp.*, 186 F. Supp.

---

[2] The lodestar in *Ramirez* was $174,671.25.  *See* Swartz Fees & Service Awards Decl., Ex. I.

2d 358, 371 (S.D.N.Y. 2002) ("modest multiplier" of 4.65 in wage and hour class action was "fair and reasonable"); *In re RJR Nabisco, Inc. Sec. Litig.*, No. 88 Civ. 7905, 1992 WL 210138, at *5 (S.D.N.Y. Aug. 24, 1992) (awarding multiplier of 6); *Cosgrove v. Sullivan*, 759 F. Supp. 166, 167 n. 1 (S.D.N.Y.1991) (awarding multiplier of 8.74).

Here, the lodestar sought by Class Counsel, approximately 6.3 times, falls within the range granted by courts and equals the one-third percentage being sought. While this multiplier is near the higher end of the range of multipliers that courts have allowed, this should not result in penalizing plaintiffs' counsel for achieving an early settlement, particular where, as here, the settlement amount is substantial. *See Wal-Mart Stores*, 396 F.3d at 121 ("[T]he lodestar create[s] an unanticipated disincentive to early settlements, tempt[s] lawyers to run up their hours, and compel[s] district courts to engage in a gimlet-eyed review of line-item fee audits."); *Vizcaino*, 290 F.3d at 1050 n. 5 (noting that "the lodestar method does not reward early settlement" and that "class counsel should [not] necessarily receive a lesser fee for settling a case quickly"); *Savoie v. Merchants Bank*, 166 F.3d 456, 461 (2d Cir. 1999) ("[T]he percentage-of-the-fund method also removes disincentives to prompt settlement, because plaintiffs' counsel, whose fee does not increase with delay, have no reason to drag their feet.").

In wage and hour cases, Class Counsel is often called upon to perform work after the final approval hearing, including answering class member questions, answering questions from the claims administrator, and negotiating and sometimes litigating disagreements with defendants about administering the settlement and distributing the fund. *See* Swartz Fees & Service Awards Decl. ¶ 11. Because "'class counsel will be required to spend significant additional time on this litigation in connection with implementing and monitoring the settlement, the multiplier will actually be significantly lower' because the award includes not only time

spent prior to the award, but after in enforcing the settlement." *Sewell*, 2012 WL 1320124, at

*13 (*quoting Bellifemine v. Sanofi-Aventis U.S. LLC*, No. 07 Civ. 2207, 2010 WL 3119374, at *6

(S.D.N.Y. Aug. 6, 2010)); *Reyes*, 2011 WL 4599822, at *8.  The lodstar is thus even more

reasonable than it appears at first glance.  The Court hereby grants Plaintiffs' Motion for

Attorneys' Fees and awards Class Counsel $1,617,000, which is 33% of the settlement fund.

### 3.    Costs

The Court also awards Class Counsel reimbursement of their litigation expenses in the

amount of $38,928.  Courts typically allow counsel to recover their reasonable out-of-pocket

expenses. *See In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3

(S.D.N.Y. 2003).  Here, Class Counsel's unreimbursed expenses, including court and process

server fees, postage and courier fees, transportation, working meals, photocopies, electronic

research, expert fees, and Plaintiffs' share of the mediator's fees, are reasonable and were

incidental and necessary to the representation of the class.  The attorneys' fees and the amount in

reimbursement of litigation costs and expenses shall be paid from the settlement fund.

### 4.    Service Awards

Service awards are common in class action cases and serve to compensate plaintiffs for

the time and effort expended in assisting the prosecution of the litigation, the risks incurred by

becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs. *Reyes*,

2011 4599822, at *9.  It is important to compensate plaintiffs for the time they spend and the

risks they take. *Massiah v. MetroPlus Health Plan, Inc.*, No. 11 Civ. 5669, 2012 WL 5874655,

at *8 (E.D.N.Y. Nov. 20, 2012).  The Court finds reasonable service awards of $7,500 each to

Plaintiffs Eric Beckman, Ivana Harrington, Jack Leiva, Jeri Griffin, Pete Wiseman, Steve Bunch,

Teri Parke, and Thomas Walker, and $5,000 each for Plaintiffs Renee Braun, Elizabeth Scott,

Veronica Morgan, and Theresa Forrest.  These amounts shall be paid from the settlement fund.

The "Effective Date" of the settlement shall be 5 days after the date of this Order if no party appeals this Order.  If a party appeals this Order, the "Effective Date" of the settlement shall be the day after all appeals are finally resolved.  This Order shall constitute a judgment for purposes of Rule 58 of the Federal Rules of Civil Procedure.

Within 3 days of time to appeal this Order has expired, the claims administrator shall distribute the funds in the settlement account by making the following payments in the order below:

(1)     Paying Class Counsel one-third of the fund ($1,617,000);

(2)     Reimbursing Class Counsel for $38,928 in litigation costs and expenses;

(3)     Paying service awards of $7,500 each to Plaintiffs Eric Beckman, Ivana Harrington, Jack Leiva, Jeri Griffin, Pete Wiseman, Steve Bunch, Teri Parke, and Thomas Walker, and $5,000 each for Plaintiffs Renee Braun, Elizabeth Scott, Veronica Morgan, and Theresa Forrest;

(4)     Paying the remainder of the fund to class members in accordance with the allocation plan described in the Settlement Agreement.


**SO ORDERED this 29th day of April 2013**
**New York, New York**

**The Honorable Ronald L. Ellis**
**United States Magistrate Judge**

26